Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:   (510) 891-9800
Facsimile:   (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com

Ronald W. Armstrong, II (TX S.B. #24059394)*
**THE ARMSTRONG FIRM, PLLC**
109 Yoalana St, Suite 210
Boerne, Texas 78006
Telephone: (210) 277-0542
Email: rwaii@tafpllc.com

*Pro Hac Vice forthcoming*

Attorneys for Representative Plaintiff
and the Plaintiff Classes

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA WEST, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RHEEM MANUFACTURING COMPANY, and MELET PLASTICS, INC., <br><br> Defendants. | Case No. <br><br> **<u>CLASS ACTION</u>** <br><br> **REPRESENTATIVE PLAINTIFF'S COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF** <br><br> **[JURY TRIAL DEMANDED]** |

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL.: (510) 891-9800

Representative Plaintiff alleges as follows:

**INTRODUCTION**

1.    This is a class action brought on behalf of Representative Plaintiff Vanessa West ("Representative Plaintiff" or "WEST") , individually, as well as on behalf of all other similarly situated individuals and entities who own or have owned certain water heater drain valves (the "Class Products") manufactured and supplied by Melet Plastics, Inc. ("Melet") and/or Rheem Manufacturing Company ("Rheem") (collectively, "Defendants") and/or who used Rheem's water heaters and/or who have owned homes or other structures physically located in the United States in which Class Products are or were installed (the "National Class").[1]

2.    Defendant Melet formulates, designs, manufactures, assembles, tests, labels, markets, advertises, warrants and offers for distribution and sale water heater drain valves which are used to discharge water and sediment from water heaters. Among its array of products is the round poly drain valve advertised on Rheem's website and elsewhere as Part No. AP16800[2] (hereinafter, the "Class Products"), such as those designed, manufactured, advertised and sold by Rheem. The Class

---

[1]    Alternatively, or in addition to the Nationwide Class, Representative Plaintiff brings claims on behalf of a California state-specific class, as defined below. The Nationwide Class and the state specific class are collectively referred to herein as the "Class" unless otherwise denoted.

[2]    https://parts.rheem.com/product/RPD-AP16800C (Last checked October 8, 2024). On information and belief, Representative Plaintiff further alleges that Part Nos. SP12159G, SP12159D, SP12159B, SP12159F, AP12159D-2, SP12159C and AP14830F were manufactured in a manner consistent with that of Part AP16800 insofar as they utilize the same or a substantially similar "Rubber Seal" and "Plastic Stem," as those terms are defined below. Representative Plaintiff reserves the right to amend the current "Class Products" definition as discovery as this issue develops.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Products at issue in this Complaint were manufactured and advertised, between 2019

2  and 2023, and were promptly offered for sale and distribution thereafter.

3      3.      Defendant Rheem designs, manufactures, advertises and sells water

4  heaters and water heaters components and, in some of its water heaters uses the Class

5  Products supplied by Melet and/or other manufacturers. Only the drain valves (i.e.,

6  the "Class Products") supplied by Melet are the subject of this Complaint.

7      4.      The Class Products are an integral part of every conventional storage

8  water heater. In all water heaters, over time, sediment, especially from hard water,

9  can build up at the bottom of the water heaters' tank, affecting the water heater's

10  efficiency and potentially causing damage to the heating element. Draining the tank

11  via the drain valves helps address these issues and generally extends the life of the

12  water heater. In the drain valve's closed position, the water heater is expected to

13  operate normally. In its open position, water flows out of the tank, allowing for the

14  cleaning and/or complete drainage for other maintenance purposes.

15      5.      The Class Products consist of two main parts: a main body (the "Stem")

16  and threaded insert (the "Cap"), that are together intended to form a watertight seal

17  (the "Valve Assembly"). The base of the Stem is externally threaded and coated with

18  pipe sealant (PTFE or equivalent) and inserted into the lower portion of the water

19  heater to allow for drainage and maintenance. When fully tightened, a rubber seal

20  attached to an internally fixed post on the Cap, contacts a seal seat on inside of the

21  Stem to stop the flow of water. Similarly, when fully tightened, the external threads

22  and pipe sealant applied to the Stem are intended to form a watertight seal with the

23  body of the water heater.

24      6.      Unless the elastomeric gasket made from a polymeric material

25  (hereinafter, the "Rubber Seal") and polymeric body (hereinafter, the "Plastic

26  Stem") are manufactured and/or designed properly for water heater systems

27  processing and heating/storing chlorinated water, the Valve Assembly as a whole is

28  prone to chemical degradation by the chlorides and hypochlorites normally found in

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

publicly supplied potable water. Additionally, the high temperatures and pressures consistent with any traditional water heater, accelerates this degradation which causes the Rubber Seal and Plastic Stem of the Valve Assembly to weaken and become brittle over time. In these instances, small sections of the Rubber Seal will break apart, and/or the Plastic Stem will weaken on or about the threaded connection, causing a partial and/or total loss of material and structural integrity. As a result, the failed gaskets and weakened threaded interface are unable to maintain a permanent watertight seal in their [normally] closed and tightened position, resulting in an uncontrolled release of water into the surrounding area (i.e., flooding) and severe water damage to dwellings and/or other personal or real property.

7.     Defendants Rheem and Melet market the Class Products as suitable, less expensive alternatives to, e.g., brass drain valves also sold by Rheem and other companies. Rheem promises these valves are suitable for use in residential and commercial applications, specifically for water heater drainage.

8.     Contrary to Defendants' representations however, the Class Products are defectively designed and/or manufactured, and unsuitable for their intended purpose. As set forth in greater detail below, the Class Products incorporate a Rubber Seal and Plastic Stem inappropriate for water heater use. Specifically, due to its chemical composition, the Rubber Seal and Plastic Stem—i.e., each part intended to prevent water heater water leakage when the drain valve rests in the closed position—prematurely decays, dissolves, fractures and fails as it is exposed to the chlorine and/or chlorimide, present in most treated water supplies and is, thus, not suitable for use high temperatures and pressures associated with Rheem water heaters.

9.     As the Rubber Seal and Plastic Stem degrade during ordinary use, the Class Products fail and begin to leak. Those Class Members who are fortunate enough to have quickly discovered the leak were forced to incur the expense of contracting with a qualified plumber to replace the defective valve or purchasing and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

installing a new drain valve at their own risk.[3] If the leak is not promptly discovered, the Rubber Seal and Plastic Stem will continue to degrade until the drain valve fails completely, causing flooding and very costly property damage.

10.     Upon information and belief, Customer complaints reveal that Defendants have long been aware of the inherently defective nature of the Class Products. Upon information and belief, many people that have experienced water heater leakage traceable to a failed Class Product have asked Defendants to remedy the failure and resultant damage, but they have consistently declined such requests.

11.     Further, upon information and belief, a vast number of insurance claims relating to Class Products did alert, or should have alerted, Defendants to the defect. Drain valve failures are one of the most common and costly forms of water heater-related insurance claims.

