1  Scott Edward Cole, Esq. (S.B. #160744)
   Laura Grace Van Note, Esq. (S.B. #310160)
2  **COLE & VAN NOTE**
   555 12th Street, Suite 2100
3  Oakland, California 94607
   Telephone:   (510) 891-9800
4  Email: sec@colevannote.com
   Email: lvn@colevannote.com
5
   Ronald W. Armstrong, II (TX S.B. #24059394)*
6  **THE ARMSTRONG FIRM, PLLC**
   109 Yoalana St, Suite 210
7  Boerne, Texas 78006
   Telephone:   (210) 277-0542
8  Email: rwaii@tafpllc.com
9  *Admitted Pro Hac Vice*
10 Attorneys for Representative Plaintiff
   and the Plaintiff Class
11

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14

15 VANESSA WEST, individually, and      **Case No. 2:24-cv-09686-CAS-MAA**
   on behalf of all others similarly
16 situated,                            **CLASS ACTION**

17              Plaintiff,              **PLAINTIFF'S UNOPPOSED MOTION
                                        FOR PRELIMINARY APPROVAL OF
18 v.                                   CLASS ACTION SETTLEMENT**

19 RHEEM MANUFACTURING
   COMPANY, and MELET               Date:        November 24, 2025
20 PLASTICS, INC.,                  Time:        10:00 AM
                                    Courtroom:   8d; 8th Floor
21              Defendants.         Judge:       Hon. Christina A. Snyder

22

23

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** on November 24, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8D of the United States District Court for the Central District of California, located at the United States Courthouse, 350 W. First Street, 8th Floor, Los Angeles, California 90012, before the Honorable Christina A. Snyder, Plaintiff Vanessa West will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure, Rule 23, for an Order granting preliminary approval of the proposed Class Action Settlement.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Class Action Settlement Agreement and Release dated September 5, 2025, and all Exhibits thereto; the Declarations of Scott Edward Cole and Ronald Armstrong in support of this Motion; the Declaration of Frank Bernatowicz in support of this Motion; the Declaration of Bruce Davis, Ph.D. in support of this Motion; the Declaration of CPT Group, the proposed Settlement Administrator in support of this Motion; the pleadings and papers on file in this action; and such other matters as may be presented to the Court at the hearing.

Plaintiff respectfully requests that the Court enter an Order: (1) certifying, for settlement purposes only, a Nationwide Class consisting of all individuals and entities that own or have owned Rheem Manufacturing Company water heaters incorporating the round poly drain valve products identified in the Settlement Agreement and/or who own or have owned structures in the United States in which such Products are or were installed; (2) preliminarily approving the Settlement as fair, reasonable, and adequate; (3) directing that notice be disseminated to the Class in accordance with the terms of the Settlement Agreement; (4) appointing Plaintiff and Class Counsel as representatives of the Class; (5) appointing CPT Group as the Settlement Administrator; and (6) setting a hearing date and schedule for final approval and related deadlines as set forth in the Settlement.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Date: October 17, 2025

**COLE & VAN NOTE**

*/s/ Scott Edward Cole*
Scott Edward Cole

**THE ARMSTRONG FIRM, PLLC**

*/s/ Ronald W. Armstrong, II*
Ronald W. Armstrong, II

Attorneys for Representative
Plaintiff and the Plaintiff Class

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-iii-
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT // Case No. 2:24-cv-09686-CAS-MAA

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT .................................................................. 1

II. ISSUES TO BE DECIDED ..................................................................... 1

III. STATEMENT OF FACTS ....................................................................... 2

IV. PROCEDURAL HISTORY ...................................................................... 3

V. THE SETTLEMENT TERMS ................................................................... 4

    A. Proposed Class Definition................................................................. 4

    B. Settlement Benefits ......................................................................... 4

        1. Extended warranty program for parts and/or labor................... 5

        2. Valve Replacement ................................................................ 7

        3. Documented Loss Reimbursement .......................................... 7

    C. Non-Monetary Settlement Benefits ................................................. 7

    D. Class Notice and Settlement Administration ................................... 8

    E. Attorneys' Fees, Costs and Representative Plaintiff's Service Award ......................................................................................................... 9

    F. Comparison of Settlement Benefits Against Full Recovery ................ 11

    G. Release ......................................................................................... 13

VI. ARGUMENT ....................................................................................... 14

    A. The Settlement Satisfies Rule 23(a) ............................................. 14

        1. The Proposed Class is Sufficiently Numerous ...................... 15

        2. The Class Satisfies the Commonality Requirement .............. 15

        3. Plaintiff's Claims and Defenses are Typical to Those of the Class .................................................................................. 16

        4. Plaintiff Will Adequately Protect the Interests of the Class .............. 16

    B. The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes ...................................................................................... 17

        1. Common Questions Predominate ......................................... 17

        2. Class Action is Superior to Other Methods of Adjudication .............. 18

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

C. The Settlement Should be Preliminarily Approved Pursuant to
   Rule 23(e).................................................................................19

   1. The Strength of Plaintiff's Case.........................................21

   2. The Risk, Expense, Complexity, and Likely Duration of Further
      Litigation .......................................................................22

   3. The Risk of Maintaining Class Action Status Through Trial ............23

   4. The Amount Offered in Settlement ....................................24

   5. The Extent of Discovery Completed and the Stage of
      Proceedings ...................................................................27

   6. Plaintiff's Counsel's Experience and Views ......................28

   7. Governmental Participants................................................28

   8. The Reaction of the Class Members to the Proposed Settlement.......28

   9. Lack of Collusion Among the Parties.................................28

D. The Court Should Approve the Proposed Notice Program.....................29

E. Appointment of the Settlement Administrator.........................................30

F. Appointment of Class Counsel ................................................................31

VII. CONCLUSION ...............................................................................................31

CERTIFICATE OF SERVICE .............................................................................32

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*
  (1997) 521 U.S. 591 ..................................................................................14

*Asner v. Sag-Aftra Health Fund*
  (C.D.Cal. Oct. 19, 2023, No. 2:20-cv-10914-CAS-JEMx) 2023 U.S.Dist.
  LEXIS 189431 ............................................................................................10

*Bellinghausen v. Tractor Supply Co.*
  (N.D.Cal. 2015) 306 F.R.D. 245 ...............................................................10

*Bentley, et al. v. LG Electronics U.S.A., Inc.*
  (D.N.J., No. 2:19-cv-13554-MCA-MAH) ................................................25

*Bykov v. DC Transp. Servs.*
  (E.D.Cal. Mar. 28, 2019, No. 2:18-cv-1691 DB) 2019 U.S.Dist. LEXIS 54652 20

*Calderon v. Wolf Firm*
  (C.D.Cal. Mar. 13, 2018, No. SACV 16-1266-JLS (KESx)) 2018 U.S.Dist.
  LEXIS 42054 ..............................................................................................24

*Celano v. Marriott Int'l Inc.*
  (N.D.Cal. 2007) 242 F.R.D. 544 ...............................................................15

*Chester v. TJX Cos.*
  (C.D.Cal. Dec. 5, 2017, No. 5:15-cv-01437-ODW (DTB)) 2017 U.S.Dist.
  LEXIS 201121 ............................................................................................23

*Class Plaintiffs v. City of Seattle*
  (9th Cir. 1992) 955 F.2d 1268 ...................................................................14

*Cottle v. Plaid Inc.*
  (N.D.Cal. 2021) 340 F.R.D. 356 ...............................................................29

*Dennis v. Kellogg Co.*
  (S.D.Cal. Nov. 14, 2013, No. 09-CV-1786-L (WMc)) 2013 U.S.Dist. LEXIS
  163118 ........................................................................................................22

*Eisen v. Carlisle & Jacquelin*
  (1974) 417 U.S. 156 ...................................................................................29

*Ellis v. Costco Wholesale Corp.*
  (9th Cir. 2011) 657 F.3d 970 .....................................................................14

*Franklin v. Kaypro Corp.* (9th Cir. 1989)
  884 F.2d 1222 .............................................................................................21

*Gautreaux v. Pierce*
  (7th Cir. 1982) 690 F.2d 616 .....................................................................20

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Granillo v. FCA US LLC*
(D.N.J. Aug. 27, 2019, Civil Action No. 16-153 (FLW) (DEA)) 2019
U.S.Dist. LEXIS 146086 ...................................................................... 10

*Graves v. United Indus. Corp.*
(C.D.Cal. Feb. 24, 2020, No. 2:17-cv-06983-CAS-SKx) 2020 U.S.Dist.
LEXIS 33781 ......................................................................................... 14

*Gribble v. Cool Transps., Inc.*
(C.D.Cal. Dec. 15, 2008, No. CV 06-04863 GAF (SHx)) 2008 U.S.Dist.
LEXIS 115560 ........................................................................................ 20