12.     Despite this longstanding knowledge of the specific manufacturing and material defects alleged herein, Defendants refuse to disclose or admit to Representative Plaintiff and the public the inherently defective nature of the Class Products. Indeed, Defendants have continued to profit from the distribution and sale of the Class Products while their customers suffer.

13.     And yet, despite Defendant Melet's website claims such as "[i]n the world of injection molded parts, there are no shortcuts to quality,"[4] quality appears the least of its concerns as it has continued to manufacture, advertise and sell these defective parts for years.

14.     Thousands of defective Class Products have been, and continue to be, purchased and installed in residential and commercial buildings across the country - the majority of these buildings utilizing potable water sources treated with chlorine

---

[3]   Rheem specifically instructs all users that such, "Water Heater parts and accessories should only be installed by qualified technicians." https://parts.rheem.com/product/RPD-AP16800C (Last checked October 8, 2024).

[4]   https://www.meletplastics.com/about-melet (Last checked October 8, 2024).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    and/or chloramides. Rather than the dependable, heavy-duty parts that Defendants
2    Rheem and Melet represent them to be, Class Products are inevitable failures waiting
3    to happen, potentially causing a range of damage, including catastrophic flooding
4    and property destruction. Furthermore, the failure of and flooding caused by Class
5    Products place individuals at risk to their personal safety since many Class Products
6    are installed in close proximity to electrical outlets, electrical appliances and
7    electrical circuit boxes.

8       15.    Despite Defendants' representations regarding the high quality of their
9    Class Products, they know and have known of the specific manufacturing and
10   material defects alleged herein and know that there is a substantial risk that Class
11   Products will fracture and fail due to these defects.

12      16.    As a result of the defects in Class Products, Representative Plaintiff and
13   Class Members have suffered damages, including significant real and personal
14   property damage caused by flooding resulting from failures of Class Products. In
15   addition, Representative Plaintiff and Class Members have suffered harm in the form
16   of the loss of the benefit of the bargain, in that they paid for a product that was worth
17   less than what was represented by Defendants Rheem and Melet. Representative
18   Plaintiff and Class Members would not have purchased their Class Products had they
19   known of the defect at the time of sale. Furthermore, Representative Plaintiff and
20   Class Members must replace and discard their Class Products sooner than reasonably
21   expected.

22      17.    Had Representative Plaintiff and Class Members known that the Class
23   Products are guaranteed to fail, they would not have purchased and/or continued to
24   use them.

25      18.    Thus, Representative Plaintiff brings this class action against
26   Defendants for their failures to properly formulate, design, manufacture, assemble,
27   test, label, market, advertise, warrant and offer for distribution and sale to
28   Representative Plaintiff and Class Members the Class Products, thus failing to

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

ensure that Class Products operated in a safe and appropriate manner for normal home use and its intended purpose.

19.     Representative Plaintiff seeks to recover, for herself and the Class, all costs associated with repairing, removing and/or replacing her and Class Members' Class Products, as well as the costs of repairing any damage to real and personal property, and other incidental and consequential damages (e.g., remediation of water damage, loss of use of the property) caused by the failure of the Class Products to perform as represented. Representative Plaintiff also seeks injunctive relief requiring Defendants Rheem and Melet to modify their unfair and fraudulent practices so as to uniformly provide relief in accordance with their obligations under the law.

## **JURISDICTION AND VENUE**

20.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member is a citizen of a state different from Defendant.

21.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

22.     Defendants are headquartered and/or routinely conduct business in the State where this district is located, have sufficient minimum contacts in this State, and have intentionally availed themselves of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

23.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiff's claims took place within this District, and Defendants do business in this Judicial District.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## REPRESENTATIVE PLAINTIFF

24.    Representative Plaintiff is an adult individual and is and was a resident of California, residing at 4849 Regalo Rd., Woodland Hills, California 91364.

25.    Representative Plaintiff and her husband purchased a home, located in Woodland Hills in November 2020. As part of that transaction, on December 13, 2020, the home's water heater was replaced with a Rheem water heater Model No.: XG50T06EN38U1; SN: M222014659, which was manufactured on May 26, 2020, as depicted below in Figure 1.



*Figure 1: Representative Plaintiff's Water Heater*

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

26.     Representative Plaintiff's Rheem water heater was purchased from Home Depot, which carried a six-year warranty, as depicted below in Figure 2:



***Figure 2: Warranty Verification***

27.     On or about October 26, 2023, the drain valve of Representative Plaintiff's water heater failed and caused flooding in the water heater closet, adjoining closet, hallway, entry/foyer, living room, dining room and kitchen. The water damage in question damaged flooring, drywall, carpentry/trim work, paint, air conditioning ducting, plumbing and wall surfaces. Upon investigation, Representative Plaintiff found that the Class Product she purchased had fractured and failed, but that the non-Class Products associated with the water heater were still working properly.

28.     On October 26, 2023 (the day of the incident), Representative Plaintiff contacted Rheem to notify Defendant of the defect. During said conversation,

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

Defendant Rheem's representative/agent admitted on a recorded line as to its knowledge of "issues" with the plastic valve. On October 27, 2023, Defendant Rheem sent Representative Plaintiff confirmation that a replacement brass valve (AP16830C) (not the same plastic valve (AP16800)) was being sent to her.

29.    Upon arrival of the replacement brass valve, Representative Plaintiff contracted with a local plumber to replace the defective drain valve with the replacement brass valve, at a cost to her of approximately $150.

30.    On or about October 30, 2023, Representative Plaintiff filed a claim with her homeowners insurance carrier (Berkshire Hathaway), ultimately receiving payment for certain repairs, but remains out of pocket for her insurance deductible payment of $1,250. In additional to the non-reimbursement of her insurance deductible, Representative Plaintiff has incurred lost time addressing, *inter alia*, the underlying event, the claims process, etc., as well as incurring severe emotional distress and anguish.

31.    Representative Plaintiff would not have purchased and installed the Class Products and exposed her real and personal property to flooding and water damage, as well as exposing himself and her family to a risk of personal injury directly related to the flooding (including but not limited to placing them at a risk of electrocution and fire due to flooding in the proximity of electrical currents) had Defendants Rheem and Melet disclosed the propensity for Class Products to spontaneously fracture and fail.

## DEFENDANTS

32.    Defendant Melet Plastics ("Melet") is a for-profit corporation which, during all relevant times, maintained a principal place of business located at 401 27th Street North, Fargo, North Dakota 58102. Defendant Melet develops, designs, manufactures, markets, sells and warrants its products (including the Class Products) through various authorized sales representatives, as well as traditional brick-and-

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

mortar retail stores. Melet is a specialized manufacturer of plastic products, with a focus on injection molding, compression thermoforming and blow molding.