*Grimm v. Am. Eagle Airlines, Inc.*
(C.D.Cal. Sep. 24, 2014, No. LA CV11-00406 JAK (MANx)) 2014
U.S.Dist. LEXIS 199608 ....................................................................... 24

*Guido v. L'Oreal, USA, Inc., et al.*
(C.D.Cal. 2013, No. 2:11-cv-01067-CAS-JC ........................................ 15

*Hanlon v. Chrysler Corp.*
(9th Cir. 1998) 150 F.3d 1011 ............................................................... 16

*Hartranft v. Tvi, Inc.*
(C.D.Cal. Apr. 18, 2019, No. SACV 15-01081-CJC-DFM) 2019
U.S.Dist. LEXIS 68358 ......................................................................... 30

*Hensley v. Eckerhart*
(1983) 461 U.S. 424 .............................................................................. 10

*Hesse v. Sprint Corp.*
(9th Cir. 2010) 598 F.3d 581 ................................................................. 13

*Hillman v. Lexicon Consulting, Inc.*
(C.D.Cal. Apr. 27, 2017, No. EDCV 16-01186-VAP (SPx)) 2017
U.S.Dist.LEXIS 231075 ........................................................................ 27

*In re Am. Equity Annuity Pracs.*
(C.D.Cal. Jan. 29, 2014, No. CV-05-6735-CAS(MANx)) 2014 U.S.Dist.
LEXIS 207323 ........................................................................................ 10

*In re Apple Inc. Device Performance Litig.*
(9th Cir. 2022) 50 F.4th 769 ................................................................. 20

*In re Bluetooth Headset Prods. Liab. Litig.*
(9th Cir. 2011) 654 F.3d 935 ................................................................. 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
(N.D.Cal. 2010) 738 F.Supp.2d 1011 ................................................... 22

*In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*
(N.D.Ohio Jan. 26, 2016) 2016 U.S.Dist. LEXIS 188074 ................... 10

*In re Google LLC St. View Elec. Communs. Litig.*
(N.D.Cal. 2020) 611 F. Supp. 3d 872 ................................................... 18

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*In re Hyundai & Kia Fuel Econ. Litig.*
(9th Cir. 2019) 926 F.3d 539 ................................................................... 18

*In re KeySpan Corp. Sec. Litig.*
(E.D.N.Y. Aug. 25, 2005, No. CV 2001-5852 (ARR) (MDG)) 2005
U.S.Dist. LEXIS 29068 ........................................................................... 10

*In re Magsafe Apple Power Litig.*
(N.D.Cal. Jan. 30, 2015, No. 5:09-CV-01911-EJD) 2015 U.S.Dist.
LEXIS 11353 ............................................................................................ 11

*In re Netflix Privacy Litig.*
(N.D.Cal. Mar. 18, 2013, No. 5:11-CV-00379 EJD) 2013 U.S.Dist.
LEXIS 37286 ............................................................................................ 22

*In re Online DVD-Rental Antitrust Litig.*
(9th Cir. 2015) 779 F.3d 934 ................................................................... 11

*In Re Silver Wheaton Corp. Secs. Lit.*
(C.D.Cal., No. 2:15-cv-05146; 2:15-cv-5173) ....................................... 15

*In re Tableware Antitrust Litig.*
(N.D.Cal. 2007) 484 F.Supp.2d 1078 ..................................................... 20

*In re: Samsung Top-Load Washing Machine Marketing, Sales Practices and
Product Liability Litigation*
(W.D.Ok, No. 17-ML-2792-D) .................................................................. 26

*Ingram v. Coca-Cola Co.*
(N.D.Ga. 2001) 200 F.R.D. 685 ............................................................... 29

*Jian Zhou v. Faraday Future Intelligent Elec. Inc.*
(C.D.Cal. Mar. 18, 2024, No. 2:21-cv-09914-CAS (JCx)) 2024 U.S.Dist.
LEXIS 54181 ............................................................................................ 13

*Just Film, Inc. v. Buono*
(9th Cir. 2017) 847 F.3d 1108 ................................................................. 19

*Keegan v. Am. Honda Motor Co*
(C.D.Cal. 2012) 284 F.R.D. 504 .............................................................. 17

*Linneman v. Vita-Mix Corp.*
(S.D.Ohio, No. 15-cv-748-SJD) ............................................................... 25

*Linney v. Cellular Alaska P'ship*
(9th Cir. 1998) 151 F.3d 1234 ................................................................. 27

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
(9th Cir. 2001) 244 F.3d 1152 ................................................................. 19

*Lutz v. Electromed, Inc.*
(D.Minn. May 23, 2023, No. 21-CV-02198) .............................................. 9

*Malta v. Fed. Home Loan Mortg. Corp.*
(S.D.Cal. Feb. 4, 2013, No. 10-CV-1290 BEN (NLS)) 2013 U.S.Dist.
LEXIS 15731 ............................................................................................ 19

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*McBean v. City of New York*
(S.D.N.Y. 2006) 233 F.R.D. 377 ...................................................................10

*Meredith Corp. v. SESAC, LLC*
(S.D.N.Y. 2015) 87 F. Supp. 3d 650 ...........................................................23

*Meyer v Portfolio Recovery Assocs., LLC*
(9th Cir. 2012) 707 F.3d 1036 ......................................................................16

*Murillo v. Pac. Gas & Elec. Co.*
(E.D.Cal. 2010) 266 F.R.D. 468 ...................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
(C.D.Cal. 2004) 221 F.R.D. 523 ...................................................................28

*Negrete v. Allianz Life Ins. Co. of N. Am.*
(C.D.Cal. 2006) 238 F.R.D. 482 ...................................................................15

*Norton v. Maximus, Inc.*
(D.Idaho Apr. 17, 2017, No. 1:14-0030 WBS) 2017 U.S.Dist. LEXIS 61350....28

*Phillips Petroleum Co. v. Shutts*
(1985) 472 U.S. 797 ......................................................................................30

*Radcliffe v. Experian Info. Solutions*
(9th Cir. 2013) 715 F.3d 1157 ......................................................................10

*Reyes v. Experian Info. Sols., Inc.*
(C.D.Cal. Jan. 27, 2020, No. SACV 16-00563 AG (AFMx)) 2020
U.S.Dist. LEXIS 13936 .................................................................................20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
(9th Cir. 2006) 442 F.3d 741 ........................................................................13

*Risto v. Screen Actors Guild-American Federation of Television and Radio Artists, et al.*
(C.D.Cal. 2020, No. 2:18-cv-07241-CAS-PLAx).........................................15

*Rodriguez v. W. Publ'g Corp.*
(9th Cir. 2009) 563 F.3d 948 ........................................................................29

*Senne v. Kan. City Royals Baseball Corp.*
(9th Cir. 2019) 934 F.3d 918 ........................................................................18

*Staton v. Boeing Co.*
(9th Cir. 2003) 327 F.3d 938 ........................................................................11

*Tyson Foods, Inc. v. Bouaphakeo*
(2016) 577 U.S. 442 ......................................................................................18

*Waldrup v. Countrywide Financial Corp. et al.*
(C.D.Cal., No. 2:13-cv-08833-CAS-AGRx).................................................15

*Wal-Mart Stores, Inc. v. Dukes*
(2011) 564 U.S. 338 ......................................................................................15

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Wang v. Chinese Daily News, Inc.*
  (9th Cir. 2013) 737 F.3d 538 ..................................................................15

*Wilson v. Tesla, Inc.*
  (N.D.Cal. July 8, 2019, No. 17-cv-03763-JSC) 2019 U.S.Dist. LEXIS 112866.28

*Wolin v. Jaguar Land Rover N. Am., LLC*
  (9th Cir. 2010) 617 F.3d 1168 ................................................................19

**Statutes/Rules**

Fed. R. Civ. P. 23 ...............................................................................15, 16, 17

Fed. R. Civ. P. 23(a) ...............................................................................15, 17

Fed. R. Civ. P. 23(a)(2) ..................................................................................16

Fed. R. Civ. P. 23(a)(4) ..................................................................................17

Fed. R. Civ. P. 23(b)(1) ..................................................................................17

Fed. R. Civ. P. 23(b)(2) ..................................................................................17

Fed. R. Civ. P. 23(b)(3) .....................................................................17, 18, 19

Fed. R. Civ. P. 23(c)(2) ..................................................................................30

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................30

Fed. R. Civ. P. 23(e) ................................................................................20, 21

Fed. R. Civ. P. 23(e)(1) ..................................................................................20

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................30

Fed. R. Civ. P. 23(e)(2) ..................................................................................20

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ...................................................................31

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................31

**Other Authorities**

4 A Conte & H. Newberg, *Newberg on Class Actions* (4th ed. 2002) ....................23

4 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2014) Settlement .....5

*Manual for Complex Litigation* (Fourth) ...............................................................15

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## I.  PRELIMINARY STATEMENT

Plaintiff Vanessa West, individually and on behalf of all others similarly situated, reached a proposed class action settlement with Defendants Rheem Manufacturing Company and Melet Plastics, Inc. (collectively, "Defendants") concerning alleged defects in certain round poly drain valves used in water heaters and other applications. The Settlement is the product of rigorous, arm's-length negotiations, including a full-day mediation session with the Honorable Philip S. Gutierrez (Ret.). These negotiations were informed by substantial informal discovery, including technical evaluation of the allegedly defective product ("Class Products"), expert damage modeling and class wide data concerning the nature, scope, and distribution of the component at issue.