33.    Defendant Rheem Manufacturing Company ("Rheem") is a for-profit corporation with a principal place of business located at 1100 Abernathy Road, Suite 1700, Atlanta, Georgia 30328. Defendant Rheem develops, designs, manufactures, markets, sells and warrants water heaters, heating, ventilation and air conditioning (HVAC) systems, as well as commercial refrigeration products. Rheem claims to be the only manufacturer in the world that produces heating, cooling, water heating, pool and spa heating and commercial refrigeration products, and is the largest manufacturer of water heating products in North America.[5]

34.    Defendants, and each of them, conduct substantial business in this State and throughout the United States, including through the sale and distribution of the Class Products which can be purchased at stores such as Home Depot and Walmart, and on-line through Amazon.com.

35.    The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when its/those identities become known.

## **CLASS ACTION ALLEGATIONS**

36.    Representative Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of Representative Plaintiff and the following classes/subclass(es) (collectively, the "Class"):

---

[5]    https://www.rheem.com/about/ (Last checked October 8, 2024).

**Nationwide Class:**
"All individuals and entities that own or have owned Class Products and/or who own or have owned homes or other structures physically located in the United States, in which the Class Products are or were installed (the "Nationwide Class")."

**California Subclass:**
"All individuals and entities residing in the State of California that own or have owned Products and/or who own or have owned homes or other structures physically located in the State of California, in which Class Products are or were installed."

37.    Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

38.    In the alternative, Representative Plaintiff requests additional subclasses as necessary. Representative Plaintiff further reserves the right to amend the above class definitions and/or to propose subclasses in subsequent pleadings and/or motions for class certification.

39.    This action has been brought and may properly be maintained as a class action under Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is easily ascertainable.

a.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Representative Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members is in the hundreds of thousands of individuals. Membership in the Classes will be determined by analysis of Defendants' records.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

b.  <u>Commonality</u>: Representative Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1)  Whether Defendants' Class Products are defective;

2)  Whether the Class Products suffer from common manufacturing and design defects, as alleged herein;

3)  Whether the manufacturing and design defects concerning the Class Products result in the Class Products being prone to fracture and failure to perform the task for which they were designed;

4)  Whether Rheem and/or Melet knew or should have known of the defect in the Class Products prior to putting them into the stream of commerce for purchase by Representative Plaintiff and Class Members;

5)  Whether Rheem and/or Melet properly advise consumers about the likelihood of the Class Products' premature failure;

6)  Whether Rheem and/or Melet owed a duty to Representative Plaintiff and Class Members to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the Class Products;

7)  Whether Rheem and/or Melet breached their duty to Representative Plaintiff and Class Members by designing, manufacturing, advertising and selling to Representative Plaintiff and the Class defective Class Products;

8)  Whether Rheem and/or Melet breached their duty to Representative Plaintiff and Class Members by failing promptly to remove the defective Class Products from the marketplace or take other remedial action;

9)  Whether the Class Products fail to perform in accordance with the reasonable expectations of ordinary consumers;

10) Whether the Class Products fail to perform as advertised, marketed and warranted;

11) Whether Rheem and/or Melet breached their express warranties to Representative Plaintiff and Class Members by advertising, marketing and selling defective Class Products to Representative Plaintiff and Class Members;

12) Whether Rheem and/or Melet breached their implied warranties to Representative Plaintiff and Class Members

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL.: (510) 891-9800

by advertising, marketing and selling Class Products that were not of a merchantable quality, nor fit for the ordinary purpose for which they were sold;

13) Whether Representative Plaintiff and Class Members are entitled to compensatory damages, and the amount of such damages for the replacement and remediation of the Class Products;

14) Whether Rheem's and/or Melet's representations regarding the suitability and exemplary nature of their Class Products, and their omissions and concealment of facts to the contrary regarding the Class Products' manufacturing and design defect constitute violations of state consumer protection laws;

15) Whether Rheem and/or Melet have been unjustly enriched by their conduct, as alleged herein; and

16) Whether Rheem and/or Melet should be required to notify all Class members about their defective Class Products.

c. <u>Typicality</u>: Representative Plaintiff's claims are typical of the claims of the Representative Plaintiff Classes. Representative Plaintiff and all members of the Representative Plaintiff Classes sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

d. <u>Adequacy of Representation</u>: Representative Plaintiff in this class action is an adequate representative of each of the Representative Plaintiff Classes in that the Representative Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entireties. Representative Plaintiff anticipates no management difficulties in this litigation.

e. <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Representative Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Representative Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

40.     This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes in their entireties. Defendants' policies and practices challenged herein apply to and affect Class Members uniformly and Representative Plaintiff's challenge of these policies and practices hinges on Defendants' conduct with respect to the Classes in their entireties, not on facts or law applicable only to Representative Plaintiff.

41.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to warn Class Members of the defects and dangers of the Class Products, Class Members remain exposed to those dangers until such time as the Class Products are replaced with properly functioning water drain valves and/or Defendants may continue to act unlawfully as set forth in this Complaint.

42.     Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**FRAUDULENT CONCEALMENT/TOLLING**

43.     At all relevant times, Rheem and Melet affirmatively concealed from Representative Plaintiff and Class Members the manufacturing and design defect in the Class Products.

44.     Defendants Rheem and Melet had a duty to inform Representative Plaintiff and Class Members of the defect. Specifically, Defendants Rheem and Melet have known for years of the problems and defect outlined herein through various complaint forums (including, without limitation, their own warranty program) and as the result of claims being filed against Defendants Rheem and Melet

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

related to the defect by insurance companies. Notwithstanding their duty to inform Representative Plaintiff and Class Members, Defendants Rheem and Melet have never disclosed the defect to Representative Plaintiff and Class Members. To the contrary, Defendant Rheem boasts that it "continues to offer some of the highest-performing water heaters available today," such that consumers can "count on dependable hot water for years to come."

45.    Representative Plaintiff and Class Members could not have reasonably discovered the defect or Defendants Rheem's and Melet's attempts to avoid disclosure of the defects alleged herein. Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Representative Plaintiff and Class Members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

46.    In addition, Defendants Rheem and Melet are estopped to plead any statute of limitations because it failed to disclose facts that it was obligated to disclose concerning the defects in the Class Products. Defendants Rheem and Melet actively concealed and misrepresented to Representative Plaintiff and Class Members facts that were essential to understanding that Representative Plaintiff and Class Members had claims against Defendants Rheem and Melet, and Defendants Rheem and Melet, thus, acted to prevent Representative Plaintiff and Class Members from learning that they possessed claims against Defendants Rheem and Melet. Had Representative Plaintiff and Class Members been aware of the facts which Defendants Rheem and Melet misrepresented and concealed, they would have commenced suit against Defendants Rheem and Melet before the running of any statute of limitations alleged to be applicable to this case.

47.    Defendants Rheem and Melet are further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of their fraudulent concealment.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## COMMON FACTUAL ALLEGATIONS

48.     Defendants Rheem and Melet formulated, designed, manufactured, assembled, tested, labeled, marketed, advertised, warranted and offered for distribution and sale Class Products for the safe storage and movement of water within property structures, such that they would be installed by builders, plumbers and consumers in homes and other buildings throughout the United States. The Class Products were touted as safe products of merchantable quality, and fit for their intended and reasonably foreseeable uses, despite their hidden defects.