Plaintiff now seeks preliminary approval of the Class Action Settlement Agreement and Release, attached hereto, as within the range or reasonableness of a fair, reasonable, and adequate compromise under Rule 23(e)(2) of the Federal Rules of Civil Procedure, so that notice may be provided to the proposed Class. A proposed order granting preliminary approval is submitted concurrently herewith.

## II. ISSUES TO BE DECIDED

1. Whether the proposed Class meets the requirements of Federal Rules of Civil Procedure, Rule 23 and should be certified for settlement purposes;

2. Whether the proposed settlement is within the range of reasonableness of a fair, reasonable, and adequate compromise and should be preliminarily approved under Rule 23(e);

3. Whether the Court should approve the proposed Notice Program and direct that notice be disseminated to members of the Class;

4. Whether the named Plaintiff, Vanessa West, should be appointed as Class Representative; and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

5.     Whether Plaintiff's Counsel, Scott Edward Cole of Cole & Van Note and Ronald Armstrong, II of The Armstrong Firm, PLLC, should be appointed as Class Counsel.

## III.    STATEMENT OF FACTS

This class action arises out of Rheem Manufacturing Company's design, manufacture, and sale of allegedly defective water heater drain valves to Plaintiff and other similarly situated individuals. Like many Class Members who made claims to their insurance carriers for reimbursement, within a modest time after its acquisition, Plaintiff's water heater drain valve failed and flooded portions of her home.

Plaintiff alleged that Defendants Rheem and Melet knew or certainly should have known of the latent defects in the millions of drain valves these companies placed into American commerce for years.

Through its supplier, Melet, Rheem formulates, designs, manufactures, assembles, tests, labels, markets, advertises, warrants, and/or offers for distribution and sale drain valves which are used to discharge water and sediment from household water heaters. The drain valves at issue in this lawsuit were manufactured, at least between 2019 and 2023. These drain valves incorporate a rubber seal and plastic stem which Plaintiff alleges, due to their chemical composition, prematurely decay, fracture, and fail when used in most chlorine and/or chlorimide treated water supplies. If true, they are undoubtedly unsuitable for their intended purpose.

As a result of the alleged defects, on October 26, 2023, Plaintiff experienced damage when the drain valve integrated into her Rheem water heater failed and caused flooding into closets, a hallway, the entry/foyer, living room, dining room and kitchen in her Woodland Hills home. And, while some of the costs associated with Plaintiff's experience were covered by insurance, she remains out-of-pocket for a portion of her insurance deductible, for her lost time and opportunity costs, and for other special damages not covered by insurance.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1   As to the remaining members of the Class, if they keep their respective water

2   heater components long enough, the part may eventually fail. This settlement helps

3   them avoid the kind of loss suffered by Plaintiff West.

4   **IV.    PROCEDURAL HISTORY**

5   On November 8, 2024, Plaintiff Vanessa West filed a class action complaint

6   in this United States District Court, alleging that the Class Products were defectively

7   designed or manufactured. (*See*, ECF No. 1.) On January 6, 2025, Defendant Rheem

8   filed a Motion to Dismiss the Complaint. (*See*, ECF No. 26.) The Court held a

9   hearing on February 3, 2025, and issued its ruling, granting in part and denying in

10  part Rheem's Motion. (*See*, ECF No. 37.)

11  On February 25, 2025, Plaintiff filed the operative First Amended Complaint.

12  (*See*, ECF No. 38.) Rheem filed its Answer on March 28, 2025. (*See*, ECF No. 43.)

13  On that same day, Defendant Melet Plastics filed its own Motion to Dismiss. (*See*,

14  ECF No. 44.) The Court subsequently granted the parties' joint request to continue

15  the hearing on Melet's Motion and the Scheduling Conference to allow the parties

16  to finalize settlement discussions. (*See*, ECF Nos. 48, 50.)

17  Over the course of litigation and over the course of an entire year prior to

18  filing, class counsel did substantial work and devoted substantial resources to this

19  case. This included significant independent research, retention of appropriate

20  experts, necessary product testing, engineering analysis of the products and

21  evaluation of warranty and claim data, despite the significant risks associated with

22  all such litigation.

23  On this informed basis, the lawsuit was filed, motion work and further

24  research was conducted, informal discovery was pursued, experts were consulted

25  repeatedly throughout the process, and the parties engaged in arm's-length

26  negotiations and participated in a full-day mediation with the Honorable Philip S.

27  Gutierrez (Ret.) of JAMS, ultimately reaching the proposed class-wide resolution

28  now before the Court for preliminary approval. Over the following months, the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    parties finalized the terms of the agreement, which were memorialized in the

2    Settlement Agreement executed on or about September 5, 2025.

3        The Settlement provides for reimbursement of documented losses, warranty

4    extensions, and product replacement options for eligible Class members. The

5    proposed relief is structured to provide both monetary compensation and equitable

6    relief for individuals nationwide who own or have owned Class Products. Plaintiff

7    now respectfully submits the Settlement for preliminary approval.

8    **V. THE SETTLEMENT TERMS**

9        **A. <u>PROPOSED CLASS DEFINITION</u>**

10       For settlement purposes only, Plaintiff seeks certification of the following

11   Settlement Class:

12
13       *All individuals and entities that own or have owned Class Products*
         *and/or who own or have owned homes or other structures physically*
14       *located in the United States in which the Class Products are or were*
         *installed.*
15

16   (Settlement Agreement ("S.A") ¶ 1.30 (emphasis added).)

17       "Class Products" means "round poly drain values . . . manufactured and

18   advertised between 2019 and 2023." (S.A. ¶ 1.9.) This includes Rheem part

19   numbers: AP12159A-K, AP14830A-G, AP16800A-G, AP16838A-G, SP12159A-

20   K, SP14830A-G, P16800A-G, and SP16838A-G. (*Id.*)

21       **B. <u>SETTLEMENT BENEFITS</u>**

22       The fairness requirement of Fed. R. Civ. P. 23(e)(2) is intended to "ensure that

23   similarly situated class members are treated similarly and that dissimilarly treated

24   class members are not arbitrarily treated as if they were similarly situated."

25   (4 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2014) Settlement,

26   § 13:59, p. 500.) Put simply, class members with different claims ought not "receive

27   the same relief." (*Id.* at § 13:60.) As such, here, the Settlement provides multi-

28   faceted and robust relief for Class Members whether or not they already experienced

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

property damage or incurred other out-of-pocket expenses due to a Class Product failure. Specifically, Defendants will provide compensation in the form of: (1) either a two-year extended warranty program for parts or a one-year extended warranty program for parts and labor, (2) a brass valve replacement option and/or (3) Documented Loss Reimbursement (subject to a $500,000 aggregate cap). Each of these benefits is designed to make Class Members whole for issues traceable to the alleged defect and to address Class Member concerns going forward.

## 1. Extended warranty program for parts and/or labor

All Class Members, regardless of whether they submit a claim form, will automatically receive a two-year extension on any warranty coverage for the Class Products for parts (materials and workmanship), consistent with existing warranty terms. Similarly, if the applicable warranty has expired for any Class Member as of the Effective Date of this Settlement, that Class Member shall receive a new two-year warranty on the Class Product, said warranty(ies) to commence as of the Effective Date of this Settlement. Given that Melet's production of all Class Products of this design was halted in 2023, Rheem has argued that, if any subject valve was going to fail, it would likely have failed already, making an extended parts and service warranty of a longer period than two years of questionable utility. The total water heater sales with Class Products through 2024 was 8,792,586. (Bernatowicz Decl. ¶ 13.) If all these purchasers opted for a two-year automatic warranty extension and filed a claim, the value of Melet plastic drain valve replacements, at $9.48 each, would amount to $83.4 million. *Id.*

To determine the benefit of the Settlement, Plaintiff's expert reviewed pleadings, documents, and sources of information provided by proposed Class Counsel, including Plaintiff's Non-Confidential Mediation Statement, certain emails from opposing counsel providing class product numbers, pricing data by warranty length for Rheem Water Heaters that contain certain Melet drain valves (Class Water Heaters), warranty information, warranty claims, and other relevant

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

information, as well as performed his own independent research on pertinent issues such as pricing and margin for the Class Water Heaters, applicable extended warranty pricing offered from the marketplace, researched and analyzed the business terms and conditions of those warranties, researched and analyzed reasonable estimates of the apportioned value of such warranties reasonably tied to the defective Melet drain valve, reviewed consumer water damage claims made to insurers, and reviewed and analyzed various public financial, accounting, and business information pertaining to the Defendants and the Class Water Heaters, and estimated a repair rate of up to 2%. (Bernatowicz Decl. ¶ 8.) Plaintiff's expert determined the distribution of drain valve repairs by year and calculated the maximum repair benefits by year based on the estimated repair rate range and the Settlement Agreement's terms. (Bernatowicz Decl. ¶ 34.)