49.     As detailed in this Complaint, *supra*, every Class Product incorporates an inner Rubber Seal and Plastic Stem which, due to its design and/or chemical composition, degrades as it is exposed to the chlorine and/or chlorimide present in most treated water supplies. As such, even in the drain valve's closed position, and given elevated water temperatures expected in all water heaters, the elastomeric material in the Rubber Seal weakens, the Plastic Stem weakens, becomes brittle and breaks apart, destroying the otherwise watertight seal. These facts are not reasonably known to consumers/homeowners.

50.     Defendants Melet and Rheem knew or should have known that the composition of materials used in constructing the Class Products were inappropriate for long term, high heat water heater conditions. The polymeric material(s) selected by the manufacturer are an ethylene:propylene:diene terpolymer (EPDM) rubber for the internal elastomeric seal and a glass-fiber reinforced polypropylene resin for both the internal valve stem and valve body. The specific formulations of these two polymeric compounds that are used during manufacture of the valve components are deficient in their antioxidants performance and exhibit poor resistance to oxidative degradation. The combined inadequate levels of antioxidant protection and deficient material quality make these internal components susceptible to degradation that leads, in turn, to catastrophic leakage.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

51.    Additionally, every Class Product experiences or will soon experience visible cracking and erosion at the internal valve stem and/or surface cracking at the inlet ID of the valve body. Further, the inner diameter of the valve inlet experiences mud cracking and loss of material along the portion expected to be in contact with water from the water heater. The valve stem also experiences mud cracking at the tip in contact with water.

52.    Failure in all three internal components is attributed to material degradation effects from the expected service environment. These failures occur in the specific polymeric materials selected by the manufacturer through an oxidative degradation mechanism. The resulting mud cracking, embrittlement and loss of material is a result of molecular degradation in the internal elastomeric seal, valve stem and valve body that contact hot potable water during normal service and operation of the water heater.

53.    Cracking and erosion in any of these three critical components compromises the sealing integrity of the internal valve assembly and permits unmitigated flow through the valve, even when in the closed position.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

54.    The placement/location of the Class Product vis-à-vis an ordinary water heater is depicted below in Figure 3:



*Figure 3: Diagram of a Water Heater*

55.    Below is an enlarged exemplar depiction of the Class Product (Figure 4). The external threads and pipe sealant of the Plastic Stem are evident at the interface with the main body of a given water heater.



*Figure 4: Example of the Class Product*

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

56.    The placement/location of the faulty Rubber Seal within the Class Product is as depicted below (Figure 5):



**Figure 5: Rubber Seal**

**Today's Potable Water Supplies Contain Chlorine and/or Chlorimides**

57.    Chlorine and chloramine have been in common use for many years to disinfect domestic water supplies. In 1974, Congress passed the Safe Drinking Water Act, which provides the Environmental Protection Agency (EPA) with unenforceable health guidelines for maximum residual disinfectant level goals (MRDLG) in drinking water.[6] The United States (US) EPA notes that, "According to a 1995 EPA survey, approximately 64 percent of community ground water and surface water systems disinfect their water with chlorine."[7] Today, the percentage is far higher.

58.    Since passage of the Safe Drinking Water Act, the EPA has released standards for many chemicals including disinfectants used to treat drinking water.

[6]    https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations (Last checked September 15, 2024).

[7]    US EPA, The History of Drinking Water Treatment, EPA-816-F-00-006 (2000), page 3.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Germs can contaminate water which puts public health at risk including carrying disease causing germs such as Salmonella, Campylobacter and norovirus. These germs are killed off through a disinfection process that is usually done with chlorine or chloramine. Disinfection with chlorine is called chlorination and disinfection with chloramine is called chloramination. Both of these processes disinfect the water by adding these chemicals to it which is meant to destroy any germs or bacteria that came in contact with the water. Chlorine and chloramine are allowed at a level of up to 4 milligrams per liter (mg/L) or 4 parts per million (ppm) in drinking water.[8]

**How Chlorine/Chlorimides Interact with the Class Products**

59.    Both chlorine and chloramine cause the EPDM rubber for the internal elastomeric seal and the glass-fiber reinforced polypropylene resin for both the internal valve stem and valve body to become hard and brittle. Generally, chloramine has been shown to be more aggressive than conventional chlorine, affecting the rubber and polypropylene components in standard water systems. Polypropylene is particularly susceptible to oxidative degradation. Similarly, while EPDM is generally resistant to extreme weather conditions, UV light, ozone and aging, additional processes (antioxidant loading) are required to improve EPDM and polypropylene's resistance to degradation.

60.    It is well known in the industry that many polymer and elastomer formulations are susceptible to degradation in municipal water supply environments. Increases in temperature will also accelerate this chemical attack and lead to significant loss of mechanical properties in polymers. Without proper formulation, additives and/or material processing, these polymeric material(s) will prematurely experience degradation and failure. This environment is one foreseeable by the manufacturer since the part is intended for the outlet of a water heater that is exposed

---

[8]    https://www.cdc.gov/ (Last checked September 15, 2024).

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

to hot potable water supply. Based on the expected application (hot potable water) and life expectancy for water heaters (8-12 years), the specific materials used to manufacture the seal, the internal valve stem and the valve body are deficient for the intended purpose.

**Defendants' Claims Regarding Product Quality**

61.     On its website,[9] Defendant Rheem touts that: "From the smallest part to complete comfort systems, Rheem® builds quality into everything we make so we can be sure it's tough enough to deliver the ultimate performance homeowners and businesses can count on day after day, year after year. That reliability is what makes Rheem different—and better."

62.     On its website,[10] Defendant Melet promises that: "Melet Plastics produces engineered plastic and composite solutions for OEM applications, specializing in items requiring advanced design and manufacturing capabilities. We are committed to providing customer satisfaction by delivering products and services with high quality, on-time and in a cost-efficient manner while optimizing stakeholder value."

63.     Moreover, on its website,[11] Defendant Melet recognize the significance of material selection, explaining that: "Physical design is only half the challenge when creating a superior part. Equally important is determining the best polymers or composite materials to be used to make your part based on its intended application. What temperature ranges and environments will the part function in? What type of forces or stresses will it be exposed to? Does it need to withstand sudden shocks or

[9]   https://www.rheem.com/reliability/ (Last checked October 15, 2024).

[10]   https://www.meletplastics.com/about-melet/ - Melet's Quality Policy Statement (Last checked October 15, 2024).

[11]   https://www.meletplastics.com/material-selection/ (Last Checked October 15, 2024).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

impacts? Is surface appearance important and will it need to be painted? These are just some of the considerations that go into selecting the right materials and additives to be used for any part. At Melet our decades of experience working with all plastic families and composite materials, as well as use of advanced tools within the IDES Prospector materials database, ensures that we will use the best materials to meet your needs."