Given that Rheem sells water heaters at varying price points consistent with the associated warranty on said units, Plaintiff's expert calculated that the value of the two-year extended benefit is $7,027,018. (Bernatowicz Decl. ¶ 17.) Again, there is no coupon aspect to this settlement nor any reversion of benefits back to Defendants.

As a first alternative to the automatic two-year warranty extension, Class Members may elect, during the settlement claims period, to receive a one-year extension on any warranty coverage for both parts and labor (e.g., installation of the item by a plumber). As also detailed in Plaintiff's expert's declaration,[1] the significant added costs of labor add significant overall value to the settlement. Notably, Plaintiffs' expert determined the typical appliance average cost (parts and labor) to be $200 to $300. (Bernatowicz Decl. ¶ 13.) As a result, the settlement limits this alternative benefit to the first 100,000 Class Members who request it. The value of this extended one-year service parts and labor warranty plan totals $47,635. (Bernatowicz Decl. ¶ 28.)

---

[1] (Bernatowicz Decl. ¶ 22-28.)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Based on Plaintiffs' expert's calculations, Rheem will potentially pay out a maximum of $8,024,054 in extended warranty repair costs relating to amounts associated with estimates for two-year parts only and one year-parts and labor alternatives. (Bernatowicz Decl. ¶ 35.)

### 2. Valve Replacement

As a second alternative, Class Members may elect, during the settlement claims period, to replace their Class Products with an arguably superior brass valve, provided by Rheem at its expense. This option shall be available to the first 20,000 Class Members who request it. On this basis, the replacement Brass Drain Valve Benefit is $449,400. (Bernatowicz Decl. ¶ 31.)

### 3. Documented Loss Reimbursement

All Class Members may submit claims for reimbursement of documented losses that are reasonably traceable to a failure of the Class Products, provided that such losses have not already been reimbursed by Defendants. (S.A. ¶ 1.14.) To qualify, Class Members must submit documentation such as dated receipts, invoices, technician reports, or service records and evidence connecting the expenses to the Class Products. (S.A. ¶ 3.1(a).)

Each valid claim is eligible for reimbursement up to $1,500, subject to a total aggregate cap of $500,000 across all Documented Loss claims. (S.A. ¶ 3.1(b).) If the total of all valid claims exceeds the cap, payments will be reduced *pro rata* across claimants on an equal percentage basis. (S.A. ¶ 3.1(c).) All Documented Loss claims will be reviewed by the Settlement Administrator for sufficiency and compliance with documentation requirements. (S.A. ¶ 3.1(e).)

As for the value of the claims made for reimbursement of out-of-pocket repair and replacement costs, with an estimated claims rate of even 1.9%, it is anticipated that Class Members will meet the cap of $500,000. (Bernatowicz Decl. ¶¶ 32-34.)

### C. <u>NON-MONETARY SETTLEMENT BENEFITS</u>

As detailed further below, Defendants will also pay all costs of claims

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

administration, Plaintiff's Counsel's fees and litigation costs, and a service payment for the Class representative for the risk and effort required to bring and maintain this action. Since Rheem/Melet modified/improved the design of the drain valve in roughly 2023, no need exists for future injunctive or relief other than the terms set forth here.

### D. CLASS NOTICE AND SETTLEMENT ADMINISTRATION

The cost of Class notice and settlement administration will be paid by Rheem (subject to Court approval). (S.A. ¶ 5.) This benefit is valued at $550,000.00 in that CPT Group has provided a capped bid for that amount. As described in the Settlement Agreement, the notice program shall include a Publication Notice (Exhibit 2), Claim Form (Exhibit 1), and the establishment of a Settlement Website. (S.A. ¶ 1.8.)

As stated above, CPT Group, the proposed Settlement Administrator, projects a claims rate of 1% of the several million members of the Class. (CPT Group Decl. ¶ 26.) In an attempt to obtain a higher claims rate, the parties have negotiated a robust notice program which provides for publication notice to Class Members. (*See*, S.A ¶ 6.) To receive monetary benefits for Documented losses, Class Members are required to submit a claim form within 75 days of notice dissemination (or 45 days before the date set for the Fairness Hearing (whichever is later)). (S.A. ¶ 6.11.) The claim forms are designed to be user-friendly. Although a claim form election will be required for any Class Members who choose to forgo the two-year warranty extension in lieu of a one-year parts labor warranty or the brass valve replacement option, any Class Members who do not receive actual notice or who elect to do nothing will automatically get the two-year warranty extension.

No later than 30 days after entry of the Preliminary Approval Order, the Settlement Administrator will initiate the Publication Notice. (S.A. ¶ 1.18.) Before the dissemination of the Publication Notice, the Settlement Administrator shall

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

establish a settlement website that will inform members of the Class of the terms of the Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, relevant case filings, including the Class Notice, the Claim Form, the Preliminary Approval Order, the Settlement Agreement, the Complaint, and any other materials agreed upon by the parties and/or required by the Court. (S.A. ¶ 5.4.) Additionally, the Settlement Administrator will establish a toll-free telephone number with recorded answers to commonly asked questions about the settlement and the ability to leave a message and request a call back. (S.A. ¶ 5.5)

Plaintiff's Counsel, based on their experience with consumer class action cases and in consultation with the Settlement Administrator about the claims process in this case, anticipate that there will be a claims rate in this case of between 1-5 percent of the Class. (*See*, *e.g.*, Memorandum of Law in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement*, Lutz v. Electromed, Inc.* (D.Minn. May 23, 2023, No. 21-CV-02198) ECF No. 67 at 9 (roughly 4 percent claims rate, in non-reversionary common fund settlement including *pro rata* cash payments).)

## E. ATTORNEYS' FEES, COSTS AND REPRESENTATIVE PLAINTIFF'S SERVICE AWARD

Plaintiff's Counsel intends to request fees and reimbursement of their costs in an aggregate amount not to exceed $950,000.00. (S.A. ¶ 8.3.) The Class and the Court will have a full opportunity to consider the appropriate fees as part of the final approval process, at which time Plaintiffs' Counsel will submit final figures with further detail concerning the hours worked at various stages of this Lawsuit.

These fees are reasonable here given that Defendants are providing valuable cash and non-cash benefits to the Class, paying for a six-figure claims administration process, etc., all of which add substantial value to the Settlement. (*See*, Cole Decl. ¶¶ 20, 46, 51.) Based on these settlement benefits, if Plaintiff's

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Counsel is awarded this full amount, they will not receive a disproportionate share

2  of the Settlement. Also, the fees, costs and Plaintiff's enhancement award were

3  negotiated here *only after all other terms were agreed-upon* (Cole Decl. ¶ 28), and

4  the Settlement was not made contingent upon approval of the requested fees, costs

5  and/or the service payment. (S.A. ¶ 8.4.)[2]

6      Plaintiff also intends to request a service award of $5,000 for the named

7  plaintiff. (S.A. ¶ 8.2.) This too is presumptively reasonable.[3] In evaluating service

8  awards, the Court may consider whether there is a "significant disparity between

9  the incentive award[] and the payments to the rest of the class members" such that

10  it creates a conflict of interest. (*Radcliffe v. Experian Info. Solutions* (9th Cir. 2013)

11  715 F.3d 1157, 1165.) Important considerations are "the number of class

12

13  [2] Courts generally prefer that litigants agree to a fee award. (*See*, *Hensley v.