64.    Defendants' statements are clear and unambiguous—consumers can depend on the Defendants products, including their Class Products, because they have been rigorously designed and tested. None of the statements made by Defendants Rheem and/or Melet could be considered "puffery" as they express specific, singular assertions about the design, manufacturing, operation and qualities of the Class Products.

**Defendants' Warranties**

65.    As explained, *supra*, Representative Plaintiff purchased the Rheem water heater from Home Depot, which carried a six-year warranty.

66.    Representative Plaintiff is uncertain whether Defendants Rheem and/or Melet previously provided, on their Class Products packaging or labeling, a warranty stating different terms.

67.    Neither the Class Products' product labeling nor information associated with any advertisement known to Representative Plaintiff disclaims the implied warranties of merchantability or fitness for a particular purpose.

**Defendants Rheem and Melet Knew the Class Products Were Defective**

68.    Prior to Representative Plaintiff's and Class Members purchasing their Class Products, Defendants Rheem and Melet were aware that the Class Products contained a manufacturing and design defect that caused them to fracture and fail, and that the defect was present at the point of sale. On information and belief,

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Rheem's and Melet's knowledge is ascertainable due to Rheem's and Melet's receipt of consumer complaints both online and directly to Rheem and Melet, warranty claims, and distributor reports and returns of defective Class Products, as well as through insurance subrogation claims.[12]

69.    Further, Defendants are experienced and sophisticated manufacturers and/or distributers of the Class Products and other water safety and flow control products. Defendants presumably tested and evaluated the Class Products prior to placing them into the stream of commerce. Due to the inherently defective nature of the Class Products and the volume of known consumer complaints, Defendants must know that they are predisposed to fail well before the end of their expected useful life.

70.    Despite their knowledge, Defendants Rheem and Melet did not disclose to their customers or prospective purchasers the substantial risk that the Class Products would fail due to a known defect, specifically that they can and do fracture in such a way that the Class Products fails to stop the flow of water (hereinafter, the "defect").

71.    Consumers who purchased the Class Products had no way of knowing that these connectors were defective at the point of sale. Nor could the consumers

_____

[12]  Contrary to Defendants Rheem's and Melet's expected rebuttal that they were unaware of the defects in Class Products, some of these claims are even made public through on-line portals: e.g., *Allstate Texas Lloyds vs. Melet Plastics, Inc.* (Texas, Dallas County Texas Courts filed 5/28/2019) (Judge Rosales); *Allstate Vehicle and Property Insurance as Subrogee of Thomas and Deborah Strecker vs. Rheem Manufacturing Company, Melet Plastics Corporation*; *Allstate Indemnity Co. vs. Melet Plastics Inc.* (New York, Rockland County Supreme Court); *Ciletti vs. Rheem Manufacturing* (Riverside County Super Court Case no. CVPS23000013) (case filed April 24, 2020); *State Farm Fire and Casualty Company as Subrogee of Stefanie L. Williams and Richard G. Williams, III vs. Melet Plastics, Inc., Rheem Manufacturing Co.* (New York, Erie County Supreme Court); *State Farm Lloyds vs. Melet Plastics, Inc. and Rheem Manufacturing Company* (Texas, Harris County Civil Court), Case number 2_1231986 filed: July 30.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

detect abnormalities or flaws which would indicate that their Class Products were likely to fracture and fail without warning under normal use.

72.    Despite Defendants Rheem's and Melet's knowledge that their product is defectively manufactured and designed, Class Products are still being sold and installed in residential and commercial buildings across the country.

**Representative Plaintiff and Class Members Suffered Damages**

73.    As set forth in detail above, Representative Plaintiff and Class Members suffered harm as a direct result of Defendants Rheem's and Melet's actions because their Class Products contained material manufacturing and design defects which caused the Class Products to fail, causing harm not only to the Class Products, but also to other real and personal property. In addition, because of the flooding that actually has or will occur due to the defect described herein, there is a serious risk of bodily harm to Class Members. In the event that flooding takes place in areas where electrical circuits, outlets, appliances and related household items are located, flooding caused by this defect could result in the electrocution of someone who may come into contact with or near those items, as water is an electrical conductor or could cause fires related to water damage to electrical appliances. Furthermore, flooding could cause someone to slip and suffer bodily injury.

74.    The Class Products' manufacturing and design defect, however, caused Representative Plaintiff's and Class Members' Class Products to experience premature failure that is disproportionate to the age of the appliances or fixtures.

75.    The injuries sustained by Representative Plaintiff and Class Members flow directly from the core common facts surrounding Defendants Rheem's and Melet's misconduct, including, without limitation: (a) the Class Products suffer from a manufacturing and design defect known to Defendants Rheem and Melet that leads to the fracture of the Class Products from the water source, (b) the Class Products were defective for their intended use at the time of sale, (c) Defendants Rheem and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Melet do not provide adequate warnings concerning the defective nature of the Class Products and (d) that Defendants Rheem and Melet, despite knowing of the manufacturing and design defects, fail to provide any public notice or warning, or institute a recall to repair or replace the defective Class Products.

76.    Representative Plaintiff's and Class Members' damages include, without limitation: (a) amounts paid for the defective Class Products, (b) amounts paid to remediate real and personal property damage caused by flooding after the failure of the Class Products, (c) amounts paid to replace defective Class Products and (d) expenses incurred on incidental and consequential damages. Furthermore, Representative Plaintiff and Class Members lost the benefit of the bargain with respect to their purchase of the Class Products in that they would not have purchased the Class Products if they had known of the defects that existed at the point of sale, or they would not have paid the price they paid, wrongly believing that the Class Products were not defective. In addition, there is a serious risk of harm to Representative Plaintiff or Class Members if they come into contact with any electrical outlet, appliance or related item, as water flooding from the defective connector is a conductor of electricity, or if they suffer bodily injury as a result of flooding from failed Class Products.

77.    Many problems and defects outlined herein have occurred across the country and complaints been reported to Defendants Rheem and Melet. Upon information and belief, some insurance companies have filed subrogation lawsuits against Defendants Rheem and Melet related to the defective Class Products in order to recover monies paid by the insurance companies to their insured clients for flooding and related property damage.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of all Class Members)**

78. Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

79. Defendants Rheem and Melet are sellers of Class Products.

80. The Class Products are goods.

81. Defendants Rheem and Melet had knowledge of the defects alleged herein, that the defects were present in the Class Products at the time of sale, and that they posed a serious risk to consumers such as Representative Plaintiff and Class Members.

82. Despite their knowledge of the defects, Defendants Rheem and Melet expressly warranted in writing that the Class Products were free from defects at the time of sale (e.g., as articulated in this Complaint, *supra*, at section entitled "Defendants' Claims Regarding Product Quality."