14  Eckerhart* (1983) 461 U.S. 424, 437 ("Ideally, of course, litigants will settle the

   amount of the fee."); *In re Ford Motor Co. Spark Plug & Three Valve Engine Prods.*

15  *Liab. Litig.* (N.D.Ohio Jan. 26, 2016) 2016 U.S.Dist. LEXIS 188074, at *28

16  ("Negotiated and agreed-upon attorneys' fees as part of a class action settlement are

   encouraged as an 'ideal' toward which the parties should strive.").) Where, as here,

17  the fee award is to be paid separately by the defendant rather than as a reduction to

18  a common fund, "the Court's fiduciary role in overseeing the award is greatly

   reduced, because there is no potential conflict of interest between attorneys and

19  class members." (*McBean v. City of New York* (S.D.N.Y. 2006) 233 F.R.D. 377,

20  392; *see Granillo v. FCA US LLC* (D.N.J. Aug. 27, 2019, Civil Action No. 16-153

   (FLW) (DEA)) 2019 U.S.Dist. LEXIS 146086, at *6; *In re KeySpan Corp. Sec.*

21  *Litig.* (E.D.N.Y. Aug. 25, 2005, No. CV 2001-5852 (ARR) (MDG)) 2005 U.S.Dist.

22  LEXIS 29068, at *35 ("The quality of opposing counsel is also important in

23  evaluating the quality of Class Counsels' work.").)

   [3] The Service Award requested here for the named Plaintiff is within the accepted

24  range. "Incentive awards typically range from $2,000 to $10,000." (*Bellinghausen*

25  *v. Tractor Supply Co.* (N.D.Cal. 2015) 306 F.R.D. 245, 267.); (*Asner v. Sag-Aftra*

   *Health Fund* (C.D.Cal. Oct. 19, 2023, No. 2:20-cv-10914-CAS-JEMx) 2023

26  U.S.Dist. LEXIS 189431, at *41. (approving a service award of $5,000 each); (*In*

27  *re Am. Equity Annuity Pracs.* (C.D.Cal. Jan. 29, 2014, No. CV-05-6735-

28  CAS(MANx)) 2014 U.S.Dist. LEXIS 207323, at *29 (approving a service award of

   $10,000 each).)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." (*In re Online DVD-Rental Antitrust Litig.* (9th Cir. 2015) 779 F.3d 934, 947, quoting *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 977.) A court may also consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." (*Staton*, at 977; *In re Magsafe Apple Power Litig.* (N.D.Cal. Jan. 30, 2015, No. 5:09-CV-01911-EJD) 2015 U.S.Dist. LEXIS 11353, at *48; *see*, *Asner*, at *41.)

Throughout the course of the Lawsuit and during the parties' negotiations, the Plaintiff collected and produced documents, reviewed and approved the Complaint and other major filings, maintained contact with Plaintiff's Counsel, stayed abreast of settlement negotiations, and advised on settlement of this Lawsuit. (Cole Decl. ¶¶ 26, 32.) Again, the Settlement is not contingent upon approval of the Service Award to the Class representative. (S.A. ¶ 8.4.)

## F. COMPARISON OF SETTLEMENT BENEFITS AGAINST FULL RECOVERY

The benefits made available under this Settlement give Plaintiff and Class Members recovery for their out-of-pocket losses (the make-whole remedy) and, going forward, peace of mind that any damage attendant to a Class Products' future failure is avoidable (vis-à-vis replacement with a brass alternative or a warranty extension on parts and/or labor). Rheem water heaters carry differing price points, conditioned on the length of the associated warranty. For example, a 50-gallon natural gas water heater comparable to the unit which the named Plaintiff owns, with a 6-year warranty costs $659.00 whereas the same water heater with a 12-year warranty costs $859.00.[4] In other words, Class Members already see value in these

---

[4] *Rheem Performance 50 gal. tall 38,000 BTU Natural Gas Water Heater with 6-Year Warranty XG50T06EC38U1*. Available at:

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    warranties, evidenced by them paying a higher price for longer warranty periods.

2    Extending those warranties even further, as this settlement would do, thus translates

3    to real life monetary value for the Class.

4        As detailed herein, one option for Class Members is a one-year warranty

5    extension on parts <u>and</u> labor, which effectively <u>doubles</u> the labor warranty offered

6    when Class Members buy a new Rheem water heater. According to

7    ConsumerAffairs.com, the average costs of a visit and water heater repair by a

8    qualified plumber varies by geography, but averages $600 in the United States.[5]

9    Without trying to predict how many Class Members will choose that settlement

10   option, making it available through this settlement for up to 100,000 Class Members

11   translates to a value of $60 million.

12       Finally, and independent of and in addition to these other options, Class

13   Members may seek to recover for any documented losses attendant to valve failure

14   up to $1,500, subject to a total aggregate cap of $500,000. Given the presence of

15   insurance coverage already for such claims, this cap is more than reasonable.

16   According to Ourinsuranceworld.com, while homeowners insurance deductibles

17   vary state-by-state and are often decided based upon an individual's financial

18   situation, risk tolerance, claims history, and the type of coverage sought, as of 2023,

19   the average home insurance deductible in the United States typically ranged from

20   $1,000 to $2,500.[6] Given that a higher deductible equates to a lower monthly

21   premium, most insurance companies recommend a deductible of at least $500,

22

23   https://www.homedepot.com/p/Rheem-Performance-50-Gal-Tall-38-000-BTU-

24   Natural-Gas-Water-Heater-with-6-Year-Warranty-XG50T06EC38U1/326590285 (last visited Sept. 25, 2025).

25   [5] Bradford, S. (2024) *Knowing the Cost Before Getting an Estimate can Equal Big*

26   *Savings*. Available at: https://www.consumeraffairs.com/homeowners/cost-to-repair-water-heater.html (last visited Sept. 25, 2025).

27   [6] Shine (2024) *What is the Average Home Insurance Deductible*, *Our Insurance*

28   *World*. Available at: https://www.ourinsuranceworld.com/archives/12133 (last visited Sept. 25, 2025).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

while raising it to $1,000 can trim premiums by up to 25 percent.[7] According to Liberty Mutual, the average home insurance deductible is $1,000.[8] As such, and since most homeowners policyholders would submit catastrophic water damage claims to their insurance carriers for indemnity, their actual out of pocket loss would range between $500 to $2,500, with a national average of $1,000.

## G. **RELEASE**

The Settlement Agreement provides for a full release of all claims whether known or unknown, asserted or unasserted, that result from, arise out of, are based upon, or relate to (a) the allegedly defective product or (b) any of the alleged violations of laws or regulations cited in the Complaint or the action. It is not simply a release of all claims against Rheem by the putative Class and is tailored to the facts of this case, in exchange for benefits from this case. As such, the release satisfies the Ninth Circuit's "identical factual predicate" requirement. (*See*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* (9th Cir. 2006) 442 F.3d 741, 748 ("[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action. A class settlement may also release factually related claims against parties not named as defendants . . . ." (citations omitted and alterations adopted)); *Hesse v. Sprint Corp.* (9th Cir. 2010) 598 F.3d 581, 590; *Jian Zhou v. Faraday Future Intelligent Elec. Inc.* (C.D.Cal. Mar. 18, 2024, No. 2:21-cv-09914-CAS (JCx)) 2024 U.S.Dist. LEXIS 54181, at *21.) Furthermore, the parties know of no other case that will be affected by this Settlement.

---

[7] *12ways to Lower Your Homeowners Insurance Costs*. Available at: https://www.iii.org/sites/default/files/docs/pdf/12ways.pdf (last visited Sept. 25, 2025).

[8] *Liberty Mutual* (2022) *Home Insurance Deductibles: FAQs.* Available at: https://www.libertymutual.com/insurance-resources/property/home-insurance-deductibles-faqs (last visited Sept. 25, 2025).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## VI.    ARGUMENT

Courts within the Ninth Circuit strongly favor class action settlements where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. (*Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276 (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); (*Graves v. United Indus. Corp.* (C.D.Cal. Feb. 24, 2020, No. 2:17-cv-06983-CAS-SKx) 2020 U.S.Dist. LEXIS 33781, at *21 ("The Court concludes that the costs, risks, and delay of trial and appeal further support final approval.").)

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." (§ 21.632.) Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. (*Amchem Prods., Inc. v. Windsor* (1997) 521 U.S. 591, 620.) Plaintiff seeks certification of a Class consisting of approximately 7 to 8 million individuals. For the reasons set forth below, the Court should certify the Class for settlement purposes and preliminarily approve the Settlement.

### A.    THE SETTLEMENT SATISFIES RULE 23(A)

Before assessing the parties' settlement, the Court should first confirm the underlying settlement Class meets the requirements of Rule 23(a). (*See, Amchem*, *supra*, 521 U.S. at p. 619; *Manual for Complex Litigation* (Fourth), § 21.632.) The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. (Fed. R. Civ. P. 23(a); (*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011) 657 F.3d 970, 978–80.)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

### 1. The Proposed Class is Sufficiently Numerous

Generally, courts will find numerosity is satisfied where a class includes at least 40 members. (*See*, *e.g.*, *Celano v. Marriott Int'l Inc.* (N.D.Cal. 2007) 242 F.R.D. 544, 548-49; *Graves*, *supra*, 2020 U.S.Dist. LEXIS 33781 at p. *28.) Defendants' represent the number of Class Members is at least 7 to 8 million individuals, such that the proposed Class easily satisfies Rule 23's numerosity requirement. (Cole Decl. ¶ 43.)