83. This warranty was a part of the basis of the bargain between Defendants Rheem and Melet and Representative Plaintiff and the Class, who relied on the existence of the express warranty.

84. By selling to consumers such as Representative Plaintiff and Class Members Class Products containing the defect after Defendants Rheem and Melet had notice of the defect, Defendants Rheem and Melet breached their express warranty to provide Class Products that were free from defects.

85. Defendants Rheem and Melet also breached their express warranty because they have not replaced the defective Class Products, despite their knowledge that they are defective.

86. The warranty remedy of replacement is not an exclusive remedy because Defendants Rheem and Melet and Representative Plaintiff and Class

Members did not expressly agree to limit Representative Plaintiff's and Class Members' remedy to replacement in the event of a breach of the express warranty.

87.    Further, any replacement that Defendants Rheem and Melet offer does not remedy the safety issue with their Class Products and is not adequate to remedy the serious risk of damage to other real and personal property, and other issues caused by the defect.

88.    Replacement of the Class Products also fails in its essential purpose because that remedy is insufficient to make Representative Plaintiff and Class Members whole and/or because Defendants Rheem and Melet have refused to provide the promised remedies within a reasonable time.

89.    At the time Defendants Rheem and Melet warranted and sold their Class Products, they knew they did not conform to the warranties and were inherently defective, and Defendants Rheem and Melet wrongfully and fraudulently misrepresented and concealed material facts regarding their Class Products.

90.    Accordingly, Representative Plaintiff and Class Members are not limited to the limited warranty of replacement and seek all remedies allowed by law.

91.    Upon information and belief, Defendants Rheem and Melet were notified of Representative Plaintiff's Class Products but have failed to provide an adequate retrofit to remedy the defect, or to compensate Representative Plaintiff for the damage to her property.

92.    As a result, Defendants breached their implied warranties to Representative Plaintiff and the Class by manufacturing and selling Class Products with fundamental inherent defects. Additionally, Defendants knowingly allowed these warranties to be made to Representative Plaintiff and the Class with the intent of inducing them to purchase their Class Products even after being put on notice by Representative Plaintiff and other Class members of the defects inherent in those Class Products.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

93.     On information and belief, as detailed herein, Defendants Rheem and Melet were provided with notice and have been on notice of the defect and of their breach of express written warranties through consumer warranty claims reporting problems with the Class Products, subrogation claims filed by insurance companies, customer complaints and their own internal and external testing, but nevertheless failed to repair, replace or retrofit the Class Products to ensure that they were free of material defects or component malfunctions as Defendants Rheem and Melet promised.

94.     Due to Defendants' longstanding knowledge of the design and/or manufacturing defects plaguing Class Products, as well as subrogation claims brought against Defendants in connection with Class Products, Defendants have not been prejudiced by any claimed delay by Representative Plaintiff in reporting this breach.

95.     As a direct and proximate result of the breach of express warranty alleged herein, Representative Plaintiff and Class Members have incurred damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On behalf of all Class Members)**

96.     Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

97.     Defendants Rheem and Melet are merchants of Class Products.

98.     The Class Products are goods.

99.     Defendants Rheem's and Melet's implied warranty of merchantability accompanied their sale of the Class Products to Representative Plaintiff and Class Members.

100.    Defendants Rheem and Melet impliedly warranted that their Class Products were fit for their ordinary use.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

101.   Defendants Rheem's and Melet's manufacture and design and the repeated failure of their Class Products made them defective and, thus, unfit for the ordinary purposes for which they are used. The Class Products are not fit for ordinary use.

102.   Any effort by Defendants Rheem and Melet to disclaim or otherwise limit their implied warranty of merchantability for their defective Class Products is unconscionable and unreasonable under the circumstances, including because Defendants Rheem and Melet knew that their Class Products were unfit for normal use and because Defendants Rheem and Melet did not conspicuously provide Representative Plaintiff and Class Members with notice of their intention to disclaim or otherwise limit their implied warranty of merchantability. Through their conduct, Defendants Rheem and Melet breached their implied warranty of merchantability and are liable to Representative Plaintiff and the Class.

103.   Upon information and belief, Representative Plaintiff has provided notice to Defendants Rheem and Melet regarding the problems they experienced with the Class Products and, notwithstanding such notice, Defendants Rheem and Melet have failed and refused to remedy the problems. Further, Defendants Rheem and Melet had actual knowledge of the defect.

104.   As a result of Defendants Rheem's and Melet's breach of the implied warranty of merchantability, Representative Plaintiff and Class Members have incurred damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*)**
**(On behalf of all Class Members)**

105.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

106.   Representative Plaintiff and the Class are "consumers" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(3).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

107.   Defendants is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

108.   The Class Products are "consumer products" within the meaning of 15 U.S.C. § 2301.

109.   15 U.S.C. §2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

110.   Defendants provided Representative Plaintiff and the Class with an implied warranty of merchantability in connection with the purchase of the Class Products that is an "implied warranty," within the meeting of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(7). As part of the implied warranty of merchantability, Defendants warranted that the Class Products were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

111. Defendants breached their implied warranties to Representative Plaintiff and the Class by developing, designing, manufacturing, marketing and selling Class Products that fell drastically short of being fit for their intended use as durable and long-term home appliance products. As detailed herein, Defendants' Class Products do not perform as expressly promised and have uniform defects.

112.   Representative Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding to purchase the Class Products.

113.   Defendants' breach of the express warranties has deprived the Representative Plaintiff and the other Class Members of the benefit of their bargain.

114.   The amounts in controversy of Representative Plaintiff's individual claims meet or exceed the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

115.   Pursuant to 15 U.S.C. §2301(e), Representative Plaintiff is entitled to bring this class action and is not required to give Defendants notice and an opportunity to cure until such time as the court determines the representative capacity of Representative Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

116.   As a direct and proximate cause of Defendants' breach of written warranty, Representative Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Representative Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## FOURTH CLAIM FOR RELIEF
### Strict Liability/Manufacturing and Design Defect and Failure to Warn
### (On behalf of all Class Members)

117.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein

118.   Defendants Rheem and Melet designed, manufactured, sold and/or distributed the Class Products to Representative Plaintiff and Class Members.

119.   The Class Products were defective in their manufacture and design and were defective when they left Defendants' control.

120.   Defendants Rheem and Melet knew or should have known that the Class Products contained a non-obvious danger in their material composition. Defendants Rheem and Melet knew that the Class Products were highly susceptible to failure under ordinary use, and that consumers would not repeatedly replace their Class Products without an instruction to do so.

121.   Defendants Rheem and Melet failed to inform Representative Plaintiff and Class Members as to the Class Products' susceptibility to sudden failure.

122.   The Class Products were defective due to inadequate warnings, inadequate inspection and testing and inadequate reporting regarding the results of quality control testing, or lack thereof.

123.   Had Representative Plaintiff and Class Members been adequately warned concerning the likelihood that the Class Products would fail, they would have taken steps to avoid damages by not purchasing them.