### 2. The Class Satisfies the Commonality Requirement

The Class satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." (*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 350.) Here, as in many consumer class actions, common issues center on Defendants' conduct, satisfying the commonality requirement. (*See*, *e.g.*, *Guido v. L'Oreal, USA, Inc., et al.* (C.D.Cal. 2013, No. 2:11-cv-01067-CAS-JC) (adversarial class cert granted); *Risto v. Screen Actors Guild-American Federation of Television and Radio Artists, et al.* (C.D.Cal. 2020, No. 2:18-cv-07241-CAS-PLAx) (same); *Waldrup v. Countrywide Financial Corp. et al.* (C.D.Cal., No. 2:13-cv-08833-CAS-AGRx) (same); *In Re Silver Wheaton Corp. Secs. Lit.* (C.D.Cal., No. 2:15-cv-05146; 2:15-cv-5173) (same).)

The Commonality prong requires that the action involve "questions of law or fact common to the class." (Fed. R. Civ. P. 23(a)(2).) "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement." (*Wang v. Chinese Daily News, Inc.* (9th Cir. 2013) 737 F.3d 538, 544, quoting *Wal-Mart Stores, Inc.*, *supra*, 564 U.S. at p. 359.) Where claims "derive from a common core of salient facts, and share many common legal issues," commonality is met. (*Negrete v. Allianz Life Ins. Co. of N. Am.* (C.D.Cal. 2006) 238 F.R.D. 482, 488.)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Here, all Class claims derive from the same circumstances—each Class member utilized the Class Product containing a realized or latent defect, which was due to the same allegedly flawed design. Moreover, Defendants' conduct—manufacturing these Class Products and continuing to market and sell them through, at least, 2023—is identical for and forms the basis of each Class Member's claim. This uniform conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. (*Wal-Mart Stores, Inc.*, 564 U.S. at 350.) These facts more than suffice to meet the commonality requirement.

### 3. Plaintiff's Claims and Defenses are Typical to Those of the Class

Plaintiff satisfies the typicality requirement of Rule 23 because Plaintiff's claims, which are based on Defendants' alleged flawed design of the Class Product, are "reasonably co-extensive with those of the absent class members." (*Meyer v Portfolio Recovery Assocs., LLC* (9th Cir. 2012) 707 F.3d 1036, 10442 (upholding typicality finding).) Plaintiff alleges her drain valve failed causing catastrophic water damage, and that she was therefore impacted by the same allegedly inadequate product design that allegedly harmed the rest of the Class.

### 4. Plaintiff Will Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. (Fed. R. Civ. P. 23(a)(4); *see also, Ellis*, *supra*, 657 F.3d at p. 985, citing *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1020.)

Here, Plaintiff has no conflicts of interest with other Class members, is subject to no unique defenses, and she and her counsel have and continue to vigorously prosecute this case on behalf of the Class. Plaintiff is a member of the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Class who purchased the Class Products directly or indirectly from Defendants and experienced the same injuries and seek, like other Class Members, compensation for Defendants' alleged product design shortcomings. As such, Plaintiff's interests and the interests of her counsel are consistent with those of other Class Members. Further, proposed Class Counsel have decades of combined experience handling complex class action cases in state and federal courts around the United States. (Cole Decl. ¶ 55-60.) Thus, Plaintiff satisfies the requirement of adequacy.

**B.    THE REQUIREMENTS OF RULE 23(B)(3) ARE MET FOR SETTLEMENT PURPOSES**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." (*Hanlon*, *supra*, 150 F.3d at p. 1022.) Here, Plaintiff alleges that a Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy.

**1.  Common Questions Predominate**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." (*Amchem*, *supra*, 521 U.S. at p. 623 (citation omitted).) "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." (*See*, *Keegan v. Am. Honda Motor Co* (C.D.Cal. 2012) 284 F.R.D. 504, 526, quoting *Hanlon*, *supra*, 150 F.3d at p. 1022.)

Consistent with the position on commonality, Plaintiff alleges that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

[defendant's] conduct.'" (*In re Google LLC St. View Elec. Communs. Litig.* (N.D.Cal. 2020) 611 F. Supp. 3d 872, 885, alterations in original, quoting *In re Hyundai & Kia Fuel Econ. Litig.* (9th Cir. 2019) 926 F.3d 539, 559.) Plaintiff's claims depend on whether Defendants used reasonable care to protect class members and her property, used proper materials in the drain valves, what testing was done to ensure valves operated safely and would last and how the valves were marketed. All such questions can be resolved using the same evidence for all Class Members and, thus, is precisely the type of predominant question that makes a class-wide settlement worthwhile. (*See, e.g, Tyson Foods, Inc. v. Bouaphakeo* (2016) 577 U.S. 442, 453 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'") (citation omitted).) Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."); *Senne v. Kan. City Royals Baseball Corp.* (9th Cir. 2019) 934 F.3d 918, 943 ("[T]he need for individual damages calculations does not, alone, defeat class certification.") (citation omitted).)

### 2. Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. (Fed. R. Civ. P. 23(b)(3).)

First, adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

too complex, and the required expert testimony and document review too costly. (*See*, *Just Film, Inc. v. Buono* (9th Cir. 2017) 847 F.3d 1108, 1123.) There are millions of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. (*See*, *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152, 1163 (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also*, *Wolin v. Jaguar Land Rover N. Am., LLC* (9th Cir. 2010) 617 F.3d 1168, 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *See*, Fed. R. Civ. P. 23(b)(3).) Second, there are no other individual actions currently pending arising from these allegations. (*See*, *Malta v. Fed. Home Loan Mortg. Corp.* (S.D.Cal. Feb. 4, 2013, No. 10-CV-1290 BEN (NLS)) 2013 U.S.Dist. LEXIS 15731, at *11 (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members [made it] unlikely that individual actions will be filed").)

Finally, because the claims are being certified for purposes of settlement, there are no issues with manageability. Resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. For these reasons, certification of the Class for purposes of settlement is appropriate.

## C. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED PURSUANT TO RULE 23(E)

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" (*Reyes v. Experian Info. Sols., Inc.* (C.D.Cal. Jan. 27, 2020, No. SACV 16-00563 AG (AFMx)) 2020

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    U.S.Dist. LEXIS 13936, at *2.) Rule 23(e) provides that a proposed class action
2    may be "settled, voluntarily dismissed, or compromised only with the court's
3    approval." Moreover, "[t]he parties must provide the court with information
4    sufficient to enable it to determine whether to give notice of the proposal to the
5    class." (Fed. R. Civ. P. 23(e)(1)(A).) If the parties make a sufficient showing that
6    the Court will likely be able to "approve the proposal" and "certify the class for
7    purposes of judgment on the proposal," "[t]he court must direct notice in a
8    reasonable manner to all class members who would be bound by the proposal."
9    (Fed. R. Civ. P. 23(e).)

10       Although ultimately for class action settlement approval under Rule 23(e)(2),
11   a district court must conclude the settlement is "fair, reasonable, and adequate." (*In
12   re Apple Inc. Device Performance Litig.* (9th Cir. 2022) 50 F.4th 769, 780). "In
13   evaluating a proposed settlement at the preliminary approval stage, some district
14   courts . . . have stated that the relevant inquiry is whether the settlement 'falls within
15   the range of possible approval' or 'within the range of reasonableness.'" (*Bykov v.
16   DC Transp. Servs.* (E.D.Cal. Mar. 28, 2019, No. 2:18-cv-1691 DB) 2019 U.S.Dist.
17   LEXIS 54652, p. *15) (internal citation omitted).) That is, "preliminary approval of
18   a settlement has both a procedural and a substantive component." (*In re Tableware
19   Antitrust Litig.* (N.D.Cal. 2007) 484 F.Supp.2d 1078, 1080.) As to the procedural
20   component, "a presumption of fairness applies when settlements are negotiated at
21   arm's length, because of the decreased chance of collusion between the negotiating
22   parties." (*Gribble v. Cool Transps., Inc.* (C.D.Cal. Dec. 15, 2008, No. CV 06-04863
23   GAF (SHx)) 2008 U.S.Dist. LEXIS 115560, at *26.) With respect to the substantive
24   component, "[a]t this preliminary approval stage, the court need only 'determine
25   whether the proposed settlement is within the range of possible approval.'" (*Murillo
26   v. Pac. Gas & Elec. Co.* (E.D.Cal. 2010) 266 F.R.D. 468, 479, quoting *Gautreaux
27   v. Pierce* (7th Cir. 1982) 690 F.2d 616, 621, fn. 3.)