124.   Defendants Rheem and Melet, after learning that their Class Products could fracture and fail at the automatic shut-off device, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their Class Products, even when used for their intended purpose.

125.   As a direct and proximate result of the above-described willful and unlawful conduct of Defendant, Representative Plaintiff and Class Members sustained damages, as set forth in this Complaint.

**FIFTH CLAIM FOR RELIEF**
**Negligence**
**(On behalf of all Class Members)**

126.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein

127.   At all times herein relevant, as the manufacturer and/or seller of a consumer product, Defendants Rheem and Melet owed a duty to Representative Plaintiff and Class Members to provide a safe and quality product, and to provide a product that would perform as it was intended and expected. Defendants Rheem and Melet also owed a duty to Representative Plaintiff and Class Members to provide adequate instructions and warnings for proper and safe use of the product. Defendants Rheem and Melet further owed a duty to provide Representative Plaintiff and Class Members with information that the Class Products could fail at any time (including before their reasonable expected life span), and information related to their maintenance and replacement.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

128. Defendants breached their general duty of care to Representative Plaintiff and Class Members in, but not necessarily limited to, the following ways: its design, manufacturing, assembly, labeling, testing, distributing and selling of Class Products. Such breach constituted (and continues to constitute) common law negligence.

129. Defendants Rheem and Melet knew or should have known that their Class Products were defective, could fail at any time and were not suitable for their intended use.

130. Defendants' wrongful actions, inactions and omissions constituted (and continue to constitute) common law negligence.

131. As a proximate and foreseeable result of Defendants' grossly negligent conduct, Representative Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above) in an amount to be determined at trial for, *inter alia*, (i) out-of-pocket expenses associated with the prevention, detection, and remedial measures taken in connection with and as a result of defects in the Class Products, (ii) costs associated with repair and replacement of the Class Products, (iii) costs associated with repair and replacement of the products rendered useless for the intended purpose as a result of connected utility with the Class Products, (iv) services paid for (e.g., expert plumbing services), as a result of the Class Products, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the defects, (vii) insurance deductibles paid as a result of homeowner insurance claims made in the aftermath of damages to Representative Plaintiff's and Class Members' homes from flooding, (viii) future costs in terms of time, effort and money that will be expended as a result of them defective products and the damages they may cause, and (ix) emotional distress and anguish.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

### SIXTH CLAIM FOR RELIEF
#### Negligent Failure to Warn
#### (On behalf of all Class Members)

132.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

133.   Defendants Rheem and Melet manufactured, designed, sold and/or distributed defective Class Products to Representative Plaintiff and Class Members.

134.   Defendants Rheem and Melet knew or reasonably should have known that their Class Products were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable and expected manner.

135.   Defendants Rheem and Melet knew or reasonably should have known that Representative Plaintiff and Class Members would not realize that their Class Products were defective and posed a danger of causing substantial property damage, both to the product itself, as well as to other real and personal property of Representative Plaintiff and Class Members.

136.   Defendants Rheem and Melet failed to adequately warn of the danger or instruct Representative Plaintiff and Class Members that the Class Products were defective as sold and could fail at any time, including well before their reasonably expected useful life.

137.   A reasonable manufacturer, distributor, assembler or seller under the same or similar circumstances would have warned of these dangers.

138.   Defendants' negligent failure to warn or instruct Representative Plaintiff and Class Members was a substantial factor in causing the harm to the Representative Plaintiff and Class Members, placing their personal safety and personal and real property at risk.

139.   As a direct and proximate result of the defective condition of the Class Products, Representative Plaintiff and Class Members have incurred damages in an amount to be determined at trial.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**(On behalf of all Class Members)**

140.  Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

141.  Defendants made material omissions to Representative Plaintiff and the Class. For example, Defendants did not fully and truthfully disclose to Representative Plaintiff and the Class material facts concerning the inherently defective nature of the Class Products. As a result, Representative Plaintiff and the other Class Members were fraudulently induced to purchase Class Products with said substandard design and/or manufacturing defects and all of the resultant problems.

142.  Defendants made these omissions with knowledge of their falsity, and with the intent that Representative Plaintiff and the Classes rely on them.

143.  Indeed, Defendants knew, acted in bad faith and/or acted with willful/reckless disregard of the rights and interest of Representative Plaintiff and Class Members by continuing to design, manufacture, market and sell the Class Products to Representative Plaintiff and Class Members since they knew the Class Products were failing and causing catastrophic injury and economic damage by virtue of, *inter alia*, a multitude of consumer complaints, warranty claims, distributor reports and returns of defective Class Products, and insurance subrogation claims.

144.  Representative Plaintiff and the other Class Members reasonably relied on the statements that the Class Products lacked manufacturing defects and were, thus, appropriate and safe for use for their intended purpose.

145.  Representative Plaintiff and the Classes reasonably relied on these omissions and suffered damages as a result.

146.  As a direct and proximate result of this conduct, Representative Plaintiff and Class Members have incurred damages in an amount to be determined

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  at trial, and are entitled to an award of punitive damages, as allowed by law in an

2  amount to be determined;

### EIGHTH CLAIM FOR RELIEF
#### Violation of the Song-Beverly Consumer Warranty Act
#### (California Civil Code §1792, *et seq.*)
#### (On behalf of California Subclass Members Only)

7  147.   Each and every allegation of the preceding paragraphs is incorporated

8  in this cause of action with the same force and effect as though fully set forth herein.

9  148.   Defendants violated the Song-Beverly Consumer Warranty Act

10 (hereinafter, the "SBA") by, among other things, violating the implied warranties of

11 merchantability by knowingly selling Class Products that were unsuitable for their

12 expected and intended use and were, therefore, not fit for the ordinary purpose for

13 which the goods were intended to be sold.

14 149.   Representative Plaintiff and Class Members are "buyers," as those

15 terms are defined and/or used in the SBA of the Class Products.

16 150.   Defendants are "manufacturers" and/or "distributors," as those terms

17 are defined and/or used in the SBA of the Class Products.

18 151.   Each Class Product was accompanied by an implied warranty that they

19 were merchantable pursuant to California Civil Code §1792.

20 152.   However, at all relevant times, Defendants knew or should have known

21 about the Class Products' defects, including that the elastomeric (Rubber Seal)

22 gasket was inappropriate and/or improperly designed for use in water heater systems

23 using chlorinated water, and could result in catastrophic water damage to dwellings

24 and/or other personal or real property.

25 153.   The Class Products were not fit for the ordinary purpose for which such

26 goods are typically used and were not of the same quality as those generally

27 acceptable in the trade because they maintained vulnerabilities, as detailed in this

28 Complaint.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

154.    The Class Products did not measure up to the promises or facts stated in Defendants' marketing, namely that they were and would operate as safe and reliable storage devices that could be used without fear of leakage.

155.    Defendants' misconduct was a substantial factor in causing, and did proximately cause, Representative Plaintiff's and Class Members' injuries and economic loss.