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-20-

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. (*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011) 654 F.3d 935, 946; see also, *Hanlon*, *supra*, 150 F.3d at p. 1026.) Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. (Fed. R. Civ. P. 23(e).)

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. (*See*, *Franklin v. Kaypro Corp.* (9th Cir. 1989) 884 F.2d 1222, 1229 ("[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . . .").) Here, the relevant factors support the conclusion that the negotiated settlement is within the range of reasonableness of a fundamentally fair, reasonable, and adequate settlement, thus warranting preliminary approval.

## 1. The Strength of Plaintiff's Case

Plaintiff brings two claims under (1) Strict Liability/Manufacturing and Design Defect, and (2) Negligence/Negligent Failure to Warn—based on Defendants' duty to appropriately market and provide Class Products fit for their ordinary purpose and safe for ordinary home water heater purposes. In support of these claims, and given the Class Products' alleged defective design, Plaintiff believes she could prove these claims. Conversely, there remain significant risks in

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

continuing the litigation–including questions as to (1) the appropriate statute(s) of limitations and applicability of the Discovery Rule thereto (*See*, *e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.* (N.D.Cal. 2010) 738 F.Supp.2d 1011, 1024 (fraudulent concealment is fact-intensive and, for that reason, requires an opportunity for discovery for plaintiffs to produce evidence of fraudulent concealment)), (2) Defendants' pre-sale knowledge of the alleged defects, (3) low or non-existent damages for many Class members, (4) the significant risk of an adverse class certification ruling[9] by this Court, the Ninth Circuit, or the Supreme Court, based, e.g., on whether individualized issues predominate or any other Rule 23 factor, and (5) varying causes for the drain valve issue could defeat class certification. What's more, while Plaintiff's expert has opined that the polymer used in these drain valves is inherently incompatible with chlorinated water[10], Rheem celebrates its 100 years in business this year;[11] it is, thus, not unlikely that a jury might be swayed by the narrative that a company so well founded is unlikely to produce products that are destined to flood users' homes.

## 2. The Risk, Expense, Complexity and Likely Duration of Further Litigation

While Plaintiff believes she has strong claims, her success is not guaranteed. "[I]t is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." (*Dennis v. Kellogg Co.* (S.D.Cal. Nov. 14, 2013, No. 09-CV-1786-L (WMc)) 2013 U.S.Dist. LEXIS 163118, at *9.) "Here,

---

[9] And, even if Plaintiff successfully certified one or more classes, there would be a risk that the Court could later decertify the class. (*See*, *In re Netflix Privacy Litig.* (N.D.Cal. Mar. 18, 2013, No. 5:11-CV-00379 EJD) 2013 U.S.Dist. LEXIS 37286, at *15-16 ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").)

[10] (Davis Decl. ¶¶ 10-12.)

[11] *See*, https://www.rheem.com/about/ (last visited July 13, 2025).

as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." (*Chester v. TJX Cos.* (C.D.Cal. Dec. 5, 2017, No. 5:15-cv-01437-ODW (DTB)) 2017 U.S.Dist. LEXIS 201121, at *17.)

Continuing this action would be expensive, complex, uncertain, and lengthy. And "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (4 A Conte & H. Newberg, *Newberg on Class Actions* (4th ed. 2002) § 11:50, p. 155.) First, as noted above, there is the risk of not prevailing on class certification. Plaintiff believes she can satisfy all the requirements of Rule 23 to certify a Class of persons who purchased the Class Products, but Defendants assert that the complained-of issues can arise from multiple potential causes, which could potentially defeat commonality and predominance. Plaintiff's expert would also need to conduct costly analyses regarding damages modeling to demonstrate that class-wide damages can be calculated. Second, there is the risk of receiving unfavorable rulings at summary judgment or an adverse jury verdict at trial. (*See*, *Meredith Corp. v. SESAC, LLC* (S.D.N.Y. 2015) 87 F. Supp. 3d 650, 664 (approving settlement and noting verdict could depend on factors like "the persuasiveness of each side's expert witnesses" and "the justifications advanced by" the defendant for its practices).) Indeed, explaining the chemistry underpinning the Complaint's allegations and proving damages on a class-wide basis would be challenging, and it is possible a jury might not reach a unanimous verdict on all issues. Finally, even if Plaintiff obtained a favorable verdict, Defendants might still have arguments for overturning the verdict. These inherent risks favor settlement approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

While Plaintiff's case survived Defendants' Motions to Dismiss, in part, the parties have not briefed, and the Court has not yet certified, any class treatment of this case. If she was to proceed to litigate her claims through trial, Plaintiff would

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

encounter risks in obtaining and maintaining certification of the Class. The Class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiff "necessarily risk[s] losing class action status." (*Grimm v. Am. Eagle Airlines, Inc.* (C.D.Cal. Sep. 24, 2014, No. LA CV11-00406 JAK (MANx)) 2014 U.S.Dist. LEXIS 199608, at *26.)

### 4. The Amount Offered in Settlement

As noted above, each Class member is eligible to make a claim for monetary benefits for documented losses, a superior replacement valve, and a parts or parts-and-labor warranty extension. The brass replacement valve option is ideal for those Class members who wish not to worry about potential/latent defects in their current polymer component, and simply change out the part. The warranty options are on top of any warranties Class members already enjoy, the parts and warranty action, in particular, providing up to a few hundred dollars of value per Class member, depending on plumber labor rates in their particular geographic area. Finally, the documented losses option should be sufficient for nearly every Class member since losses normally attendant to a catastrophic failure of this valve would already be compensable through homeowners' insurance coverage. In all, therefore, this settlement represents a strong result for the Class, and as discussed below is in line with other similar settlements. (*See, Calderon v. Wolf Firm* (C.D.Cal. Mar. 13, 2018, No. SACV 16-1266-JLS (KESx)) 2018 U.S.Dist. LEXIS 42054, p. *20-22 (comparing class settlement with other settlements in similar cases).)

The Settlement is quite valuable which, in the aggregate, Plaintiff's expert values at $8,024,054 for the Class. ( Bernatowicz Decl. ¶ 35.) As explained above, *See, supra,* Section V.D., based on CPT Group's projected claims rate of 1%, which represents 1% to 3.5% of the estimated Class Products impacted by the product's issues, Defendants could be expected to payout somewhere between $80,240.54 (1% of $8,024,054) and $280,841.89 (3.5% of $8,024,054). Finally, as part of the Settlement Agreement, Defendants will pay for notice and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

administration of the Class Settlement, which CPT Group projects to be around $550,000. (S.A. ¶ 5; *see also,* CPT Group Decl. ¶ 26.)

The settlement reached in this case also compares favorably to past settlements which have been approved by courts in this and other districts. For example, in *Elder v. Reliance Worldwide Corp.* (N.D.Ga) No. 1:20-cv-01596-ODE D, 3.5 million Class members could make claims to a $3.8 million settlement fund (first reduced by claims administration costs, attorneys' fees, etc.), with no warranty extension benefit.

Similarly, in *Bentley, et al. v. LG Electronics U.S.A., Inc.* (D.N.J., No. 2:19-cv-13554-MCA-MAH), owners of certain models of LG refrigerators manufactured between January 1, 2014 and December 31, 2017, may be eligible for a cash payment if their LG refrigerator stopped cooling within five years of purchase, including up to $450 upon submission of a claim form under oath, or more by supporting their claim with accompanying documentation such as receipts, invoices, photographs or other reasonable evidence of losses, if they: (a) paid for parts to have their LG Refrigerator repaired; (b) paid for labor to have their LG Refrigerator repaired; (c) had unsuccessful repairs; (d) had delayed repairs; (e) replaced their LG Refrigerator because it stopped working; and/or (f) had property loss such as spoiled food, beverages, medicine, or other perishables, or from property damage such as leaking. Additionally, Class members would also receive an extended warranty covering the full cost of repairs for cooling failures for five years from the date of purchase.

In *Linneman v. Vita-Mix Corp.* (S.D.Ohio, No. 15-cv-748-SJD), consumers who purchased a household Vita-Mix blender with a blade assembly dated between January 1, 2007 and October 1, 2016 will be able to obtain a replacement blade and seal or a $70 gift card. Those consumers who purchased a Vita-Mix for commercial/business use (such as a chef, restaurant, institution, etc.) between September 15, 2015 and August 9, 2016, as well as commercial consumers who

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

purchased from the Vita-Mix XL line on or before April 7, 2017, can claim a replacement blade and seal.

On May 7, 2021, the Tenth Circuit Court of Appeals approved the settlement of the multi-district litigation (MDL) case *In re: Samsung Top-Load Washing Machine Marketing, Sales Practices and Product Liability Litigation* (W.D.Ok, No. 17-ML-2792-D), wherein thirty-four models of Samsung top-load washing machines, individually priced between $450 and $1500, experienced weakness issues with the top-load door mechanism. As a result of the weakness, the top-load door on some machines would detach during certain spin cycles, allowing water to spew out of the machine.

The *Samsung* settlement agreement provided class members owning machines with top-load door issues four options for relief: (1) enhanced minimum recall rebates, which would allow class members to receive a rebate worth up to 15.5% of the estimated purchase price of the washing machine;[12] (2) enhanced recall repair, wherein Samsung would send a technician to a class member's home to strengthen the top-load door mechanism and also provide the member a rebate toward the purchase of a future Samsung appliance; (3) top separation relief, which would allow a member experiencing a top-load door separation within seven years of purchasing a washing machine to receive a full refund on the purchase price of the machine as well as up to $400 in expenses resulting from the top-load door separation; or (4) recall repair with warranty extension, under which a class member could request a repair to their top-load door mechanism and receive a one-year extension of the warranty on the washing machine.[13] The settlement also provided

---

[12] Given the retail price of the washing machines, the maximum rebate of 15.5% of the purchase price permitted each consumer to recover between $69.75 and $232.50, depending on the specific model purchased.

[13] This option for relief also obligated Samsung to complete the repair within fourteen days of the class member's request or else give the member a $50 cash equivalent card or replace the member's washing machine.

1    relief to class members experiencing drain-pump failures, allowing (1) $150 to

2    cover the cost of already-completed repairs or installation of a new drain pump, if

3    failure occurred within three years of the notice date of the settlement; and (2) up

4    to $400 for expenses stemming from the failure of a drain pump.

5    **5. The Extent of Discovery Completed and the Stage of Proceedings**

6        Before entering into settlement discussions on behalf of class members,

7    counsel should have "sufficient information to make an informed decision." (*Linney*

8    *v. Cellular Alaska P'ship* (9th Cir. 1998) 151 F.3d 1234, 1239.) Here, the parties

9    engaged in a slew of informal discovery. Plaintiff's counsel has gathered sufficient

10   and reliable information that was available regarding Defendants. Defendant

11   produced evidence that allowed Counsel to understand the means and scope of the

12   alleged defects, Defendants' sales of the products, warranty issues and options, the

13   size and scope of the Class, etc. (Cole Decl. ¶ 17.) The parties also informally

14   exchanged non-public information in preparation for a successful mediation. (*Id.*)

15       Plaintiff's Counsel's collective experience in consumer class actions, and

16   knowledge of the products themselves (Armstrong Decl. ¶¶ 3-11) provided

17   substantive knowledge on the subject to enable Plaintiff's Counsel to evaluate the

18   risks and value of the litigation and adequately represent Plaintiff's and Class

19   Members' interests without expending hundreds of hours and substantial financial

20   resources to come up to speed on the subject area. (Cole Decl. ¶ 31.) "[T]he

21   efficiency with which the parties were able to reach an agreement need not prevent

22   this Court from granting . . . approval." (*Hillman v. Lexicon Consulting,*

23   *Inc.* (C.D.Cal. Apr. 27, 2017, No. EDCV 16-01186-VAP (SPx)) 2017

24   U.S.Dist.LEXIS 231075, at *19.) Indeed "[i]n the context of class action

25   settlements, as long as the parties have sufficient information to make an informed

26   decision about settlement, 'formal discovery is not a necessary ticket to the

27   bargaining table.'" (*Wilson v. Tesla, Inc.* (N.D.Cal. July 8, 2019, No. 17-cv-03763-

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    JSC) 2019 U.S.Dist. LEXIS 112866, at *23, quoting *Linney*, *supra*, 151 F.3d at p.

2    1239.)

### 6. Plaintiff's Counsel's Experience and Views

Plaintiff's Counsel assisted Plaintiff in initiating this lawsuit which, Defendant has since informed Plaintiff, impacted approximately 7 to 8 million individuals. Plaintiff's Counsel have substantial experience litigating consumer class actions. (Cole Decl. ¶¶ 56-60.) Having worked on behalf of the putative Class, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully support the Settlement. (Cole Decl. ¶ 16.) A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. (*See*, *e.g.*, *Norton v. Maximus, Inc.* (D.Idaho Apr. 17, 2017, No. 1:14-0030 WBS) 2017 U.S.Dist. LEXIS 61350, at *15; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D.Cal. 2004) 221 F.R.D. 523, 528.) Thus, this factor supports approval.

### 7. Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiff supports the Settlement. (Cole Decl. ¶ 33.)

### 9. Lack of Collusion Among the Parties

The parties' multi-part, arms'-length negotiations resulted in a settlement that provides broad and substantial value to the Class with substantial monetary compensation and injunctive relief (*i.e.*, enhanced security). Furthermore, Plaintiff's Counsel and Defendants' counsel are well-versed in handling class actions addressing the issues herein and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving class action settlements. (*Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 965.) "Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." (*Cottle v. Plaid Inc.* (N.D.Cal. 2021) 340 F.R.D. 356, 375 (citation omitted).) Finally, the parties reached the Settlement under Judge Gutierrez's supervision and substantial negotiations, also facilitated by this jurist over the following months. (Cole Decl. ¶ 18.) The Settlement thus resulted from serious, informed, and non-collusive negotiations. (*See*, *In re Tableware Antitrust Litig.*, *supra*, at p. 1079–80; *Ingram v. Coca-Cola Co.* (N.D.Ga. 2001) 200 F.R.D. 685, 693 (mediation lends support to the absence of collusion).)

## D. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." (Fed. R. Civ. P. 23(e)(1)(B).) For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." (Fed. R. Civ. P. 23(c)(2)(B).) "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." (*Id*.)

Such notice must be the "best notice practicable," (*See*, Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *(Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 173 (italics omitted).) To satisfy due process, notice to class members must again be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

present their objections. (Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 812.)

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator— CPT Group—which will use all reasonable efforts to provide notice to each potential Class Member via publication. (CPT Group. Decl. ¶ 21.) The costs of administering the Settlement will be paid by Rheem. (S.A. ¶ 5.) The Notice and Claim Forms negotiated by the parties are clear and concise and inform Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt out of the Settlement. (Cole Decl. ¶ 41.)

In addition to the Publication Notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Notice and Claim Form approved by the Court, as well as the Settlement Agreement and other key documents. (S.A. ¶ 5.4.) The Settlement Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Class Members with additional information about the settlement. (S.A. ¶ 5.5.) Because the notice plan ensures that Class Members' due process rights are amply protected, this Court should approve it. (*See*, *Hartranft v. Tvi, Inc.* (C.D.Cal. Apr. 18, 2019, No. SACV 15-01081-CJC-DFM) 2019 U.S.Dist. LEXIS 68358, at *8.)

**E. <u>APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR</u>**

In connection with implementation of the Notice Program and administration of the settlement benefits, the parties request the Court appoint CPT Group to serve as the Settlement Administrator. CPT Group has a trusted and proven track record of supporting thousands of class action administrations. (CPT Group Decl. ¶ 5.)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## F.  **APPOINTMENT OF CLASS COUNSEL**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." (Fed. R. Civ. P. 23(g)(1)(B).) In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. (Fed. R. Civ. P. 23(g)(1)(A)(i–iv).) Here, proposed Class Counsel have extensive experience prosecuting consumer class actions and knowledge of this product. (*See*, Cole Decl. ¶¶ 56-60; Armstrong Decl. ¶¶ 3-11.) Plaintiff respectfully requests that the Court appoint Scott Edward Cole of Cole & Van Note and Ronald Armstrong, II of The Armstrong Firm, PLLC as Class Counsel.

## VII.  **CONCLUSION**

For all the above reasons, Plaintiff respectfully requests this Court grant Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: October 17, 2025

*/s/ Scott Edward Cole*
Scott Edward Cole
Laura Van Note
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800

*/s/ Ronald W. Armstrong, II*
Ronald W. Armstrong, II*
**THE ARMSTRONG FIRM, PLLC**
109 Yoalana St, Suite 210
Boerne, Texas 78006
Telephone: (210) 277-0542

* Admitted Pro Hac Vice

Attorneys for Representative Plaintiff and the Plaintiff Class

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-31-
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT // Case No. 2:24-cv-09686-CAS-MAA

## CERTIFICATE OF SERVICE

I hereby certify that, on October 17, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Scott Edward Cole*
Scott Edward Cole

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT // Case No. 2:24-cv-09686-CAS-MAA