156.    Representative Plaintiff and Class Members suffered harm, damages and economic loss, and Representative Plaintiff and Class Members will continue to suffer such harm, damages and economic loss in the future. Additionally, Representative Plaintiff and Class Members are entitled to recover all incidental and consequential damages pursuant to California Civil Code §§1794, *et seq.* and Commercial Code §§ 2714 and 2715, *et seq.*

157.    Defendants' conduct was gross, reckless and in bad faith and/or occurred with willful disregard of the rights and interest of Representative Plaintiff and Class Members. Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Representative Plaintiff and Class Members, so as to constitute oppression, fraud and/or malice under the law.

158.    Representative Plaintiff and Class Members are entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorneys' fees reasonably incurred in connection with the commencement and prosecution of this action, along with prejudgment interest, pursuant to California Civil Code § 3287.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

### NINTH CLAIM FOR RELIEF
#### Violations of the California Unfair Competition Law
#### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
#### (On behalf of California Subclass Members Only)

159.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

160.   Defendants are each a "person" as defined by Cal. Bus. & Prof. Code §17201.

161.   Representative Plaintiff and the California Subclass bring this cause of action against Defendants for their unlawful, unfair, fraudulent and/or deceptive business acts and practices pursuant to California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.*, which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

162.   This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices. Representative Plaintiff and the California Subclass seek to enforce a general proscription of unlawful and unfair business practices and the requirement to refrain from deceptive conduct.

163.   The UCL prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices", (b) "unfair fraudulent business acts or practices", and (c) "unfair, deceptive or misleading advertising."

164.   Defendants committed an unlawful business act or practice in violation of the UCL when it violated the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, by failing to disclose material information about the Class Products' defects. This omission also violates the deceptive prong of the UCL. As described herein, Defendants knew that the Class Products' design and manufacture was defective. Defendants also knew that Representative Plaintiff and the California Subclass could not learn or discover that the Class Products were defective until the manifestation of the failure. Defendants' superior knowledge of

the defects and the active concealment created a legal duty to disclose their knowledge.

165. Defendants' conduct also violates the "unfairness" prong of the UCL.

166. According to the Federal Trade Commission ("FTC") guidelines: "To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." FTC Policy Statement on Unfairness, appended to International Harvester Co., 104 F.T.C. 949, 1070 (1984).

167. Defendants' failure to disclose that their Class Products contained a defect that could lead to spontaneous failure produced no countervailing benefits to consumers or competition that outweigh the substantial harm to Representative Plaintiff and the California Subclass. Because the defects in the Class Products occurred without Representative Plaintiff's and the California Subclass Members' knowledge, Representative Plaintiff and the California Subclass could not have avoided such injuries. Accordingly, Defendants have violated the "unfairness" prong of the UCL.

168. Representative Plaintiff would not have purchased and installed the Class Products and exposed her real and personal property to flooding had Defendants disclosed the propensity of the Class Products to fail.

169. As a result of Defendants' violation of the UCL, Representative Plaintiff and the California Subclass have suffered injury-in-fact and lost money or property.

170. Representative Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful and fraudulent business practices or use of their Private Information, declaratory relief, reasonable attorneys' fees and costs under

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

California Code of Civil Procedure § 1021.5, injunctive relief and other appropriate equitable relief.

### TENTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On behalf of all Class Members)**

171.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth therein.

172.   By their wrongful acts and omissions described herein, Defendants have obtained a benefit by unduly taking advantage of Representative Plaintiff and Class Members.

173.   Defendants Rheem and Melet knew or should have known that payments received from Representative Plaintiff and Class Members for the Class Products were made with the expectation that the Class Products would perform as represented and that Representative Plaintiff and Class Members would not have contracted with Defendant, directly or indirectly, had they known that Class Products were substandard for the objective purpose.

174.   Defendants were unjustly enriched at the expense of Representative Plaintiff and Class Members. Defendants received profits, benefits and compensation, in part, at the expense of Representative Plaintiff and Class Members. By contrast, Representative Plaintiff and Class Members did not receive the benefit of their bargain because they paid for products that did not satisfy the purposes for which they bought/sought them. Moreover, because of their wrongful acts and omissions, Defendants charged a higher price for Class Products than their true value and obtained monies which rightfully belong to Representative Plaintiff and the Class.

175.   Since Defendants' profits, benefits and other compensation were obtained by improper means, Defendants are not legally or equitably entitled to

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  retain any of the benefits, compensation or profits they realized from these
2  transactions.

3  176. Therefore, in the alternative to the warranty claims stated above,
4  Representative Plaintiff and Class Members seek an Order of this Court requiring
5  Defendants to refund, disgorge and pay as restitution any profits, benefits and other
6  compensation obtained by Defendants from their wrongful conduct and/or the
7  establishment of a constructive trust from which Representative Plaintiff and Class
8  Members may seek restitution.

9

10  **<u>RELIEF SOUGHT</u>**

11  WHEREFORE, Representative Plaintiff, on her own behalf and on behalf of
12  each member of the proposed National Class and the California Subclass,
13  respectfully requests the Court enter judgment in her and the Classes' favor and for
14  the following specific relief against Defendants as follows:

15  1. That the Court declare, adjudge and decree that this action is a proper
16  class action and certify each of the proposed Classes and/or any other appropriate
17  subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including
18  appointment of Representative Plaintiff's counsel as Class Counsel;

19  2. For an award of damages, including actual, general, special, nominal,
20  statutory, consequential and punitive damages, as allowed by law in an amount to
21  be determined;

22  3. That the Court enjoin Defendants, ordering them to cease and desist
23  from continuing to pursue the policies, acts and practices described in this
24  Complaint;

25  4. That the Court award equitable and injunctive relief enjoining
26  Defendants from continuing to pursue the policies, acts and practices described in
27  this Complaint;

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

5.      For pre-judgment and post-judgment interest on all amounts awarded, at the prevailing legal rate;

6.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law; and

7.      For all other Orders, findings, and determinations identified and sought in this Complaint.

## JURY DEMAND

Representative Plaintiff, individually, and on behalf of the Plaintiff Classes and/or subclass(es), hereby demands a trial by jury for all issues triable by jury.


Date: November 08, 2024          By:     */s/ Scott Edward Cole*
                                         Scott Edward Cole, Esq.
                                         **COLE & VAN NOTE**
                                         555 12th Street, Suite 2100
                                         Oakland, California 94607
                                         Telephone: (510) 891-9800
                                         Email: sec@colevannote.com

                                         Ronald W. Armstrong, II, Esq. *
                                         **THE ARMSTRONG FIRM, PLLC**
                                         109 Yoalana St, Suite 210
                                         Boerne, Texas 78006
                                         Telephone: (210) 277-0542
                                         Email: rwaii@tafpllc.com

                                         **Pro hac vice* forthcoming

                                         Attorneys for Representative
                                         Plaintiff and the Plaintiff Classes

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF