# EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Settlement Agreement ("Agreement") is entered into by and among Plaintiff Vanessa West ("Plaintiff" and/or the "Class Representative") and Rheem Manufacturing Company ("Rheem") (collectively, the "Parties"). Following negotiations between the Parties with the assistance of JAMS mediator, the Honorable Phillip Gutierrez (Ret.), the Parties have reached the settlement set forth in this Agreement (the "Settlement"). By entering into this Agreement and the Settlement, Rheem does not admit any wrongdoing, liability, fault, injury, damages or violation of any law whatsoever, and the Parties agree to settle, fully and finally, all of the claims that have been or could have been brought in the putative class-action lawsuit against Rheem and Melet Plastics, Inc. ("Melet," and together with Rheem, "Defendants") relating to certain round poly drain valves as described below. The Settlement set forth in this Agreement will become effective only if it is finally approved by the Court.

## RECITALS

**WHEREAS,** Plaintiff filed a class action Complaint against Defendants in the United States District Court of California on November 8, 2024, Case No. 2:24-cv-9686 CAS-MAA (the "Lawsuit"), alleging Defendants are liable for damages and other economic injuries related to their round poly drain valve sold independently and as a part of water heaters provided, manufactured, and sold by Defendants;

**WHEREAS,** Defendants deny all alleged liability, wrongdoing, fault, violation, and damages or injuries;

**WHEREAS,** Settlement Class Counsel engaged in informal discovery, investigation (including testing the Class Products and conferring with an engineering expert), and fact gathering, including conferring with and creating a damage model with an expert on damages, to evaluate Plaintiff's claims and Defendants' defenses;

**WHEREAS,** the Parties engaged in good faith, arm's-length negotiations to avoid the delays, expense, and risks inherent in continued litigation of Plaintiff's claims; and

**WHEREAS,** the Parties understand, acknowledge, and agree that this Settlement constitutes the compromise of disputed claims and that it is their mutual desire and intention that the Lawsuit be settled and dismissed, on the merits and with prejudice, and that the Released Claims be finally and fully settled and dismissed, subject to and according to the below terms and conditions.

**NOW, THEREFORE,** in consideration of the mutual covenants contained in this Agreement and intending to be legally bound, the Parties agree to resolve, release, and settle the claims against the Released Parties on the terms set forth below:

1.    **DEFINITIONS**

For purposes of this Settlement, the following terms shall have the meanings set forth in this Section. Terms used in the singular shall include the plural.

1.1    **Action or Lawsuit** shall mean the proceeding captioned *Vanessa West, individually and on behalf of all others similarly situated, v. Rheem Manufacturing Company, and Melet Plastics, Inc.* (Case No. 2:24-cv-9686 CAS-MAA), filed in the United States District Court, Central District of California.

1.2    **Administration and Notice Expenses** shall mean reasonable fees and expenses incurred for (1) preparing the Class Notice; (2) the costs of Publication Notice; (3) receiving and adjudicating claims submitted by Settlement Class Members for compensation under this Settlement, including the costs of administering a Settlement Website and submission of claims; (4) receiving and processing objections to the Settlement and opt-out requests submitted by Settlement Class Members who wish to exclude themselves from the class; (5) preparing status reports to the Parties and the Court; (6) preparing tax returns for any Settlement bank accounts; (7) distributing Settlement payments or other benefits to Settlement Class Members who timely submit Valid Claims and (8) other costs of notice and administration of the Settlement that may be mutually-agreed upon by Defendants and Class Counsel, including administration of claims made for the product issues defined herein.

1.3    **Attorneys' Fees and Costs** shall mean the separately negotiated attorneys' fees for Class Counsel's litigation and resolution of the Action, and all costs incurred and to be incurred by Class Counsel in the Action, including, but not limited to, costs associated with documenting the Settlement, providing any notices required as part of the Settlement and/or pursuant to Court order, securing the Court's approval of the Settlement, administering the Settlement and expenses for any experts.

1.4    **Claims Period** shall mean the period during which the Settlement Administrator will accept claims that Settlement Class Members have submitted for Documented Losses, warranty extension and/or for a Replacement Brass Drain Valve.

1.5    **Claims Deadline** shall mean 75 days after the Notice Date or 45 days before the date set for the Fairness Hearing (whichever is later), as defined and described below.

1.6    **Claim Form** shall mean the form attached hereto as Exhibit 1, to be approved by the Court and to be submitted to the Settlement Administrator by Settlement Class Members who wish to make a claim, which allows each

Settlement Class Member to seek reimbursement of "Documented Losses," and/or either (a) a "Replacement Brass Drain Valve" or (b) a one-year extended warranty for parts and labor on their drain valves.

1.7 **Class Counsel** shall mean Scott Edward Cole of Cole & Van Note and Ronald Armstrong from The Armstrong Firm, PLLC.

1.8 **Class Notice** means the notice to the Settlement Class attached as Exhibit 2, to be approved by the Court and posted on the Settlement Website in accordance with this Agreement.

1.9 **Class Products** means round poly drain valves with Part Nos. AP12159A, AP12159B, AP12159C, AP12159D, AP12159E, AP12159F, AP12159G, AP12159H, AP12159J, AP12159K, AP14830A, AP14830B, AP14830C, AP14830D, AP14830E, AP14830F, AP14830G, AP16800A, AP16800B, AP16800C, AP16800D, AP16800E, AP16800F, AP16800G, AP16838A, AP16838B, AP16838C, AP16838D, AP16838E, AP16838F, AP16838G, SP12159A, SP12159B, SP12159C, SP12159D, SP12159E, SP12159F, SP12159G, SP12159H, SP12159J, SP12159K, SP14830A, SP14830B, SP14830C, SP14830D, SP14830E, SP14830F, SP14830G, SP16800A, SP16800B, SP16800C, SP16800D, SP16800E, SP16800F, SP16800G, SP16838A, SP16838B, SP16838C, SP16838D, SP16838E, SP16838F, or SP16838G manufactured and advertised between 2019 and 2023.

1.10 **Counsel for Rheem** shall mean Kahn A. Scolnick, Bradley J. Hamburger, Katie K. Geary, Clayton Collier, and Allison Roy Kawachi of Gibson, Dunn & Crutcher LLP.

1.11 **Court** shall mean the United States District Court for the Central District of California.

1.12 **Day(s).** All time periods described in terms of "days" shall be in calendar days unless otherwise expressly stated. Time is of the essence with regard to all dates expressed here. All deadlines set forth in this Agreement are material terms of the Agreement and will be reflected in the Final Approval Order and Judgment.

1.13 **Defendants** shall mean Rheem Manufacturing Company and Melet Plastics, Inc.

1.14 **Documented Losses** shall mean any out-of-pocket expenses incurred by a Settlement Class Member arising from a qualifying valve failure, previously unreimbursed by insurance, Rheem, or any other source, and supported by receipts, photos, service invoices, or other documentation that the Settlement Administrator may require to confirm that a claimed loss is genuine and arises from a qualifying valve failure.

3

1.15 **Effective Date** means the first date that is three business days after all of the following have occurred: (i) the Parties have executed this Agreement; (ii) the Court has entered an order granting final approval of the Settlement in accordance with the terms of this Agreement; (iii) the time for any challenge to the Settlement, both in the Court and on appeal, has elapsed; and (iv) the Settlement has become final, either because no timely challenge was made to it or because any timely challenge has been finally adjudicated and rejected and appeals have been exhausted. For purposes of this Section, an "appeal" shall not include any appeal that concerns solely the issue of Class Counsel's attorneys' fees and expenses or the Class Representative Service Award.

1.16 **Fairness Hearing** means the final class action approval hearing, to be held after notice has been provided to the Settlement Class in accordance with this Agreement to: (1) determine whether to grant final class action settlement approval, and (a) certify the Settlement Class, (b) designate the Class Representative, (c) designate Class Counsel as counsel for the Settlement Class and the Settlement; (2) consider whether to enter the Final Approval Order and Judgment and (3) to rule on Class Counsel's fee request and Class Representative Service Award.

1.17 **Final Approval Order and Judgment** shall mean the proposed order granting final approval to the Settlement, to be entered by the Court with terms to be agreed upon by the Parties and consistent with this Settlement.

1.18 **Notice Date** means the date on which the Settlement Administrator initiates the Publication Notice, which shall not be later than 30 days after entry of the Preliminary Approval Order.

1.19 **Notice of Claim Deficiency** shall mean the form that the Settlement Administrator will prepare and send, by first-class United States Mail, or email if available, to each person who has submitted a Claim Form that the Settlement Administrator has determined, subject to review and approval by Class Counsel, to not be a Valid Claim, but considered repairable with additional and/or modified information.

1.20 **Notice of Claim Denial** shall mean the form that the Settlement Administrator will send, by first-class United States Mail, or email if available, to each person who has submitted a Claim Form that the Settlement Administrator has determined, subject to review and approval by Class Counsel, to not be a Valid Claim.

1.21 **Plaintiff** and/or the **Class Representative** shall mean Vanessa West.

**1.22**  **Preliminary Approval Order** shall mean the proposed order granting preliminary approval of this Settlement, to be entered by the Court with terms to be agreed upon by the Parties and consistent with this Agreement.

**1.23**  **Publication Notice** shall mean the notice of the Settlement to be disseminated to the Settlement Class through publication in media outlets, websites, newspapers, social media, or other channels as approved by the Court.

**1.24**  **Released Claims** shall mean all claims against Defendants and the Released Parties resulting from, arising out of, based upon, or relating to (a) the Class Products; or (b) any of the alleged violations of laws or regulations asserted in the Complaint or the Action or that could have been asserted in the Lawsuit.

**1.25**  **Released Parties** shall mean (i) Defendants, together with their predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns; (ii) each of Defendants' past, present, and future officers, directors, agents, representatives, servants, employees, attorneys, and insurers; and (iii) all distributors, retailers, suppliers and other entities who were or are in the chain of design, testing, manufacture, assembly, distribution, marketing, sale, installation or servicing of the Class Product(s), all of whom will be parties to the Releases set forth in Section 9.

**1.26**  **Releasing Parties** shall mean all Settlement Class Members who do not timely and validly opt out of the Settlement and each of their respective heirs, beneficiaries, trustees, executors, administrators, representatives, agents, successors, assigns, insurers, and any other person or entity by, through, or on behalf of any such Settlement Class Member.

**1.27**  **Replacement Brass Drain Valve** shall mean a replacement component for the allegedly defective valve, provided to Settlement Class Members upon Valid Claim submission, subject to the 20,000-unit cap set forth in Section 3.2(c).

**1.28**  **Service Award** shall mean a Court-approved sum to be paid to Plaintiff in accordance with Section 8.2.

**1.29**  **Settlement Administrator** shall mean the third-party administrator appointed to manage the notice, claim, and distribution process, subject to Court approval.

**1.30**  **Settlement Class** shall mean:

"All individuals and entities that own or have owned Class Products and/or who own or have owned homes or other structures physically

5

located in the United States in which the Class Products are or were installed."

**1.31**    **Settlement Class Member(s)** or **Claimant(s)** shall mean all persons who are members of the Settlement Class who do not opt out.

**1.32**    **Settlement Website** shall mean a website created by the Settlement Administrator to facilitate notice and claims administration.

**1.33**    **Valid Claim** shall mean a Claim Form that (i) is timely submitted by a Settlement Class Member in accordance with the requirements of this Agreement and the Preliminary Approval Order, (ii) is signed with a certification that the information is true and correct to the best of the claimant's knowledge and recollection, and (iii) contains all of the attestations, certifications, information and documentation required for that Settlement Class Member to be eligible to receive one or more of the benefits provided by this Settlement.

## 2.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

For purposes of implementing this Agreement, and for no other purpose, Rheem stipulates to the conditional certification of the Settlement Class. If, for any reason, this Agreement and the Settlement reflected in it should fail to become effective, Rheem's stipulation to conditionally certify the Settlement Class shall be null and void, may not be used against Rheem for any purpose in the Lawsuit, and the Parties shall return to their prior positions in the Lawsuit.

## 3.    SETTLEMENT BENEFITS

The Settlement provides meaningful and multi-faceted relief for Settlement Class Members with respect to the Class Products. These benefits include equitable relief (a warranty extension for parts only) to all Settlement Class Members without any need to submit a claim. The benefits also include monetary reimbursement for Documented Losses and, depending on the nature of the claim(s) submitted by each Settlement Class Member, alternative forms of additional equitable relief (e.g., a Replacement Brass Drain Valve or shorter warranty extension that includes labor). All Settlement Class Members who do not opt out of the Settlement may elect to recover under this Settlement as follows:

### 3.1    Documented Loss Reimbursement

Regardless of whether they also elect another form of relief under this Settlement, all Settlement Class Members may submit claims for reimbursement of Documented Losses reasonably traceable to their use, installation, and/or ownership of the Class Products.

3.1(a)    Valid Claims must include sufficient documentation such as dated receipts, invoices, technician reports, and/or other records demonstrating both the amount incurred and the connection to the Class Product(s).

6

3.1(b)  Each Settlement Class Member may recover up to $1,500 for Valid Claims, subject to a total aggregate cap of $500,000 across all Documented Loss reimbursements.

3.1(c)  In the event the aggregate amount of Valid Claims exceeds the $500,000 aggregate cap identified in Section 3.1(b), the amount of the Documented Loss reimbursement payments for each claimant will be reduced *pro rata* accordingly. Any *pro rata* decreases will be on an equal percentage basis. Specifically, each Settlement Class Member who submits a Valid Claim for Documented Losses shall receive a proportionally reduced payment, such that the total amount paid for all Valid Claims for Documented Losses does not exceed the $500,000 aggregate cap.

3.1(d)  In the event the aggregate amount of Valid Claims is less than the $500,000 aggregate cap identified in Section 3.1(b), Rheem shall pay only the amount required to satisfy all Valid Claims.

3.1(e)  Reimbursement will be provided on a claims-made basis and subject to review and validation by the Settlement Administrator.

3.1(f)  The Settlement Administrator shall initiate payment of Valid Claims within 60 days after the Effective Date. All checks issued by the Settlement Administrator to Eligible Claimants shall remain valid for 150 days.

**3.2    Extended Warranty and Replacement Benefits**

3.2(a)  <u>Two-Year Automatic Parts-Only Warranty Extension</u>: All Settlement Class Members, regardless of whether they submit a claim of any kind, will automatically receive an extension to the warranty coverage for the Class Product(s), as follows: A two-year extension of Settlement Class Members' current (as of the Effective Date of this Settlement) warranty coverage for parts (materials and workmanship) only, consistent with existing warranty terms that apply (excluding any coverage for labor), covering the Class Products; this extended term applies only to the Class Products themselves, not any other aspect of Settlement Class Members' water heaters or issues or defects other than those related to the Class Products. If the original Class Product/parts warranty has expired for any Settlement Class Member as of the Effective Date of this Settlement, that/those Settlement Class Member(s) shall receive a new two-year parts-only warranty on their Class Product(s), said warranty(ies) to commence as of the Effective Date of this Settlement; this additional warranty term applies only to the Class Products themselves, not any other aspect of the Settlement Class Members' water heaters or issues or defects other than those related to the Class Products. The Two-Year Automatic Parts-Only Warranty Extension does not cover

any labor expenses for service, repairs, reinstallation, permits, removal, or disposal of the failed water heater or parts.

3.2(b) <u>One-Year Elective Warranty Extension</u>: In lieu of the Two-Year Automatic Parts-Only Warranty Extension described above in Section 3.2(a), and in lieu of the Replacement Brass Drain Valve Election described below in Section 3.2(c), Settlement Class Members may submit a claim (during the Claims Period) to elect a One-Year Elective Warranty Extension for parts (materials and workmanship) and labor costs associated with the Class Products and their replacement or repair, consistent with existing warranty terms; this optional warranty applies only to the Class Products themselves, not any other aspect of Settlement Class Members' water heaters or issues or defects other than those related to the Class Products. This option shall be available to the first 100,000 Settlement Class Members who submit a Valid Claim electing it and, after this 100,000 ceiling is reached, all remaining Settlement Class Members will be eligible only for the Two-Year Automatic Parts-Only Warranty Extension. For those who choose this option, the One-Year Elective Warranty Extension shall start immediately upon the Effective Date; or, for those Settlement Class Members whose existing warranty coverage still covers parts and labor, the One-Year Elective Warranty Extension shall start immediately after the expiration of that current parts-and-labor warranty, following the Effective Date.

3.2(c) <u>Replacement Brass Drain Valve Election</u>: In lieu of the Two-Year Automatic Parts-Only Warranty Extension described above in Section 3.2(a), and in lieu of the One-Year Elective Warranty Extension (i.e., for parts and labor) described above in Section 3.2(b), Settlement Class Members may submit a claim (during the Claims Period) for the replacement of their Class Product(s) with a new brass drain valve. Each Settlement Class Member may receive one Replacement Brass Drain Valve, regardless of the number of Class Products that Class Member has or had. This option shall be available to the first 20,000 Settlement Class Members who submit a Valid Claim electing a Replacement Brass Drain Valve and, after this 20,000 ceiling is reached, all remaining Settlement Class Members will be eligible only for the Two-Year Automatic Parts-Only Warranty Extension. No labor is included.

3.2(d) Detailed instructions for electing between these options will be provided in the Class Notice.

## 4.    SETTLEMENT APPROVAL

Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Class Action Settlement Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and Rheem.

The Motion for Preliminary Class Action Settlement Approval shall, among other things, request that the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth in Section 6 of this Agreement and approve the form and content of the Class Notice; (4) approve the Claim Form and claim process; (5) approve the procedures for individuals in the Settlement Class to opt out of or object to the Settlement; (6) stay the Action pending final approval of the Settlement; (7) find that the settlement funds are to be a "Qualified Settlement Fund" as defined in Section 468B-1(c) of the Treasury Regulations; and (8) schedule a Fairness Hearing for a time and date mutually convenient for the Court, Class Counsel, and Counsel for Rheem.

Class Counsel shall provide Counsel for Rheem with a reasonable opportunity, but no more than 7 calendar days, to review and provide comments on the Motion for Preliminary Class Action Settlement Approval before the motion and supporting papers are filed with the Court.

## 5.    SETTLEMENT ADMINISTRATION

The Parties agree that, subject to Court approval, CPT Group shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws. Rheem shall be responsible for paying all reasonable Administration and Notice Expenses.

No later than 10 days after entry of the Court's Preliminary Approval Order, Rheem shall deposit, or cause to be deposited, $295,000.00 into the settlement fund by wire transfer for purposes of paying notice-related costs, and other reasonable administrative expenses that may be incurred pursuant to this Settlement in conjunction with the retention and/or services of the Settlement Administrator.

Following the Court's Final Approval Order and Judgment, the Defendants shall make, or cause to be made, additional payments for Settlement Administration, if any, as required by the Settlement, subject to the Settlement Administrator's capped bid.

The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph(s) and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the claims process and administering Documented Loss reimbursements and Replacement Brass Drain Valves to Settlement Class Members who submit Valid Claims.

The Settlement Administrator's duties shall include:

5.1    Completing the Court-approved Notice Program by initiating Publication Notice, sending paper Claim Forms (upon request from individuals in the Settlement Class), reviewing Claim Forms, notifying Claimants of deficient

Claim Forms using the Notice of Claim Deficiency and sending settlement benefits to Settlement Class Members who submit a Valid Claim;

5.2    Providing Publication Notice to the Settlement Class using appropriate media outlets, including social media outlets, and media outlets and notices. These shall be approved by Counsel for Rheem, Class Counsel, and the Court before the Class Notice is published;

5.3    Establishing and maintaining a post office box or equivalent to receive opt-out requests, objections, and Claim Forms, from Settlement Class Members;

5.4    Establishing and maintaining the Settlement Website that will include all necessary and pertinent information for Settlement Class Members, including the Claim Form, the Class Notice, and information relating to relevant deadlines. The Settlement Website will also permit Settlement Class Members to submit claims online, including uploading any necessary documentation. The Settlement Website will also include information that Rheem and Class Counsel jointly agree to post concerning the nature of the case and the status of the Settlement, including relevant pleadings, such as the operative Complaint, papers in support of preliminary and final approval of the Settlement, Class Counsel's fee and costs requests, plus relevant orders of the Court. The Settlement Website shall be maintained by the Settlement Administrator until 90 days after the Effective Date;

5.5    Establishing and maintaining an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries. The toll-free telephone line shall be maintained by the Settlement Administrator during the time period that the Settlement Website is active;

5.6    Responding to any mailed Settlement Class Member inquiries;

5.7    Processing all opt-out requests from the Settlement Class;

5.8    Processing all claims made by Settlement Class Members submitting a claim requesting Documented Loss reimbursements, One-Year Elective Warranty Extensions, and/or Replacement Brass Drain Valves before the Notice Date, including the evaluation of the documentary proof submitted by such Settlement Class Members to substantiate a Valid Claim as set forth in this Settlement;

5.9(a)    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims. This includes, without limitation, employing reasonable procedures to screen claims for abuse or fraud. The Settlement Administrator shall have the discretion to

undertake, or cause to be undertaken, further verification and investigation of any Claim Form, including the nature and sufficiency of any Claim Form and supporting documentation.

5.9(b)  The Settlement Administrator may contact any person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form. The Settlement Administrator shall determine whether a Claim Form submitted by a Settlement Class Member is an approved claim and shall reject Claim Forms that fail to (i) comply with the instructions on the Claim Form or the terms of this Agreement, or (ii) provide full and complete information as requested on the Claim Form.

5.10  Before denying any claim on the basis of insufficient documentary proof, the Settlement Administrator shall send, by email if available or first-class United States Mail if email is not available, a written Notice of Claim Deficiency to the Settlement Class Member identifying the insufficient proof that may cause the claim to be denied and giving the Settlement Class Member no more than 30 days to cure the deficiency. Insufficient documentary proof shall be the only claim deficiency for which an opportunity to cure will be provided. Examples of insufficient documentary proof include illegible or incomplete documents. The complete absence of required documentary proof is not a deficiency for which Settlement Class Members will be given an opportunity to cure;

5.11  If any claimant whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within 10 business days from receipt of the rejection, transmit to the Settlement Administrator by email or U.S. mail a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and request further review by the Settlement Administrator, in consultation with Class Counsel and Counsel for Rheem, of the denial of the claim.

5.12  If any Settlement Class Member disputes the Settlement Administrator's denial of a claim for any reason, the Settlement Administrator shall send the claim to Counsel for Rheem and Class Counsel to determine the claim's validity. Rheem's determination shall be final and binding unless Class Counsel, within 30 days of notification of Rheem's determination, contests that determination by first attempting to resolve the claim in dispute directly with Counsel for Rheem and, if those efforts are unsuccessful, by presenting the matter for determination by the Court within 30 days of the completion of Rheem and Class Counsel's conferral;

5.13  Providing weekly reports to Class Counsel and Counsel for Rheem that summarize the number of claims submitted, claims approved, and claims rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections

received to date, and other pertinent information;

5.14    In advance of the Fairness Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain final class action settlement approval;

5.15    Distributing Documented Loss reimbursements by paper check(s) to Settlement Class Members who made a Valid Claim via first class mail to Settlement Class Members;

5.16    Informing Rheem as to the benefit(s) selected by each Settlement Class Member. Rheem shall process and maintain all warranty extensions provided to Settlement Class Members;

5.17    Any other Settlement Administration function at the instruction of Class Counsel and Counsel for Rheem, including, but not limited to, verifying that all settlement benefits have been properly distributed;

5.18    The Notice Program and Class Notice will be reviewed and approved by the Settlement Administrator but may be revised as agreed upon by the Parties before submission to the Court for approval. Non-substantive revisions to the Class Notice may also be made before dissemination;

5.19    As soon as practicable, but no later than 10 days after the Parties file this Agreement with the Court, Rheem shall comply with the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715.

## 6.    NOTICE TO THE SETTLEMENT CLASS

6.1    The Class Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claims Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Class Counsel's application for attorneys' fees and costs and a Class Representative Service Award; the Fairness Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel and Counsel for Rheem shall insert the correct dates and deadlines in the Class Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If

the date or time for the Fairness Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Fairness Hearing changes.

6.2    The Settlement Administrator shall establish the Settlement Website no later than the day before Class Notice is first initiated. Class Counsel and Counsel for Rheem must agree as to the Settlement Website URL. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

6.3    **Opt Outs.** The Class Notice also shall include a procedure for individuals in the Settlement Class to opt out of the Settlement. Individuals in the Settlement Class may opt out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. Untimely opt-out requests are invalid. The opt-out request must be personally signed by the Settlement Class Member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim. Settlement Class Members may revoke their opt-out request in writing at any time before the Court's Final Approval Order and Judgment.

6.4    If a Settlement Class Member submits both a Claim Form and a request to opt out prior to the Court's Final Approval Order and Judgment, the Settlement Class Member will be deemed to have waived and withdrawn the request to opt out and shall be treated as a Settlement Class Member for all purposes, irrespective of the sequencing of the submission of the Claim Form and the request to opt out.

6.5    **Objections.** The Class Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or application for attorneys' fees, costs, and Class Representative Service Award. Settlement Class Members may revoke their objection in writing at any time prior to the Court's final class action settlement approval.

6.6    Objections must be in writing and mailed to the Clerk of the Court, Class Counsel, Counsel for Rheem, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Class Notice. If submitted by mail, an objection shall be deemed to have been

13

submitted when posted if received with a postmark date indicated on the envelope or if mailed first-class postage prepaid and addressed in accordance with the instructions in the Class Notice. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

6.7     For an objection to be considered by the Court, the objection must set forth the name of this Action (*Vanessa West, et al. v. Rheem Manufacturing Company, and Melet Plastics, Inc.* (Case No. 2:24-cv-9686 CAS-MAA); the objector's full name, mailing address, telephone number, and email address (if any); the specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection; the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Class Counsel's application for attorneys' fees, costs, and Class Representative Service Award; the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, and the caption of each case in which counsel or the firm has made such objection; any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; the identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Fairness Hearing; a list of all persons who will be called to testify at the Fairness Hearing in support of the objection (if any); a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and the objector's signature (i.e., an attorney's signature is not sufficient).

6.8     Class Counsel and/or Counsel for Rheem may conduct limited discovery on any objector or objector's counsel.

6.9     The Deadline for Class Members to opt out or object to the Settlement will be 45 days after the Notice Date ("Opt-Out/Objection Period").

6.10    Class Counsel and/or Counsel for Rheem shall file any response(s) to the objections with the Court no later than 30 days before the Fairness Hearing.

6.11    The Notice Program shall be completed no later than 75 days after the Notice Date or 45 days before the original date set for the Fairness Hearing (whichever is later).

7. **FINAL APPROVAL ORDER AND JUDGMENT**

7.1    Class Representative shall file a Motion for Final Approval of the Settlement, exclusive of Class Counsel's application for attorneys' fees, costs, and the Class Representative Service Award. This motion shall be filed 15 days after the Claims Deadline, and no later than 30 days before the original date set for the Fairness Hearing. At the Fairness Hearing, the Court may choose to hear argument on the Motion for Final Approval of the Settlement and Class Counsel's application for attorneys' fees, costs, and Class Representative Service Award. In the Court's discretion, the Court also may hear argument at the Fairness Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and Class Representative Service Award, provided the objectors submitted timely objections that meet all of the requirements identified/listed in the Agreement; the Court may, in its discretion, excuse non-compliance with one or more of those requirements.

7.2    The Fairness Hearing will be held 45 days after the Claims Deadline.

7.3    At or following the Fairness Hearing, the Court will determine whether to enter the Final Approval Order and Judgment, and whether to grant Class Counsel's application for attorneys' fees, costs, and a Class Representative Service Award. Such proposed Final Approval Order and Judgment shall, among other things: (1) determine that the Settlement is fair, adequate and reasonable; (2) finally certify the Settlement Class for settlement purposes only; (3) determine that the Notice Program is the best notice practicable and satisfies Due Process requirements; (4) bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order and Judgment; (5) release Defendants and the Released Parties from the Released Claims; and (6) reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants, the Class Representative, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

8. **SERVICE AWARD, ATTORNEYS' FEES AND COSTS**

8.1    **Motion for Attorneys' Fees, Costs, and Class Representative Service Award.** Class Counsel will file a Motion requesting the Court approve an award of attorneys' fees, reimbursement of Class Counsel's costs, and Class Representative Service Award 25 days after the Notice Date.

8.2    **Service Award.** In recognition of the time and effort the Class Representative expended in pursuing this Action and in fulfilling their

obligations and responsibilities as Class Representative, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Class Representative Service Award in the amount not to exceed $5,000. Defendants may oppose this request. If approved, the Service Award shall be paid by Rheem, by check or wire transfer to Class Counsel to be paid to Plaintiff, within 20 days of the Effective Date. The Class Representative Service Award payment to the Class Representative shall be separate and apart from their entitlement to benefits from the Settlement.

8.3    **Attorneys' Fees and Costs**. Class Counsel shall apply to the Court for an award of attorneys' fees and reimbursement of their costs in an aggregate amount not to exceed $950,000. Rheem may oppose this request for any reason, but agrees to pay the amount of attorneys' fees and costs that the Court awards (not exceeding $950,000). The attorneys' fees and cost awards approved by the Court shall be paid by Rheem by wire transfer to an account designated by Class Counsel, within 20 days of the Effective Date. Class Counsel shall provide Rheem with all necessary account information, including a completed IRS Form W-9, within 5 days of the Effective Date.

8.4    This Settlement is not contingent on approval of the request for attorneys' fees and costs or Class Representative Service Award, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Class Representative Service Award were not negotiated until after all material terms of the Settlement.

## 9.    <u>RELEASES</u>

9.1    As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Class Products; or (b) any of the alleged violations of laws or regulations asserted in the Complaint or the Action or that could have been asserted in the Lawsuit.

9.2    Class Representative and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released

Parties in any jurisdiction.

9.3     Individuals in the Settlement Class who opt out of the Settlement before the expiration of the Opt-Out Period do not release their claims and will not obtain any benefits under the Settlement. With respect to the Released Claims, Class Representative and Settlement Class Members expressly understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Class Representative and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Class Representative and Rheem with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims.

9.4     Class Representative or Settlement Class Members may later discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released in this Agreement, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a benefit from the Settlement.

9.5     Settlement Class Members acknowledge and waive, and agree to waive, on behalf of themselves and the other Releasing Parties, Section 1542 of the California Civil Code ("Section 1542"), which provides that: **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."** Settlement Class Members expressly waive and relinquish, on behalf of themselves and the other Releasing Parties, any and all rights and benefits that they may have under, or that may be conferred upon them by, the

17

provisions of Section 1542, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, Settlement Class Members acknowledge, on behalf of themselves and the other Releasing Parties, that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, asserted or unasserted, or past, present or future, that they have against the Released Parties. In furtherance of such intention, the release herein given by the Releasing Parties to the Released Parties shall be and remain in effect as a full and complete general release of the Released Claims notwithstanding the discovery or existence of any such additional or different claims or facts. Each Settlement Class Member expressly acknowledges, on behalf of themselves and the other Releasing Parties, that he, she, or it has been advised by their attorneys of the contents and effect of Section 1542, and with knowledge, expressly waives whatever benefits they may have had pursuant to such section. Settlement Class Members acknowledge, and the Releasing Parties shall be deemed to have acknowledged, that the foregoing waiver was expressly bargained for and a material element of this Settlement.

9.6     Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of the Class Representative and Settlement Class Members; and (b) Class Representative and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of the Class Representative, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal. This release is not conditional on receipt of any benefits provided under this Settlement or otherwise, and applies as a result of membership as a Settlement Class Member, the Class Notice and Court-approval process herein, the ability to opt out of the Settlement, and the occurrence of the Effective Date.

## 10.     TERMINATION OF SETTLEMENT

This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events: (1) Court approval of the Settlement and the Releases set forth in Section 9 of this Agreement; (2) the Court has entered the Preliminary Approval Order substantially in the form attached to the Motion for Preliminary Class Action Settlement Approval; (3) the Court has entered the Final Approval Order and Judgment substantially in the form agreed to by the Parties and attached to the Motion for Final Approval, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order and Judgment are resolved in favor of final class

18

action settlement approval; and (4) the Effective Date has occurred.

10.1 If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

10.2 Rheem shall have the option to terminate this Agreement if more than 3% of the Settlement Class opt out of the Settlement. Rheem shall notify Class Counsel and the Court of their intent to terminate this Agreement pursuant to this paragraph within 15 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

10.3 In the event this Agreement is terminated or fails to become Effective, then the Parties shall return to the *status quo ante* in the Lawsuit as if the Parties had not entered into this Agreement, and the Parties shall jointly file a status report in the Court seeking to resume the litigation. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

10.4 In the event this Agreement is terminated or fails to become effective, all funds shall be promptly returned to Rheem and Rheem shall not pay any funds to the Settlement Class, Class Counsel, or Plaintiff. However, Rheem shall have no right to seek from Class Representative, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by Rheem. The Settlement Administrator shall provide remaining amounts in their possession to Rheem within 21 days of termination.

## 11.    NO ADMISSION OF LIABILITY

12.1 This Settlement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Rheem has denied and continues to deny each of the claims and contentions alleged in the Complaint. Rheem specifically denies that a class could or should be certified in the litigation for litigation purposes. Rheem does not admit any liability or wrongdoing of any kind, by this Settlement or otherwise. Rheem has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Lawsuit.

12.2 Class Counsel believe the claims asserted in the Lawsuit have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with

the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Lawsuit. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted informal discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable and in the best interests of the Settlement Class.

12.3    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

12.4    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Class Representative or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

12.5    In addition to any other defenses Rheem may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

**12.    MISCELLANEOUS PROVISIONS**

13.1    Gender and Plurals. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

13.2    Binding Effect. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

13.3    Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

13.4    <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

13.5    <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

13.6    <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

13.7    <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the United States of America and the State of California, without regard to the principles thereof regarding choice of law.

13.8    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

13.9    <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order and Judgment. For purposes only of this Settlement and the enforcement of the payment and performance obligations under this Settlement, Defendants also submit to the jurisdiction of this Court.

13.10   Notices. All notices provided for herein, shall be sent by email with a hard copy sent by first class mail to:

If to Plaintiff/Class Representative or Class Counsel:
Scott Edward Cole, Esq.
Mark T. Freeman, Esq.
Cole & Van Note
555 12th Street, Suite 2100
Oakland, CA 94607
sec@colevannote.com
mtf@colevannote.com

Ronald W. Armstrong, Esq.
THE ARMSTRONG FIRM, PLLC
109 Yoalana St, Suite 210
Boerne, Texas 78006
rwaii@tafpllc.com

If to Defendants or Defendants' Counsel:

Kahn A. Scolnick, Esq.
Bradley J. Hamburger, Esq.
Katie K. Geary, Esq.
Clayton Collier, Esq.
Allison Roy Kawachi, Esq.
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
kscolnick@gibsondunn.com
bhamburger@gibsondunn.com
kgeary@gibsondunn.com
ccollier@gibsondunn.com
akawachi@gibsondunn.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

13.11   Modification and Amendment. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Counsel for Rheem and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

13.12   No Waiver. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

22

13.13 <u>Authority</u>. Class Counsel (for the Class Representative and the Settlement Class), and Counsel for Rheem (for Rheem), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of the Class Representative and Rheem to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

13.14 <u>Agreement Mutually Prepared</u>. Neither the Class Representative nor Rheem shall be considered to be the drafter(s) of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

13.15 <u>Independent Investigation and Decision to Settle</u>. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

13.16 <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the releases contained in this Agreement, received independent legal advice with respect to the advisability of entering into this Agreement and the releases, and the legal effects of this Agreement and the releases, and fully understands the effect of this Agreement and the releases.

13.17 <u>Exhibits</u>. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

23

13.18  <u>Representations/Warranties Regarding Other Potential Plaintiff or Legal Claims</u>. Class Counsel represent and warrant that they do not represent any clients, or have knowledge of any potential clients, with claims or potential claims against the Released Parties aside from the Released Claims. The Class Representative and Class Counsel each represent and warrant that neither of them is aware of any potential plaintiff, or any attorney other than Class Counsel, who intends to make demands or bring litigation against the Released Parties. The Class Representative and Class Counsel each further represent and warrant that neither of them has been notified or otherwise informed of any such intention or consideration thereof. The Class Representative and Class Counsel each further represent and warrant that neither of them has been referred to any other attorney or any other individual alleging to have, asserting, pursuing, or seeking to pursue any claims against the Released Parties.

13.19  <u>Bar to Future Suits</u>. Upon entry of the Final Approval Order and Judgment, the Releasing Parties shall be enjoined from prosecuting any Released Claim in any proceeding against the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order and Judgment. The Settlement may be pleaded as a complete defense to any proceeding subject to this paragraph.

**PLAINTIFF/CLASS REPRESENTATIVE**

_Vanessa West_
Vanessa West (Sep 5, 2025 14:31:30 PDT)

**VANESSA WEST**


**CLASS COUNSEL**

**SCOTT EDWARD COLE**
COLE & VAN NOTE

**RONALD ARMSTRONG**
THE ARMSTRONG FIRM, PLLC

**DEFENDANT**

**RHEEM MANUFACTURING COMPANY**
By: _Rich Bendure (Sep 22, 2025 13:17:41 EDT)_
Name: ___Rich Bendure___
Its: ___President Water___


**DEFENDANT'S COUNSEL**

**KAHN A. SCOLNICK**
GIBSON, DUNN & CRUTCHER LLP

25

EXHIBIT 1

**Must be postmarked or submitted online NO LATER THAN [DATE]**

West v. Rheem Manufacturing Company
and Melet Plastics, Inc.
PO Box 19504
Irvine, CA 92623
www.[Web Address].com

## Claim Form

### SETTLEMENT BENEFITS - WHAT YOU MAY GET

If you own or have owned Class Products and/or own or have owned a home or another structure physically located in the United States in which the Class Products are or were installed, and if you did not opt out of the settlement, you may submit a claim.

Class Products means round poly drain valves with Part Nos. AP12159A, AP12159B, AP12159C, AP12159D, AP12159E, AP12159F, AP12159G, AP12159H, AP12159J, AP12159K, AP14830A, AP14830B, AP14830C, AP14830D, AP14830E, AP14830F, AP14830G, AP16800A, AP16800B, AP16800C, AP16800D, AP16800E, AP16800F, AP16800G, AP16838A, AP16838B, AP16838C, AP16838D, AP16838E, AP16838F, AP16838G, SP12159A, SP12159B, SP12159C, SP12159D, SP12159E, SP12159F SP12159G, SP12159H, SP12159J, SP12159K, SP14830A, SP14830B, SP14830C, SP14830D, SP14830E, SP14830F, SP14830G, SP16800A, SP16800B, SP16800C, SP16800D, SP16800E, SP16800F, SP16800G, SP16838A, SP16838B, SP16838C, SP16838D, SP16838E, SP16838F, or SP16838G manufactured and advertised between 2019 and 2023.

**To submit a valid claim, you must include the serial number of your Rheem water heater.**

**The easiest way to submit a claim is online at www.[Web Address].com**, or you can complete and mail this Claim Form to the mailing address above.

**You may submit a claim for one or more of these benefits**:

1. **Documented Loss Reimbursement**: You may claim up to $1,500 for documented losses related to your use, installation, and/or ownership of the Class Products, even if you choose other settlement benefits. Claims must include proof such as receipts, photos, service invoices, or technician reports. Total reimbursements are capped at $500,000 and may be reduced proportionally if the total value of claims exceed this amount.

2. **Extended Warranty and Replacement Benefits**: You may select only one option in addition to a Documented Loss Reimbursement.

   (a) **Two-Year Automatic Parts-Only Warranty Extension**: All Settlement Class Members automatically receive a two-year parts-only warranty extension on the Class Products, consistent with existing terms. Labor and other service costs are not covered. If your original parts warranty has expired, a new two-year warranty begins on the Settlement's Effective Date.

   (b) **One-Year Elective Parts-and-Labor Warranty Extension**: Instead of the automatic two-year warranty (above) or replacement valve (below), you may claim a one-year warranty extension covering parts and labor for the Class Products. Limited to the first 100,000 valid claims. Starts on the Effective Date or after your existing parts-and-labor warranty expires.

   (c) **Replacement Brass Drain Valve Election**: Instead of the automatic two-year parts-only warranty or the one-year parts-and-labor warranty, you may claim a new brass drain valve for your Class Product(s). Limited to the first 20,000 valid claims. Labor is not included.

**Claims must be submitted online or mailed by [DATE]. Use the address at the top of this form for mailed claims.**

**Settlement benefits will be distributed after the Settlement is approved by the Court and final.**

For more information and complete instructions visit www.[Web Address].com.

## Your Information

*This information will be used solely to contact you and to process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing [Email]@cptgroup.com.*

First Name

MI    Last Name

Mailing Address

City

State    ZIP Code

Phone Number

Email Address

Rheem Water Heater Serial Number

## 1. Documented Loss Reimbursement

You can submit a claim up to $1,500 for documented losses related to your use, installation, and/or ownership of the Class Products. Documentary proof is required. Claims without documentation will not be approved.

You can choose this option even if you also chose the Extended Warranty or Replacement benefit.

**Examples of supporting documentation include (but are not limited to)**: (i) dated receipts; (ii) invoices, (iii) technician reports, and/or (iv) other records demonstrating both the amount incurred and the connection to the Class Product(s). "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

To obtain reimbursement, you must complete the information below and attach supporting documentation.

| Date | Description of Supporting Documents | Amount |
|------|-------------------------------------|--------|
|      |                                     |        |
|      |                                     |        |
|      |                                     |        |
|      |                                     |        |
|      |                                     |        |
|      |                                     |        |

**ATTACH DOCUMENTS:** Attach a copy of dated receipts, invoices, technician reports, and/or other records demonstrating both the amount incurred and the connection to the Class Product(s).

## 2. Extended Warranty and Replacement Benefits

Select **one option** by checking the box. Refer to page one for eligibility details.

(a) ☐ **One-Year Elective Parts-and-Labor Warranty Extension**: Receive the one-year warranty covering parts and labor for the Class Products.

(b) ☐ **Replacement Brass Drain Valve Election:** Receive a new brass drain valve for your Class Product(s).

## How You Will Receive Your Payment

If you make a valid claim for Documented Losses Reimbursement using this Claim Form, you will receive your payment by check.

To receive an electronic payment, submit your claim online at www.[Web Address].com.

## Signature

I attest under penalty of perjury that the information supplied in this Claim Form is true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete and valid.

_____    Date: _____ - _____ - _____
Signature                                                                      MM        DD        YYYY

_____
Print Name

EXHIBIT 2

**If you own or previously owned a Rheem Water Heater, or a home or other structure where one was installed, you may be eligible for benefits.**

*West v. Rheem Manufacturing Company, and Melet Plastics, Inc.*
**United States District Court, Central District of California**
**Case No. 2:24-cv-9686 CAS-MAA**

*A court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against Rheem Manufacturing Company ("Rheem") and Melet Plastics, Inc., ("Melet," and together with Rheem, "Defendants") alleging Defendants are liable for damages related to their round poly drain valve sold independently and as a part of water heaters provided, manufactured, and sold by Defendants.

- You are a "Class Member" if you own or have owned Class Products and/or own or have owned a home or another structure physically located in the United States in which the Class Products are or were installed.

- The Settlement provides benefits to Class Members, including an automatic parts-only warranty extension without filing a claim. Class Members may also receive monetary reimbursement for Documented Losses up to $1,500 and, depending on the claim, additional relief such as a Replacement Brass Drain Valve or a one-year warranty extension that covers both parts and labor.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **DO NOTHING** | You will receive the Two-Year Parts-Only Warranty Extension but no payment, and you will give up your right to sue Defendants over the claims resolved in the Settlement. You will remain a Class Member and bound by the Settlement if the Court approves it. | No Deadline |
| **SUBMIT A CLAIM FORM** | The only way to receive a Documented Loss Payment and/or Replacement Brass Drain Valve or a One-Year Elective Parts-and-Labor Warranty Extension is to submit a claim form. Claims must be submitted by **[Date].** | **[Date]** |
| **EXCLUDE YOURSELF (OPT OUT)** | If you ask to be excluded, you will not receive any benefit, but you may be able to file your own lawsuit against Defendants for the same claims. This is the only option that leaves you the potential to file your own lawsuit against Defendants for the claims that are being resolved by the Settlement. To be effective, you must submit a request for exclusion by the deadline. | **[Date]** |
| **OBJECT** | If you do not exclude yourself from the Settlement Class, you may submit an objection, telling the Court why you believe the settlement does not warrant final approval. If your objection is overruled, you will be bound by the Settlement. | **[Date]** |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court overseeing this case must still decide whether to approve the Settlement and the requested attorneys' fees, service awards, and costs. No Settlement benefits or payments will be provided unless and until the Court approves the Settlement and it becomes final.

# BASIC INFORMATION

## 1. Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Christina A. Snyder of the United States District Court, Central District of California is overseeing this class action. The case is known as *Vanessa West v. Rheem Manufacturing Company and Melet Plastics, Inc.*, Case No. 2:24-cv-09686 CAS-MAA (the "Action"). The individual who filed this lawsuit is referred to as the "Plaintiff" or "Class Representative," and the entities sued, Rheem Manufacturing Company and Melet Plastics, Inc. are referred to as "Defendants."

## 2. What is this lawsuit about?

The Action alleges Defendants are liable for damages related to their round poly drain valve sold independently and as a part of water heaters provided, manufactured, and sold by Defendants between 2019 and 2023.

Defendants deny any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that any law has been violated. Defendants deny all other claims made in the Action. By entering into the Settlement, Defendants are not admitting any wrongdoing.

## 3. Why is the lawsuit a class action?

In a class action, the Class Representative sues on behalf of all people who are alleged to have similar claims. Together, in the context of a settlement like this one, all these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves (opt out) from the Settlement Class.

## 4. Why is there a Settlement?

Plaintiff and Defendants do not agree about the claims made in this Action. The Action did not go to trial, and the Court did not decide in Plaintiff's or Defendants' favor. Instead, Plaintiff and Defendants agreed to settle the Action. Plaintiff and the attorneys for the Settlement Class ("Class Counsel") believe the Settlement is best for all Settlement Class Members because of the Settlement benefits made available under the Settlement, the risks and uncertainty associated with continued Action, and the nature of the defenses raised by Defendants.

# WHO IS INCLUDED IN THE SETTLEMENT?

## 5. How do I know if I am part of the Settlement?

You are a Settlement Class Member if you own or have owned Class Products and/or own or have owned homes or other structures physically located in the United States in which the Class Products are or were installed.

Class Products means round poly drain valves with Part Nos. AP12159A, AP12159B, AP12159C, AP12159D, AP12159E, AP12159F, AP12159G, AP12159H, AP12159J, AP12159K, AP14830A, AP14830B, AP14830C, AP14830D, AP14830E, AP14830F, AP14830G, AP16800A, AP16800B, AP16800C, AP16800D, AP16800E, AP16800F, AP16800G, AP16838A, AP16838B, AP16838C, AP16838D, AP16838E, AP16838F, AP16838G, SP12159A, SP12159B, SP12159C, SP12159D, SP12159E, SP12159F SP12159G, SP12159H, SP12159J, SP12159K, SP14830A, SP14830B, SP14830C, SP14830D, SP14830E, SP14830F, SP14830G, SP16800A, SP16800B, SP16800C, SP16800D, SP16800E, SP16800F, SP16800G, SP16838A, SP16838B, SP16838C,

SP16838D, SP16838E, SP16838F, or SP16838G manufactured and advertised between 2019 and 2023.

| 6. Are there exceptions to being included in the Settlement? |
| --- |

Yes. Excluded from the Settlement Class are Defendants and its officers and directors, any judges assigned to this case and members of their staff and family, and Class Members who submit a valid Request for Exclusion.

| 7. What if I am not sure whether I am part of the Settlement? |
| --- |

If you are not sure whether you are a Settlement Class Member, you may go to the settlement website at www.[Website address].com, call the Settlement Administrator's toll-free number at [Toll-free number], or email [Email address]@cptgroup.com.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| 8. What does the Settlement provide? |
| --- |

The Settlement provides (a) reimbursement of up to $1,500 for Documented Losses and (b) a Two-Year Automatic Parts-Only Warranty Extension (without the need to submit a claim), OR a One-Year Elective Parts-and-Labor Warranty Extension, OR a Replacement Brass Drain Valve.

By submitting a valid and timely claim for one or more benefits using the Claim Form, you are eligible to receive one or more of the benefits as follows:

**Documented Loss Reimbursement**: All Settlement Class Members may claim reimbursement for documented losses related to their use, installation, or ownership of the Class Products, even if they choose extended warranty or replacement benefits.

Valid Claims must include sufficient documentation such as dated receipts, invoices, technician reports, and/or other records demonstrating both the amount incurred and the connection to the Class Product(s).

Each Settlement Class Member may recover up to $1,500 for Valid Claims, subject to a total aggregate cap of $500,000 across all Documented Loss reimbursements. If valid claims exceed $500,000, payments will be reduced proportionally.

**Extended Warranty and Replacement Benefits**:

(a) **Two-Year Automatic Parts-Only Warranty Extension**: All Settlement Class Members, regardless of whether they submit a claim of any kind, will automatically receive an extension to the warranty coverage for the Class Product(s), as follows: A two-year extension of Settlement Class Members' current (as of the Effective Date of this Settlement) warranty coverage for parts (materials and workmanship) only, consistent with existing warranty terms that apply (excluding any coverage for labor), covering the Class Products; this extended term applies only to the Class Products themselves, not any other aspect of Settlement Class Members' water heaters or issues or defects other than those related to the Class Products. If the original Class Product/parts warranty has expired for any Settlement Class Member as of the Effective Date of this Settlement, that/those Settlement Class Member(s) shall receive a new two-year parts-only warranty on their Class Product(s), said warranty(ies) to commence as of the Effective Date of this Settlement; this additional warranty term applies only to the Class Products themselves, not any other aspect of the Settlement Class Members' water heaters or issues or defects other than those related to the Class Products. The Two-Year Automatic Parts-Only Warranty Extension does not cover any labor expenses for service, repairs, reinstallation, permits, removal, or disposal of the failed water heater or parts.

(b) **One-Year Elective Parts-and-Labor Warranty Extension**: Instead of the Two-Year Automatic Parts-Only Warranty Extension or Replacement Brass Drain Valve Election, you may submit a claim to elect a One-Year Elective Warranty Extension for parts (materials and workmanship) and labor costs

associated with the Class Products and their replacement or repair, consistent with existing warranty terms; this optional warranty applies only to the Class Products themselves, not any other aspect of Settlement Class Members' water heaters or issues or defects other than those related to the Class Products. This option shall be available to the first 100,000 Settlement Class Members who submit a Valid Claim electing it and, after this 100,000 ceiling is reached, all remaining Settlement Class Members will be eligible only for the Two-Year Automatic Parts-Only Warranty Extension. For those who choose this option, the One-Year Elective Warranty Extension shall start immediately upon the Effective Date; or, for those Settlement Class Members whose existing warranty coverage still covers parts and labor, the One-Year Elective Warranty Extension shall start immediately after the expiration of that current parts-and-labor warranty, following the Effective Date.

(c) **Replacement Brass Drain Valve Election**: Instead of the Two-Year Automatic Parts-Only Warranty Extension or One-Year Elective Parts-and-Labor Warranty Extension (i.e., for parts and labor), you may submit a claim  for the replacement of your Class Product(s) with a new brass drain valve. Each Settlement Class Member may receive one Replacement Brass Drain Valve, regardless of the number of Class Products that Class Member has or had. This option shall be available to the first 20,000 Settlement Class Members who submit a Valid Claim electing a Replacement Brass Drain Valve and, after this 20,000 ceiling is reached, all remaining Settlement Class Members will be eligible only for the Two-Year Automatic Parts-Only Warranty Extension. No labor is included.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

| 9.  Do I need to submit a claim? |
| --- |

If you would like to receive a Documented Loss Reimbursement, One-Year Elective Parts-and-Labor Warranty Extension, or Replacement Brass Drain Valve under the Settlement, you <u>must</u> submit a Claim Form. If you do not want to give up your right to sue Defendants about the Class Products or the issues raised in this case, you must exclude yourself (or "opt out") from the Settlement Class. See Question 17 below for instructions on how to exclude yourself. If you wish to object to the Settlement, you must (a) remain a Settlement Class Member (*i.e.*, you may not exclude yourself from the Settlement Class by opting out and also object to the Settlement) and (b) submit a written objection. See Question 20 below for instructions on how to submit an objection.

| 10. How do I submit a claim? |
| --- |

To receive a Documented Loss Reimbursement, One-Year Elective Parts-and-Labor Warranty Extension, or Replacement Brass Drain Valve, you must submit a valid and timely Claim Form to the Settlement Administrator by **[Deadline].** You will need your name, address, telephone number, email address, and the serial number of your Rheem water heater to file a Claim Form.

To receive a Documented Loss Reimbursement, you must include with your Claim Form sufficient documentation such as dated receipts, invoices, technician reports, and/or other records demonstrating both the amount incurred and the connection to the Class Product(s).

Claim Forms can be submitted by mail or online at www.[Website address].com. Mailed Claim Forms must be postmarked by [Deadline] and sent to the address below. To request a Claim Form by mail, call [Toll-free number] or write to:

*West v. Rheem Manufacturing Company, and Melet Plastics, Inc.*
P.O. Box 19504
Irvine, CA 92623
[Email address]@cptgroup.com

## 11. What am I giving up if I receive Settlement benefits or remain in the Settlement Class?

Unless you timely submit a request for exclusion to exclude yourself (opt out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue or be part of any other lawsuit against Defendants and Released Parties about the legal issues in the Action that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

## 12. What are the Released Claims?

The Settlement Agreement in Section 9 describes the Release, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.[Website address].com, and in the public Court records on file in this Lawsuit. You can also request a copy of the Settlement Agreement be mailed to you by calling or writing to the Settlement Administrator. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed in Question 15 for free, or you can talk to your own lawyer at your own expense.

## 13. What happens if my contact information changes after I submit a claim ?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*West v. Rheem Manufacturing Company, and Melet Plastics, Inc.*
*PO Box 19504*
*Irvine, CA 92623*
[Email address]@cptgroup.com

## 14. When will I receive my Settlement benefits?

If you file a timely and valid Claim Form, Settlement benefits will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.[Website address].com or call the Settlement Administrator or the attorneys in Question 15, below, for updates.

# THE LAWYERS REPRESENTING YOU

## 15. Do I have a lawyer in this case?

Yes, the Court has appointed Scott Edward Cole of Cole & Van Note, 555 12th Street, Suite 2100, Oakland, California 94607 and Ronald Armstrong of The Armstrong Firm, PLLC, 109 Yoalana Street, Suite 210, Boerne, Texas 78006 as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in the Action.

## 16. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees and costs not to exceed $950,000. They will also ask the Court to approve a service award not to exceed $5,000.00 to the Plaintiff for her service to the Action and for her efforts in achieving the Settlement. If awarded by the Court, attorneys' fees and costs and the service award will be paid by Defendant. The Court may award less than these amounts.

A copy of Class Counsel's application for attorneys' fees, costs, and service award will be made available on the settlement website at www.[Website address].com. You may also request a copy be mailed to you by calling the Settlement Administrator.

## OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue Defendants on your own based on the claims raised in the Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting out" of the Settlement.

### 17. How do I get out of the Settlement?

To opt out of the Settlement, you must mail a written notice of intent to opt out, also referred to as a "Request for Exclusion." The written notice must be signed by you, include your name, mailing address, email, telephone number, and the serial number of your Rheem water heater, and clearly state that you wish to be excluded from the Settlement. You cannot exclude yourself by telephone or e-mail. The opt-out request must be postmarked by the United States Postal Service and mailed to the Settlement Administrator at the following address by [Deadline]:

*West v. Rheem Manufacturing Company, and Melet Plastics, Inc.*
P.O. Box 19504
Irvine, CA 92623

### 18. If I opt out, can I get anything from the Settlement?

No. If you opt out, you are telling the Court you do not want to be part of the Settlement. You can only get Settlement benefits if you stay in the Settlement.  If you opt out, do not submit a Claim Form.

### 19. If I do not opt out, can I sue the Defendants for the same thing later?

No. Unless you opt out, you give up any right to sue Defendants and Released Parties for the claims this Settlement resolves and releases relating to the claims. You must opt-out of the Action to start your own lawsuit against the Defendants or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement. To object, you must mail timely written notice to the Court as provided below no later than [Deadline], stating you object to the Settlement and explain why.

The objection must include all the following additional information:

1) Your full name, current address, telephone number, and any email address;
2) The serial number of your Rheem water heater;
3) The case name and number *West v. Rheem Manufacturing Company and Melet Plastics, Inc.* No. 2:24-cv-09686 CAS-MAA;
4) The specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;
5) The number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such

6

objection;

6)  The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Class Counsel's application for attorneys' fees, costs, and Class Representative Service Award;

7)  The number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, and the caption of each case in which counsel or the firm has made such objection;

8)  Any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

9)  The identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Fairness Hearing;

10) A list of all persons who will be called to testify at the Fairness Hearing in support of the objection (if any);

11) A statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing;

12) Your signature (i.e., an attorney's signature is not sufficient).

To be timely, written notice of an objection in the appropriate form must be mailed, postmarked by no later than [Deadline] to the Court, Class Counsel, Defendant's Counsel and the Settlement Administrator at the following addresses:

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| United States District Court for the Central District of California [Address] | Scott Edward Cole, Esq. Cole & Van Note 555 12th St., Suite 2100 Oakland, CA 94607<br><br>Ronald W. Armstrong, Esq. The Armstrong Firm, PLLC 109 Yoalana Street Suite 210 Boerne, TX 78006 | Kahn A. Scolnick, Esq. Bradley J. Hamburger, Esq. Katie K. Geary, Esq. Gibson, Dunn & Crutcher LLP 333 South Grand Avenue Los Angeles, CA 90071-3197 | West v. Rheem Manufacturing Company and Melet Plastics, Inc. PO Box 19504 Irvine, CA 92623 |

Any Settlement Class Member who fails to comply with the requirements for objecting in the Settlement Agreement waives and forfeits any and all rights he/she may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Action.

## 21. What is the difference between objecting and asking to opt out?

Objecting is simply telling the Court you do not believe the Settlement warrants final court approval. You can object only if you stay in the Settlement Class (meaning you do not opt out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

**22. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **[Date/Time]** before Judge Christina A. Snyder at the **[Court address]**.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for attorneys' fees, costs, and expenses, and the service award to the Plaintiff. If there are objections, the Court will consider them. The Court may also listen to people who have asked to speak at the hearing. You may attend the hearing at your own expense, or you may pay your own lawyer to attend, but it is not necessary. The date and time of the Final Approval Hearing are subject to change. Any change will be posted at www.**[Website address]**.com.

**23. Do I have to attend to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to speak about it. As long as you mail your written objection on time, the Court will consider it.

**24. May I speak at the Final Approval Hearing?**

Yes. As long as you do not exclude yourself (opt out), you can (but do not have to) participate and speak for yourself at the Final Approval Hearing about the Settlement. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 20 and specifically include a statement whether you and your counsel (if any) will appear at the Final Approval Hearing.

# IF YOU DO NOTHING

**25. What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will still receive a Two-Year Automatic Parts-Only Warranty Extension, but no other Settlement benefits. You will give up rights explained in the "Opting Out from the Settlement" section of this Notice, including your right to start a lawsuit, or be part of any other lawsuit against Defendants or any of the Released Parties about the legal issues in the Action that are released by the Settlement Agreement.

# GETTING MORE INFORMATION

**26. How do I get more information?**

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.**[Website address]**.com, by calling **[Toll-free number]**, or by writing to **[Email address]**@cptgroup.com.

**Please do not telephone the court or its clerk's office regarding this notice.**

# EXHIBIT B



# COLE & VAN NOTE

## ATTORNEYS AT LAW

*"A single voice has the power to push Big Business toward big change."*

# FIRM RESUME

## OVERVIEW OF OUR PRACTICE

Cole & Van Note ("CVN") is a boutique class action firm known for aggressive representation and impressive results in the areas of consumer fraud, data breach, environmental and employment litigation. Founded in 1992, CVN has been devoted primarily to such matters, having litigated hundreds of class actions against businesses of all types and in nearly every industry imaginable. The members of CVN have vast experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nationwide litigation. They have published numerous scholarly articles dealing with various



substantive issues as well as class action litigation/procedure, speak regularly to legal audiences, and have served as consulting experts in class action litigation. CVN's team of skilled advocates has recovered billions of dollars for tens of millions of workers and consumers, been involved in record-setting settlements and judgments and compelled the correction of innumerable unlawful practices.

## SHAREHOLDERS & ASSOCIATE ATTORNEYS



**Scott Edward Cole**, founder and shareholder of Cole & Van Note, has extensive leadership experience prosecuting class action cases in federal and state courts nationwide. Mr. Cole has authored numerous scholarly publications and serves as highly regarded guest lecturer on issues surrounding class action procedures and negotiation theory. Mr. Cole has been responsible for shaping the law in trial and appellate courts for decades, authored the book "Fallout" and is available to serve as a mediator of class action disputes.

Credentials: Admitted, State Bar of California, 1992; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; Admitted, United States District Court for all California Districts, the District of Colorado and the Western District of Michigan; Admitted, United States Court of Appeals (6th, 9th and 10th Circuits). Additionally, Mr. Cole is a former National Association of Securities Dealers Registered Representative (Series 7) and is/has been a

member of the Association of Trial Lawyers of America, California Lawyers Association, California Employment Lawyers Association, American Bar Association, Alameda County Bar Association (e.g., Vice Chair of ACBA's Labor & Employment Law Section Executive Committee), National Employment Lawyers Association and a U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba (March 2012). Mr. Cole is also the author of "Fallout," a story based upon his experiences litigating in the wake of the 1994 airborne release of toxic chemicals by the Unocal Corporation and used by various law schools in the curriculum for first year law students.



**Laura Van Note**, shareholder, is an aggressive and skilled advocate and leads the firm's hiring and career outreach efforts. A 2013 graduate of the University of Missouri, Kansas City School of Law, her practice has focused primarily on class action representation of data breach victims and underpaid workers in employment/civil rights litigation. With a near-perfect track record for results, Ms. Van Note appears in courts across the nation, is licensed in Kansas and Missouri and in numerous federal districts.

Credentials: Admitted, State Bar of California, 2016; Admitted, State Bar of Missouri, 2013; Admitted, State Bar of Kansas, 2015; Admitted, United States District Court for all California Districts, the Eastern District of Wisconsin, District of Kansas, Eastern and Western Districts of Missouri, District of New Mexico, District of Nebraska, District of Colorado and the Northern District of Illinois; University of Missouri, Kansas City School of Law, J.D., 2013 (Order of the Barrister, Dean's List, Captain of the National Trial Advocacy Team, President of the American Constitutional Society for Law and Policy, Teaching Assistant to the Directory of Advocacy); University of Missouri, Kansas City, B.A., History, Minor in French, 2010.



**Cortney Szafran**, associate attorney, graduated from Stetson University College of Law in 2021 near the top of her class, then completing her LL.M. in the top 2% of her class from the University of California, Los Angeles School of Law. While in school at UCLA, Ms. Szafran also served as Chief Managing Editor of the Journal of Gender & Law. After graduation, she served as a civil defense attorney representing Fortune 500 companies as national counsel in complex litigation including products liability, premises liability and personal injury matters. Ms. Szafran brings a unique perspective and set of skills to the firm's high profile consumer and employment class action practice.

Credentials: Admitted, State Bar of Florida, 2021; Admitted, United States District Court for the Middle District of Florida; Stetson University College of Law, J.D., 2021; University of South Florida, St. Petersburg, B.S., Business Economics (Minor in International Business), magna cum laude.

 **Mark T. Freeman**, associate attorney, graduated from Pacific McGeorge School of Law in 2013 near the top of his class. During law school, Mr. Freeman engaged in the McGeorge Trial Advocacy Program (which he completed with Honors) and served as Chief Comment Editor for the McGeorge Law Review. A published author ("BarCram: How To Survive the Last Two Weeks Before You Take (And Pass) the California Bar"), Martindale-Hubbell "AV Preeminent" rated attorney and Certified Mediator, Mr. Freeman is also member of the Consumer Attorneys of California, the Congress of Neutrals and the Contra Costa County Bar Association. At CVN, Mr. Freeman utilizes his vast litigation experience in the areas of class action consumer, employment and data breach law.

Credentials: Admitted, State Bar of California, 2013; Admitted, State Bar of Texas, 2025; Admitted, District of Columbia Bar, 2025; Admitted, United States District Courts for the Northern, Central and Eastern Districts of California; Admitted, 9th Circuit Court of Appeals; Pacific McGeorge School of Law, J.D., 2013 (Order of the Coif; McGeorge Law Review); Saint Mary's College of California, B.A. in Economics; Minor in English & Creative Writing (Honors: Br. U. Jerome Griffin Award at Graduation (highest award in School of Econ. and Business)), 2010.

Interim Counsel not listed.

## SCHOLARLY PUBLICATIONS

The following represent examples of how CVN has elected to give back and help shape the law though our own articles, opinion pieces and the like – some examples of this including:

*The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

*To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

*To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

*Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

*Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

*Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).

*Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

## LEADERSHIP ROLES

CVN has held numerous court-appointed sole- and co-leadership positions in state and federal courts across the nation. Recent lead counsel appointments include:

- In Re: Rackspace Data Security Litigation, No. SA-22-cv-01296-XR (W.D. Tex.) (court appointed sole lead counsel)

- Henderson v. Reventics, LLC, Case No. 1:23-cv-00586-MEH (D. Colo.) (court appointed co-lead counsel)

- Hinds v. Community Medical Centers, Inc., Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

- <u>Tsvetanova v. UCSD Health</u>, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

- <u>Fedorys v. Ethos Group Inc.</u>, Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-lead counsel)

- <u>Moreland v. 1st Franklin Financial Corporation</u>, Case No. 2:23-cv-00038-SCJ (N.D. Ga.) (court appointed co-lead counsel)

- <u>Domitrovich v. MC Dean, Inc.</u>, Case No. 1:23-cv-00210-CMH-JFA (E.D. Va.) (court appointed co-lead counsel)

- <u>Deevers v. Wing Financial Services, LLC</u>, Case No. 4:22-cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel)

- <u>Darrin v. Huntington Ingalls Industries, Inc.</u>, Case No. 4:23-cv-00053-JKW-DEM (E.D. Va.) (court appointed co-lead counsel)

- <u>Guerrero v. Merritt Healthcare Holdings, LLC</u>, Case No. 3:23-cv-00389-MPS (D. Conn.) (court appointed co-lead counsel)

- <u>Prutsman v. Nonstop Administration and Insurance Services, Inc.</u>, Case No. 3:23-Cv-01131-VC (N.D. Cal.) (court appointed co-lead counsel)

- <u>In re DISH Network Data Security Incident Litigation</u>, Case No. 1:23-cv-01168-RMR-SBP (D. Colo.) (court appointed co-lead counsel)

- <u>Byers v. OrthoAlaska, LLC</u>, Case No. 3:23-cv-00243-SLG (D. Alaska) (court appointed co-lead counsel)

- <u>Tambroni v. WellNow Urgent Care, P.C.</u>, Case No. 1:24-cv-01595 (N.D. Ill.) (court appointed co-lead counsel)

- <u>Dryden v. Tri Counties Bank</u>, Case No. 23CV03115 (Super. Ct. Cal. Butte Cnty.) (court appointed co-lead counsel)

- <u>Brett v. Valley Mountain Regional Center</u>, Case No. STK-CV-UPl-2024-0005025 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

- <u>Cordell v. Patelco Credit Union</u>, Case No. 24CV082095 (Super. Ct. Cal. Alameda Cnty.) (court appointed co-lead counsel)

- <u>Skillings v. Access Sports Medicine and Orthopedics</u>, Case No. 218-2024-CV-01086 (Super. Ct. New Hampshire Rockingham Cnty.) (court appointed co-lead counsel)

- <u>Woodard v. Atlanta Women's Health Group, P.C.</u>, Case No 24EV001838H (State Ct. Georgia Fulton Cnty.) (court appointed co-lead counsel)

- <u>In Re: Cleveland Brothers Data Incident Litigation</u>, Case No. 1:23-cv-00501-JPW (M.D. Penn.) (court appointed co-lead counsel)

- <u>Hahn v. Phoenician Medical Center, Inc.</u>, Case No. CV2023-010982 (Super. Ct. Az. Maricopa Cnty.) (court appointed executive committee chair)

- <u>Daley v. Risas Holdings LLC</u>, Case No. CV-24-00789-PHX-SMM (D. Az.) (court appointed lead counsel)

- <u>Shweiki v. Donor Network West</u>, Case No. C20-00073 (Super. Ct. Cal. Contra Costa Cnty.) (court appointed lead counsel)

- <u>Lowrey v. Community Psychiatry Mgt., LLC</u>, Case No. 2:23-cv-00185-TLN-DB (E.D. Cal.) (court appointed co-lead counsel)

- <u>In Re: Blackhawk Network Data Breach Litig.</u>, Case No. 3:22-cv-07084-CRB (N.D. Cal.) (court appointed co-lead counsel)

- <u>In re Dropbox Sign Data Breach Litigation</u>, Case No. 4:24-cv-02637-JSW (N.D. Cal.) (court appointed co-lead counsel)

- <u>Bujok v. MC2 Data, LLC</u>, Case No. 0:24-cv-61864-LEIBOWITZ (S.D. Fla.) (court appointed co-lead counsel)

- <u>Francisco v. Diligent Acquisitions LLC</u>, Case No. 4:24-cv-04468 (S.D. Tex.) (court appointed co-lead counsel)

- <u>Oliver v. Jewish Home Lifecare</u>, Index No. 157811/2024 (N.Y. Sup. Ct., N.Y. County, Index No. 157811/2024) (court appointed co-lead counsel)

- <u>Hunt v. Charlston Area Medical Center, Inc.</u>, Case No. 2:25-cv-00113 (S.D.W.V.) (court appointed co-lead counsel)

- <u>Creutz v. Carespring Health Care Management LLC</u>, Case No. 1:24-cv-00447 (S.D.Ohio) (court appointed co-lead counsel)

- <u>Ceballos v. Tri-City Medical Center ASC Operators LLC</u>, Case No. 24CU017568C (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

- <u>Lunsford v. Maryhaven Inc.</u>, Case No. 25CV003753 (Ct. of Common Pleas, Franklin Cty. Ohio) (court appointed co-lead counsel)

- <u>Rice v. California Cancer Associates for Research and Excellence, Inc.</u>, Case No. 5:25-cv-01636 (C.D. Cal.) (court appointed co-lead counsel)

- <u>In re Teamsters Local Union Nos. 117 and 174 Data Breach Litigation</u>, Case 25-3-21664-1 KNT (Wash. Sup. Ct., King Cty.) (court appointed co-lead counsel)

Note that CVN has held sole lead and co-leadership roles in hundreds of additional matters. Please contact our firm for additional leadership information.

## EXEMPLAR COMPLEX & CLASS ACTION CASES

CVN's attorneys have represented tens of millions of individuals in legal disputes across hundreds of class action/complex litigation cases around the nation. For well over three decades, CVN's legal team has amassed extensive experience litigating data breach, wage and hour, environmental, and other personal injury and commercial cases. Today, the firm almost exclusively prosecutes multi-state data breach and other consumer-oriented class actions.

Drawing from various areas of law, and by no means an exhaustive list, examples of the range of CVN's practice include matters such as:

Augustus/Davis v. ABM Security Services, Inc. (American Commercial Security Service, Inc.)
Superior Court of California, County of Los Angeles, Case No. BC336416; 2 Cal.5th 257 (2016)
Our firm filed this action for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over $89 million was entered against the defendant(s). The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation, successful summary judgment and substantial appellate work, this matter resolved for $110 million.

Bower v. Steel River Systems LLC
Illinois Fourteenth Judicial Circuit Court (Whiteside County), Case No. 2023-LA-000006
This action arose out of Steel River Systems' 2022 data breach which affected numerous consumers and/or employees. This action settled for an undisclosed amount.

Brett v. Valley Mountain Regional Center
Superior Court of California, County of San Joaquin, Case No. STK-CV-UPI-2024-0005025
This action arose out of Valley Mountain's 2023 data breach which affected 17,000 patients of Defendant's facilities. Cole & Van Note was appointed co-lead class counsel.

Bulow v. Wells Fargo Investments, LLC
United States District Court (N.D. Cal.), Case No. 3:06-CV-7924
This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Byers v. OrthoAlaska, LLC
United States District Court (D. Alaska), Case No. 3:23-cv-00243-SLG
This action arose out of OrthoAlaska's massive data breach which affected countless patients, consumers and/or employees. Cole & Van Note was court-appointed as co-lead class counsel.

Cano v. United Parcel Service, Inc.
Superior Court of California, County of Alameda, Case No. RG03089266
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and Industrial Engineering Specialist at this company's California facilities. This action settled for $4.5 million.

Chaidez v. Odwalla, Inc.
Superior Court of California, County of San Mateo, Case No. CIV430598
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. CVN served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

CKE Overtime Cases
Superior Court of California, County of Los Angeles, Case No. BC283274 (JCCP No. 4274)
This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation provided a settlement fund of $9.0 million.

Cordell v. Patelco Credit Union
Superior Court of California, County of Alameda, Case No. 24CV082095
This action arose out of the well-publicized 2024 data breach and denial of service impacting well over 1,000,000 Patelco customers. As a result of the event, Patelco customers were blocked access to their funds and other services for weeks, resulting in myriad damages including rejection of loan applications, damage to their credit and the inability to pay everyday life expenses. Cole & Van Note was appointed co-lead class counsel. The matter settled for $7.25 million (settlement pending).

Darrin v. Huntington Ingalls Industries, Inc.
United States District Court (E.D. Va.), Case No. 4:23-cv-00053-JKW-DEM
This action arose out of Huntington Ingalls' massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

Davis v. Universal Protection Security Systems, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-09-495528
Our firm filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled under Cole & Van Note's sole leadership for $4 million.

Deevers v. Wing Financial Services, LLC
United States District Court (N.D. Okla.), Case No. 4:22-cv-00550-CVE-MTS
This action arose out of Wing Financial's 2022 data breach which affected numerous loan consumers. Cole & Van Note was appointed co-lead class counsel.

Despres (Cornn) v. United Parcel Service, Inc.
United States District Court (N.D. Cal.), Case No. 3:03-CV-02001
This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. CVN served as co-counsel for the certified class of drivers. This action settled for $87 million, an unprecedented settlement amount at the time for such claims.

Domitrovich v. MC Dean, Inc.
United States District Court (E.D. Va.), Case No. 1:23-cv-00210-CMH-JFA
This action arose out of MC Dean's 2021 data breach which affected 45,000 employees. Cole & Van Note was appointed co-lead class counsel.

Dryden v. Tri Counties Bank
Superior Court of California, County of Butte, Case No. 23CV03115
This action arose out of Tri Counties' 2023 data breach which affected nearly 75,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Escow-Fulton v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.
Superior Court of California, County of San Diego County, Case Nos. GIC881669/GIC873193)
Our firm filed this class action on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to a partial settlement (of the expense reimbursement claims) for $10 million. The parties then filed cross-motions for summary adjudication and, on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the unpaid wage claims for another $9 million, for a total judgment of $19 million. This was an industry changing case that helped define "piece rate" standard under California law.

Fedorys v. Ethos Group, Inc.
United States District Court (N.D. Tex.), Case No. 3:22-cv-02573-M
This action arose out of Ethos Group's 2022 data breach which affected at least 267,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Guerrero v. Merritt Healthcare Holdings, LLC
United States District Court (D. Conn.), Case No. 3:23-cv-00389-MPS
This action arose out of Merritt Healthcare's 2022 data breach which affected over 77,000 patients. Cole & Van Note was appointed co-lead class counsel.

Hakeem v. Universal Protection Service, LP
Superior Court of California, County of Sacramento, Case Nos. 34-2020-00286228-CU-OE-GDS; 34-201900270901-CU-OE-GDS
After an exhaustive multi-year process including venue transfer, consolidation, migration of litigants from one case to the other, multiple appeals and, generally, extremely hard-fought litigation, these two security guard class actions achieved a consolidated judgment under Cole & Van Note's sole leadership for $10 million.

Head v. Regal Medical Group, Inc.
Superior Court of California, County of Los Angeles, Case No. 23STCV02939
This action arose out of this health care group 2023 data breach which affected roughly 3.3 million patients. Cole & Van Note served as the lead firm. The matter settled for $50 million (settlement pending).

Henderson v. Reventics, LLC
United States District Court (D. Colo.), Case No. 1:23-cv-00586-MEH
This action arose out of Reventics' massive 2022 data breach which affected over four million patients, consumers and employees. Cole & Van Note was appointed co-lead class counsel. The matter settled for $8.15 million (settlement pending).

Hinds v. Community Medical Centers
Superior Court of California, County of San Joaquin, Case No. STK-CV-UNPI-2021-0010404
This action arose out of Community Medical Centers' massive 2021 data breach which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead counsel position. This action resulted in a multi-million-dollar judgment.

In re Apple Inc. Device Performance Litigation
United States District Court (N.D. Cal.), Case No. 5:18-md-02827-EJD
Following Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7 and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs, Cole & Van Note filed a class action to recover damages for consumers nationwide. Cole & Van Note served on the Plaintiffs' Steering Committee. This action settled for $500 million.

In re DISH Network Data Security Incident Litigation
United States District Court (D. Colo.), Case No. 1:23-cv-01168-RMR-SBP
This action arose out of DISH Network's massive data breach which affected over 300,000 workers. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Dropbox Sign Data Breach Litigation
United States District Court (N.D. Cal.), Case No. 4:24-cv-02637-JSW
This action arose out of Dropbox's massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Rackspace Security Litigation
United States District Court (W.D. Tex.), Case No. SA-22-cv-01296
This action arises out of Rackspace Technology's 2022 massive ransomware event which shut down functionality for tens of thousands of individuals and businesses across the Unites States and overseas. Cole & Van Note served as court-appointed sole lead counsel for the nationwide class and representative plaintiffs from over 30 states.

In re Tosco SFR Litigation
Superior Court of California, County of Contra Costa, Case No. C97-01637
During incidents in April 1997 and January 1998, the Tosco Refinery in Rodeo, California released tons of airborne toxic chemicals. These harmful substances traveled into neighboring communities, seriously affecting the health of citizens and local workers. CVN served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. The multi-million-dollar fund created through this litigation under Cole & Van Note's sole leadership was disbursed among thousands of claimants and significantly change practices at this refinery ever since.

In re Unocal Refinery Litigation
Superior Court of California, County of Contra Costa, Case No. C94-04141
In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, CVN filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million. This litigation, Mr. Cole's efforts to commence it and his grassroots work and exposure of the toxic event to the media provide the backdrop for Mr. Cole's book, "Fallout," published in 2018 (2605 Media LLC). In the end, the impact of this litigation was sweeping, substantially changing practices at this refinery and industry regulations, helping to establish a toxic release community monitoring system that spawned similar systems across the nation, establishing parks, improved roadways and an unprecedented community-industry Good Neighbor agreement.

In re Walgreen Co. Wage and Hour Litigation
United States District Court (C.D. Cal.), Case No. 2:11-CV-07664
Our firm served as court-appointed Lead Counsel after an adversarial hearing process in this consolidated action of nine lawsuits bringing a variety of wage and hour claims on behalf of California workers. The case settled under Cole & Van Note's sole leadership for $23 million.

In re Westley Tire Fire Litigation

Superior Court of California, County of Santa Clara, Case No. CV 801282

On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. CVN served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, CVN reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for roughly $1.4 million (over $10 million aggregate).

Kullar v. Foot Locker, Inc.

Superior Court of California, County of San Francisco, Case No. CGC-05-447044; 168 Cal.App.4th 116 (2008)

This class action was brought on behalf of California employees allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. After the Court approved a multi-million settlement, two separate appeals challenged the settlement, but the Court of Appeal affirmed the trial court's judgment. This oft-cited case established in California what's now known as the "*Kullar standard*" for court approval of class action settlements.

Kurihara v. Best Buy Co., Inc.

United States District Court (N.D. Cal.), Case No. C 06-01884 MHP (EMC)

This class action was brought on behalf of Best Buy's California employees against this chain retailer for violations of California law (for denial of meal and rest periods). This case was granted class certification and Cole & Van Note then settled it for $5 million following an oft-cited ruling which clarified the distinction between class composition and entitlement to a recovery.

Lett v. TTEC

United States District Court (N.D. Cal.), Case No. 3:22-cv-00018

This action arose out of TTEC Service Corporation's massive data breach in 2021 which affected countless patients, consumers and employees. CVN helped negotiate a $2.5 million settlement for the class of victims.

Mambuki v. Securitas Security Services USA, Inc.

Superior Court of California, County of Santa Clara, Case No. 1-05-CV-047499 (JCCP No. 4460)

Our firm filed a claim against this defendant for violations of California law (for denial of meal and rest periods) on behalf of the company's California-based security guards. This coordinated proceeding settled in 2008 for $15 million.

Mendoza v. CaptureRx
United States District Court (W.D. Texas), Case No. 5:21-CV-00523-OLG
This class action against NEC Networks, LLC, d/b/a CaptureRx ("CaptureRx"), as well as Rite Aid and Community Health Centers of the Central Coast arising out of the massive data breach in 2021 which affected a minimum of 1.6 million people. The hacked information included sensitive personally identifiable information and personal health information. These consolidated cases settled in 2022 for a total value of over $4.75 million.

Moreland, et al. v. 1st Franklin Financial Corporation
United States District Court (N.D. Ga.), Case No. 2:23-cv-00038-SCJ
This action arose out of 1st Franklin Financial's 2022 data breach affecting this company's loan consumers. Cole & Van Note was appointed co-lead class counsel.

O'Brien v. Edward D. Jones & Co., LP
United States District Court (N.D. Ohio), Case No. 1:08-CV-00529
We filed a nation-wide (and New York State) class action against this financial securities company on behalf of the company's financial services representatives to recover overtime pay and related penalties. CVN served on a Lead Counsel Committee in this action, which settled in 2007 for $19 million.

Onyeige v. Union Telecard Alliance, LLC
United States District Court (N.D. Cal.), Case No. 3:05-CV-03971; MDL No. 1550
Our firm filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and deceptive advertising practices related to its marketing of pre-paid telephone calling cards. This action settled for $22 million.

Prutsman v. Nonstop Administration and Insurance Services, Inc.
United States District Court (N.D. Cal.), Case No. 3:23-cv-01131-VC
This action arose out of Nonstop's massive 2022 data breach which affecting consumers, employees and health care affiliates. Cole & Van Note was appointed co-lead class counsel.

Ramirez v. The Coca Cola Company
Superior Court of California, County of San Bernardino, Case No. RCV 056388 (JCCP No. 4280)
This was one of two companion actions CVN prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action resolved under Cole & Van Note's leadership for $12 million.

Riordan v. Western Digital Corp.
United States District Court (N.D. Cal.), Case No. 5:21-CV-06074
This action arose out of the well-publicized widespread criminal data deletion of consumer hard drives in 2021. According to the lawsuit, the company knew of vulnerabilities in, at least,

six of its products for years which, ultimately, led to the erasure of data for countless purchasers of these products. CVN served as sole counsel for the victims.

Roman/Toussaint v. HanesBrands, Inc.
United States District Court (M.D. N.C.), Case No. 1:22-cv-00879-LCB-LPA
This case involved a data breach of HanesBrands' network system in which worker information was accessed and/or reviewed by cybercriminals.

Tambroni v. WellNow Urgent Care, P.C.
United States District Court (N.D. Ill.), Case No. 1:24-cv-01595
This action arose out of WellNow's 2023 data breach affecting over 400,000 patients. Cole & Van Note was appointed co-lead class counsel.

Thomas v. Cal. State Auto. Assoc.
Superior Court of California, County of Alameda, Case No. CH217752
Our firm filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis- classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million for nearly 1,200 workers.

Tierno v. Rite Aid Corporation
United States District Court (N.D. Cal.), Case No. 3:05-CV-02520
Our firm filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved a hard-fought settlement, achieved under Cole & Van Note's sole leadership, of $6.9 million.

Tsvetanova v. Regents of the University of California, dba U.C. San Diego Health
Superior Court of California, County of San Diego, Case No. 37-2021-00039888-CU-PO-CTL
This action arose out of U.C. San Diego Health's massive data breach between December 2020 and April 2021 which affected countless patients, consumers and employees. After reviewing numerous requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead class counsel position.

Witriol v. LexisNexis
United States District Court (S.D. Cal.), Case No. 3:06-CV-02360
Our firm filed an action against this company for its unlawful disclosure of private credit, financial and/or other personal information. This litigation, resolved by Cole & Van Note, provided a settlement fund of $2.8 million.

CVN also serves in more informal (e.g., Executive Committee or Plaintiffs' Steering Committee) leadership positions in numerous other data breach cases and in sole counsel roles in many dozens more—actions currently pending across the majority of U.S. states.

## APPELLATE EXPERIENCE

CVN has substantial appellate experience, merely highlighted by some examples below. For other appellate and/or unreported opinions and/or a list of matters currently on appeal, please contact our firm.

Augustus v. ABM Security Services, Inc. (2016) 2 Cal.5th 257 (Case No. S224853).

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487 (Case No. 93-17187).

Bradford v. Asian Health Services (9th Cir. 2025) Case No. 24-3702

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422 (First Dist., Division 1, Case No. A111153).

Gonzalez v. El Centro del Barrio (5th Cir. 2025) Case No. 25-50092

In re Certified Tire and Service Centers Wage and Hour Cases (2018) 28 Cal.App.5th 1 (Cal. Ct. of Appeals, Fourth Dist., Division 1, Case No. A086407).

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116 (Case No. A119697).

Montano v. The Wet Seal Retail, Inc. (2015) 232 Cal.App.4th 1214 (Cal. Ct. App. 2015)

O'Hara v. Factory 2-U Stores, Inc., 2003 WL 22451991 (Cal. Ct. of Appeals, First District, Division 4, Case No. A101452)

Taylor v. Park Place Asset Management (1999) (Cal. Ct. of Appeals, First Dist., Division 5, Case No. A086407).

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688 (Case No. 07-16696).



555 12th Street, Suite 2100
Oakland, CA 94607
Tel: 510-891-9800

*www.colevannote.com*

# EXHIBIT C

1   Scott Edward Cole, Esq. (S.B. #160744)
    Laura Grace Van Note, Esq. (S.B. #310160)
2   **COLE & VAN NOTE**
    555 12th Street, Suite 2100
3   Oakland, California 94607
    Telephone:   (510) 891-9800
4   Email: sec@colevannote.com
    Email: lvn@colevannote.com
5
    Ronald W. Armstrong, II (TX S.B. #24059394)*
6   **THE ARMSTRONG FIRM, PLLC**
    109 Yoalana St, Suite 210
7   Boerne, Texas 78006
    Telephone:   (210) 277-0542
8   Email: rwaii@tafpllc.com

9   *Admitted Pro Hac Vice*

10  Attorneys for Representative Plaintiff
    and the Plaintiff Class

11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15  VANESSA WEST, individually, and      **Case No. 2:24-cv-09686-CAS-MAA**
    on behalf of all others similarly
16  situated,                            **CLASS ACTION**

17                        Plaintiff,     **DECLARATION OF FRANK
                                         BERNATOWICZ IN SUPPORT OF**
    v.                                   **PLAINTIFF'S UNOPPOSED MOTION**
18                                       **FOR PRELIMINARY APPROVAL OF**
    RHEEM MANUFACTURING               **CLASS ACTION SETTLEMENT**
19  COMPANY, and MELET
    PLASTICS, INC.,

20                        Defendants.

21

22

23

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-1-
DECL. OF FRANK BERNATOWICZ ISO MOTION FOR PRELIMINARY
APPROVAL // Case No. 2:24-cv-09686-CAS-MAA

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

I, Frank Bernatowicz, declare as follows:

1.      I submit this declaration in support of Plaintiffs' Non-Confidential Mediation Statement. I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to them.

2.      I have been retained by Cole & Van Note ("Cole"), and The Armstrong Firm, PLLC ("Armstrong"), (collectively "Class Counsel"), to perform a valuation of the proposed settlement in the above captioned class action matter.

3.      I have been a damages expert and Professional Engineer for over 40 years. I have been retained in well over 500 cases. My resume and summary of testimony experience are attached hereto as Exhibits A and B, respectively, where I have highlighted 159 cases in which I have testified at 40 trials and approximately 100 depositions.

4.      I received my Bachelor of Science Degree in Electrical Engineering from the University of Illinois, Champaign-Urbana in 1976. In 1981, I graduated from Loyola University with a Master of Business Administration in Finance. I became a Certified Public Accountant in 1984.

5.      Between 1976 and 1984, I was employed by Commonwealth Edison Company in various management positions including substantial "hands-on" experience in the management of engineering projects. In 1984, I joined the Brenner Group, a management consulting firm specializing in providing financial advisory and litigation services, as a senior consultant. I joined Ernst & Whinney in 1985 (now known as Ernst & Young LLP) and had been a partner in that firm with responsibility as partner-in-charge of the Midwest Region Litigation Services practice and as national director of the intellectual property practice. I joined Jay Alix & Associates in 1996 where I served as Managing Principal of the Chicago office. In 1999 I joined PricewaterhouseCoopers as Managing Partner of the

1  Midwest Region Intellectual Property Practice. In 2001 I joined BDO Seidman as

2  Managing Partner of Specialized Services.

3       6.    In 2003, I formed FAB Advisory Services, LLC, which was later

4  acquired by Huron Consulting Group Inc., where I was a Managing Director in the

5  Disputes and Investigations practice. In 2008, I formed a new firm under the name

6  of FAB Group, Inc., where I am currently the Managing Principal.

7       7.    I am or have been a member of the American Institute of Certified

8  Public Accountants, the Illinois CPA Society, the National Society of Professional

9  Engineers, and the Turnaround Management Association.

10       8.    In connection with this case, I have reviewed certain pleadings,

11  documents and sources of information provided to me by proposed Class Counsel,

12  including Plaintiff's Non-Confidential Mediation Statement, certain email from

13  opposing counsel providing class product numbers, pricing data by warranty length

14  for Rheem Water Heaters that contain certain Melet drain valves (Class Water

15  Heaters), warranty information, warranty claims and other relevant information, as

16  well as performed my own independent research on pertinent issues such as pricing

17  and margin for the Class Water Heaters, applicable extended warranty ("Warranty")

18  pricing offered from the marketplace, researched and analyzed the business terms

19  and conditions of those Warranties, researched and analyzed reasonable estimates of

20  the apportioned value of such Warranties reasonably tied to the defective Melet drain

21  valve, reviewed consumer water damage claims made to insurers, and reviewed and

22  analyzed various public financial, accounting and business information pertaining to

23  the Defendants and the Class Water Heaters.

24       9.    Based on my knowledge and experience and my review of information

25  in connection with this matter, I am familiar with, understand, and have knowledge

26  of the material set forth in this declaration.

27       10.    It is my understanding that the Class is defined as: "all individuals and

28  entities that own or have owned Class Products and/or who have owned homes or

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-3-
DECL. OF FRANK BERNATOWICZ ISO MOTION FOR PRELIMINARY
APPROVAL // Case No. 2:24-cv-09686-CAS-MAA

other structures physically located in the United States in which Class Products are or were installed.

11. As described in the Settlement Agreement, Defendant Melet formulates, designs, manufactures, assembles, tests, labels, markets, advertises, warrants and offers for distribution and sale water heater drain valves which are used to discharge water and sediment from Water Heaters. Among its array of products is the round poly drain valve advertised on Rheem's website and elsewhere as Part No. AP168002 (hereinafter, the "Class Products"), such as those designed, manufactured, advertised and sold by Rheem.

12. A defective Melet drain valve used in the expected application (hot potable water) with average life expectancy for Water Heaters (8-12 years), utilizes specific materials that are deficient for the intended purpose resulting in leaking and failure including catastrophic flooding and property damage, remediation of water damage, loss of use of property, insurance deductibles, part replacement cost and personal injury. One of Plaintiff's experts estimates an average time to failure of 1-3 years.

13. Assuming a Melet drain valve failure rate of 1-3 years, all water heaters sold would experience a failure within an average two-year period. Further, assuming all purchasers of Rheem water heaters with the Class products opted for a two-year automatic warranty extension and filed a parts-only claim, the value of Melet plastic drain valve replacements, at $9.48 each, would amount to $83.4 million. However, for various reasons claims were not filed. Only 1,246 claims were represented by Rheem as filed, out of total water heater sales with Class Products through 2024 of 8,792,586, about .01% of all sales. A general range of manufacturing defects for the water heater industry has been reported in the range of .5% to 2%. On the basis of sales dollars, Warranty Week reports claims as a percentage of sales in the range of 1 – 3.5%. The Melet valve failure rate reported is substantially less than expected for a defective product, which in may experience

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

may be in excess of 5%. Several reasons for this are likely, including the low replacement cost of a drain valve and installation by owners themselves simply because a typical Rheem warranty would provide for a parts-only replacement after the first year. Further, my experience indicates that typical appliance repair costs fall in the range of $200 to $300, including labor, and at $9.48 for a parts-only claim, many owners may feel it is not worth the effort.

14.    For settlement purposes only, I understand that benefits to Class members should fall into one or more of four primary categories—depending on the circumstances and interests of each Class member:

a.    <u>Benefit #1: Two Year Automatic Parts-Only Warranty Extension</u>: i.e., an alternative award for Class members who wish to receive a parts-only warranty on Class Products (drain valve) to extend their current warranty coverage for two years or if expired, a new two-year warranty to commence at the Effective Date of the Settlement.

b.    <u>Benefit #1A: One-Year Elective Warranty Extension</u>: i.e., an alternative award for the first 100,000 Class members who wish to receive a parts and labor warranty on Class Products (drain valves) to extend their current warranty coverage for one year or, if expired, a new one-year warranty to commence at the Effective Date of the Settlement.

c.    Benefit #1B: <u>Replacement Brass Drain Valve Election</u>: i.e., an alternative award for the first 20,000 Class members who wish to receive a brass drain valve as a replacement for their Class Product during the Claim Period.

d.    <u>Benefit #2: Payment of Valid Claims</u>: i.e., for Class members who already experienced a drain valve failure (absent prior payment for such damages) and consequential damages. Each Class Member may recover up to $1500 per Valid Claim subject to a total aggregate

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  cap of $500,000

2  15.    As stated above, I have reviewed and analyzed class damages for

3  Settlement purposes in this class action matter, and my findings regarding four

4  benefits (Benefit #1, Benefit #1A, Benefit #1B and Benefit #2) to the Settlement

5  Class under a proposed Settlement are summarized, organized by the type of

6  settlement benefit, below.

7  Benefit #1: Two-Year Automatic Parts-Only Warranty Extension

8  16.    The Settlement offers a Parts-Only warranty extension of two years for

9  Class Products related to Melet drain valves used in Rheem Water Heaters or, if

10  expired, a new two-year warranty to commence from the Effective Date of the

11  Settlement. I have reviewed and analyzed the Warranty Extension value to the

12  Settlement Class. For purposes of my analysis, I have assumed the following: (1)

13  Settlement Class members whose Rheem Water Heaters include the Class Products

14  will receive a Warranty Extension benefit under the proposed settlement, and (2) the

15  maximum number of Class Water Heaters subject to this benefit is estimated to be

16  8,672,586. The additional 2-year Warranty Extension benefit is reasonably

17  quantified based on analytical procedures described below.

18  17.    Warranty Extension Benefit (Apportioned Water Heater Warranty

19  Extension) is based on Defendant's counsel representation of price points for 40-

20  gallon Rheem Water Heaters with warranty lengths from three years to twelve years

21  as well as Plans offered by Home Depot. On this basis, I determined a reasonable 2-

22  year Warranty Extension price of $53.33. Further, I apportioned an amount of the

23  additional 2-year Warranty extension to the Melet drain valves (Class Products)

24  associated with related Rheem Water Heaters based on: (1) Rheem Melet plastic

25  valve retail price divided by and (2) average Home Depot retail price of 40 gallon

26  Rheem Water Heaters with warranties ranging from three to twelve years which

27  amounted to 1.5%. Using this percentage to estimate an amount of the Warranty

28  Extension associated with Melet defective valves, the apportioned 2-year Warranty

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Extension value is $.81. To illustrate this class benefit, I then multiply the apportioned 2-year Warranty Extension value of $.81 by the total sales quantity of estimated Class Water Heaters, numbering 8,672,586, assuming 10% of Melet valves purchased by Rheem (Class Products) were held for warranty repair and other purposes. See formula below:

> (Apportioned 2-Year Warranty Extension Value) multiplied by (Class Water Heater Quantity)

On this basis, the extended two-year Warranty value, apportioned for Melet Drain Valve, total $7.0 million.

18.    My analysis is based on the above findings and further analytical procedures: First, I reviewed and analyzed sales price and Warranty Extension pricing information for representative models of Rheem Water Heaters, as well as warranty pricing from Home Depot. From this pricing data, I determined the average price of an additional 2-year Warranty Extension. My analysis reveals the price of an additional 2-year Warranty Extension to be $53.33.

19.    Second, I estimated what portion of the additional 2-year Warranty Extension for the Rheem Class Water Heaters relate to the Melet drain valves (Class Products) based on its Cost of Goods ratio to total Cost of Goods for the Rheem Water Heater as a whole. Based on this ratio, I apportioned 1.5% of the Warranty Extension to Melet drain valves. Accordingly, the apportioned 2-year Warranty Extension value, based on the percentage of Melet drain valves, is $.81.

20.    Lastly, to determine the value of the Warranty Extension Benefit I multiply the Apportioned 2-Year Warranty Extension Value ($.81) by the estimated Sales Quantity of Class Water Heaters (8,672,586).

21.    On the aforementioned bases, in my opinion, the 2-Year Warranty Extension Benefit apportioned for coverage of Melet Drain Valves amounts to $7,027,018.

**Benefit #1A: One-Year Elective Warranty Extension**

22.    It is my understanding that the Settlement proposal also includes an alternative benefit wherein the first 100,000 Class Members who wish to receive a parts and labor warranty on Class Products (drain valve) may elect to extend their current warranty coverage for one year or, if expired, a new one-year warranty to commence at the Effective Date of the Settlement.

23.    I have reviewed and analyzed the One-Year Elective Warranty Extension value to the Settlement Class. For purposes of my analysis, I have assumed the following: (1) the first 100,000 Class Members whose Rheem Water Heaters include the Class Products may elect to receive a one-year parts and labor warranty extension on Class Products under the proposed settlement, and (2) the maximum number of Class Water Heaters subject to this benefit is expected to be reached and estimated to be 100,000. The additional One-Year Elective Warranty Extension benefit is reasonably quantified based on analytical procedures described below.

24.    The One-Year Elective Warranty Extension Benefit (Apportioned Water Heater Warranty Extension) is based on Defendant's counsel representation of price points for 40-gallon Rheem Water Heaters with warranty lengths from three years to twelve years as well as Plans offered by Home Depot and analysis of labor costs for appliance warranty work. On this basis, I determined a reasonable 1-year Warranty Extension price of $26.67. Further, I apportioned this price for the additional 1-year Warranty Extension to the Melet drain valves (Class Products) associated with related Rheem Water Heaters based on: (1) Rheem Melet plastic valve retail price (2) labor cost associated with appliance repair based on my experience on these matters and have estimated a water heater labor charge of 1 hour over a three-year period would be reasonable to expect and apportioned an estimated 5% of that amount for drain valve failure. (3) average Home Depot retail price of 40 gallon Rheem Water Heaters with warranties ranging from three to twelve years. On

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

this basis, the ratio or apportionment of Melet valves apportioned parts and labor cost to water heater retail price amounted to 1.8%. Using this percentage to estimate an amount of the Warranty Extension associated with Melet defective valves, the apportioned 1-year Warranty Extension value is $.48. To illustrate this class benefit, I then multiply the apportioned 1-year Warranty Extension value of $.48 by the total sales quantity of estimated Class Water Heaters, numbering 100,000, assuming the Class Members opting for this benefit was reached. See formula below:

(Apportioned 1-Year Warranty Extension Value) multiplied by (Class Water Heater Quantity Cap)

On this basis, the extended one-year service parts and labor warranty plan value, apportioned for Melet Drain Valve defects, total $47,635.

25.    My analysis is based on the above findings and further analytical procedures: First, I reviewed and analyzed sales price and Warranty Extension pricing information for representative models of Rheem Water Heaters, warranty pricing from Home Depot and estimated appliance repair labor cost. From this pricing data, I determined the average price of an additional 1-year parts and labor Warranty Extension. My analysis revealed the price of an additional 1-year Warranty Extension to be $26.67.

26.    Second, I estimated what portion of the additional 1-year Warranty Extension for the Rheem Class Water Heaters relate to the Melet drain valves (Class Products) based on the retail price of the aforementioned Melet drain valves plus apportioned annual labor charge compared to the retail price of Water Heaters. Based on this ratio, I apportioned 1.8% of the parts and labor Warranty Extension to Melet drain valves. Accordingly, the apportioned 1-year Warranty Extension value, based on the percentage of Melet drain valves, is $.48.

27.    Lastly, to determine the value of the Warranty Extension Benefit I multiply the Apportioned 1-Year Warranty Extension Value ($.48) by the estimated

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF FRANK BERNATOWICZ ISO MOTION FOR PRELIMINARY APPROVAL // Case No. 2:24-cv-09686-CAS-MAA

Sales Quantity of Class Water Heaters (100,000), the cap of Class Members who may opt for this alternative.

28.    On the aforementioned bases, in my opinion, the 1-Year Parts and Labor Warranty Extension Benefit apportioned for coverage of Melet Drain Valves amounts to $47,635.

**Benefit #1B: Replacement Brass Drain Valve**

29.    It is my understanding the Settlement proposal includes another alternative benefit wherein the first 20,000 Class Members may elect to receive a replacement brass drain valve in lieu of Benefit #1 or Benefit #1A after submittal of a valid claim.

30.    I have reviewed and analyzed the Replacement Brass Drain Valve benefit value to the Settlement Class. For purposes of my analysis, I have assumed the following: (1) the first 20,000 Class Members whose Rheem Water Heaters include the Class Products may elect to receive a replacement brass drain valve under the proposed settlement, and (2) the maximum number of Class Water Heaters subject to this benefit is expected to be reached and estimated to be 20,000. The Replacement Brass Drain Valve benefit is reasonably quantified based on analytical procedures described below.

31.    First, the Replacement Brass Drain Valve benefit is based on an on-line review of Rheem Malet Brass Drain Valve retail price of $22.47. Second, based on the small number of Class members who may avail themselves to this alternative, 20,000, compared to the total quantity of Rheem Water heaters embodying the Class Products, 8,792,586, and the benefit per unit compared to the other alternatives, I estimate that the cap will be met. To illustrate this class benefit, I then multiply the brass valve retail price of $22.47 by the total estimated number of Class Members who may opt for this benefit, 20,000, assuming the Class Members cap or ceiling was reached. See formula below:

(Rheem Melet Brass Drain Valve Price) multiplied by (Class Member Cap)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECL. OF FRANK BERNATOWICZ ISO MOTION FOR PRELIMINARY
APPROVAL // Case No. 2:24-cv-09686-CAS-MAA

On this basis, the replacement Brass Drain Valve Benefit is $449,400.

**Benefit #2: Payment of Valid Claims**

32.     It is my understanding that the Settlement proposal also includes another benefit wherein Class Members who submit a valid claim may be reimbursed for parts and labor cost and consequential damages, including water damages, up to $1,500 per Class Member with an aggregate cap of $500,000 across all documented loss reimbursements.

33.     The payment of Valid Claims benefit is reasonably quantified based on analytical procedures described below.

34.     The payment of Valid Claims include parts and labor cost associated with out-of-pocket costs related to Class Products failure plus any consequential cost that may be associated with drain valve failure, including leaks and associated water damage. First, the replacement valve cost may be estimated based on the use of a brass valve for the failed plastic valve. My on-line review of Rheem Malet Brass Drain Valve revealed a retail price of $22.47. Second, my review of appliance repair labor rates on numerous other similar appliance warranty matters indicated a labor rate of $100 per hour would be reasonable. Third, my review of home water damage indicate average remediation costs across a wide spectrum of causes, including water heater leaks, in excess of $6,000. In this case, the cap of the damages for valid claims would be $1,500 including parts and labor and water damage. Deducting for parts and labor amount, the cap would allow an amount of $1,377.53 for consequential damages such as water damages. Fourth, I assume 2% of all claims would include water damage with 98% related to parts and labor replacement cost. Using aforementioned cost estimates and ratio, I estimate an amount of $147.57 per claim. Fifth, this benefit is limited to a total aggregate cap of $500,000 across all documented loss reimbursements. At an estimated average of $147.57 per claim, 3,388 claims would be required to reach the total aggregate amount. Using a failure rate of 2% applied against all sales quantity of water heaters, 8,792,586, would

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

indicate a potential of 175,852 claims, of which 1,246 have been reported by defendant, leaving net potential claims of 174,606. Therefore, in my opinion it would be reasonable to assume the filing of at least 3,388 claims, 1.9% of estimated potential claims, the amount necessary to reach the total aggregate cap of $500,000. See formula below:

> (Avg Claim: ((98% X Parts + Labor)+(2% X Consequential Damages)) is >= $1,500:
>
> $1500 X Number of Claims) is capped at $500,000)

On this basis, the Payment of Valid Claims Valve Benefit total $500,000.

35.    In summary, Settlement Benefit amounts to Class members are summarized as follows:

- Benefit #1 (#1, #1A & #1B) for Extended Warranty and Replacement total $7,524,054.

- Benefit #2 for Payment of Valid Claims total $500,000

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 9th day of October, 2025 in California.

/s/ Frank A. Bernatowicz

Frank Bernatowicz

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**EXHIBIT 1**
**CLASS ACTION - RHEEM WATER HEATERS**
**DAMAGE ANALYSIS**

| Col 1 | Col 2 | Col 3 | Col 4 | | Col 5 | Col 6 | Col 7 | Col 8 |
|---|---|---|---|---|---|---|---|---|
| REF | DESCRIPTION | PRICE (WH-AVG RETAIL) (1) | SALES QTY (2) | VALVE PRICE (3) | WH SERVICE PLAN $ PER UNIT - 1 OR 2YR EXT (4) | SERVICE PLAN % APPOR. TO MELET VALVE (5) | SERVICE PLAN $ MELET VALVE-WARRANTY EXT | BENEFIT SUMMARY |
| | | | | | | | Col5 X Col6 | Col4 X Col7 |
| 3 | | | 8,792,586 | | 1 | | | |
| 4 | **BENEFIT #1 - EXTENDED SERVICE PLAN (2 yr parts only)** | | | | 2 | | | |
| 5 | | | | | | | | |
| 6 | **#1A - EXTENDED SERVICE PLAN (2 yr parts only)** | | | | | | | |
| 7 | Valve (Plactic) only; Sales Qty adjusted for Alt. 1A & 1B Qty | $ 624 | 8,672,586 | $ 9.48 | $ 53.33 | 1.5% | $ 0.81 | $ 7,027,018 |
| 8 | | | | | | | | |
| 9 | **#1B - EXTENDED SERVICE PLAN (1 yr parts & labor)** | | | | | | | |
| 10 | Valve (Plactic) only + Labor | $ 624 | 100,000 | $ 109.48 | $ 26.67 | 1.8% | $ 0.48 | $ 47,635 |
| 11 | Customer Limit 100,000; Assume Limit reached | | | | | | | |
| 12 | | | | | | | | |
| 13 | **#1C- EXTENDED SERVICE PLAN (Brass Valve)** | | | | | | | |
| 14 | Valve (Brass) only | $ 624 | 20,000 | $ 22.47 | | | $ 22.47 | $ 449,400 |
| 15 | Customer Limit 20,000; Assume Limit reached | | | | | | | |
| 16 | | | | | | | | |
| 17 | **BENEFIT #1 AMOUNT** | | | | | | | $ 7,524,054 |
| 18 | | | | | | | | |
| 19 | **BENEFIT #2 - REIMBURSEMENT FOR REPAIRS (Historical)** | | | | | | | |
| 20 | | Estimated Failures | MAX Claims | | Parts | Labor | Consequential | Total |
| 21 | Claim $ by type with MAX amount per claim (6) | | | | $ 22.47 | $ 100.00 | $ 1,377.53 | $ 1,500.00 |
| 22 | Claim Distribution by type (7) | | | | 98% | 98% | 2% | |
| 23 | Average Amount per Claim (8) | | | | 22.02 | 98.00 | $ 27.55 | $ 147.57 |
| 24 | Failures & MAX Claim Estimates (9) | 174,606 | 3,388 | | | | | |
| 25 | Claims % of Failures (10) | | 1.9% | | | | | |
| 26 | | | | | | | | |
| 27 | **BENEFIT #2 AMOUNT** | | | | | | | $ 500,000 |

Notes:
(1) Source: Home Depot online data, 9/16/25, 40gal warranty cost
(2) Sales Qty based on Kahn Scolnick 4/23/25 Email, assumes 10% of production held in reserve for warranty purposes
(3) Plastic & Brass Drain Valve prices based on Rheem and Grainger on-line
(4) Source: Home Depot online data, 9/16/25, 40gal warranty cost for 3,6,9 & 12 yr water heaters
(5) Service/Warranty plan amount apportioned to Melet valve (with & without labor cost)
(6) Parts cost based on Rheem on-line brass drain valve; labor based on avg. service cost/hr; consequential limited to $1500 less parts & labor
(7) Parts & labor % estimated based on % consequential damage due to water leaks
(8) % Claim Distribution type X $ amount per component
(9) Failure rates based on estimated 2% failure rate less claims submitted to Rheem per footnote #2
(10) MAX Claims based on $500,000 limited divided by average claim amount & expressed as % of estimated failures

# EXHIBIT D

Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com
Email: lvn@colevannote.com

Ronald W. Armstrong, II (TX S.B. #24059394)*
**THE ARMSTRONG FIRM, PLLC**
109 Yoalana St, Suite 210
Boerne, Texas 78006
Telephone: (210) 277-0542
Email: rwaii@tafpllc.com

**Admitted Pro Hac Vice*

Attorneys for Representative Plaintiff and the Plaintiff Class

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VANESSA WEST, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

RHEEM MANUFACTURING COMPANY, and MELET PLASTICS, INC.,

Defendants.

**Case No. 2:24-cv-09686-CAS-MAA**

**CLASS ACTION**

**DECLARATION OF BRUCE DAVIS, PH.D. IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Bruce Davis, Ph.D., hereby declare as follows:

1.    I submit this declaration in support of Plaintiffs' Mediation Statement. Specifically, this declaration is submitted in furtherance of F.R.E. 408. I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to them.

2.    I have been retained by Scott Cole of Cole & Van Note and Ronald W. Armstrong, II of The Armstrong Firm, PLLC (collectively "Class Counsel") to perform an evaluation of the Rheem AP16800C drain valve utilizing new and old stock exemplars.

3.    I received a Ph.D. in Mechanical Engineering from the University of Wisconsin-Madison in the field of polymer processing in 1995, and a Master of Science in Mechanical Engineering from the University of Illinois, Champaign-Urbana in 1992.

4.    I have expertise in the mechanical behavior of polymers and specialize in the engineering forensic analysis of plastic and rubber components (e.g., to determine root causes of failure). I have extensive experience with the use of microscopy, analytical techniques and mechanical testing of polymeric materials. I also have expertise with numerical methods and computer simulation for polymer processing, structural analysis of plastics and injection molding for the physical production of plastic products. I have worked with hundreds of industrial clients to help solve processing and material issues, assist with design and material selection and analyze failures. I have authored more than 40 publications on polymers and conducted thousands of failure and material analyses on polymer samples. I have also authored chapters in textbooks on extrusion processing and injection molding and co-authored a book on compression molding of polymers. Finally, I served as lecturer at the University of Wisconsin-Madison, teaching a graduate level course on polymer processing and behavior.

5.    I have testified numerous times as an expert witness in federal and state court cases in the field of polymer science and plastic failure analysis. My curriculum vitae is attached to my declaration as Exhibit "A" and is accurate as to my experience and history to the best of my knowledge.

6.    In 1993, I co-founded The Madison Group: Polymer Processing Research Corporation where I am currently a Senior Managing Engineer and CEO.

7.    I am a Senior member of the Society of Plastics Engineers, a Member of the American Society of Mechanical Engineers and a member of ASTM International.

8.    In connection with this case, I have personally examined and/or conducted testing including visual examination, Stereographic Microscopy, High-Definition Digital Microscopy (HDDM), Fourier Transform Infrared Spectroscopy (FTIR), Differential Scanning Calorimetry (DSC), Oxidation Induction Time (OIT), Scanning Electron Microscopy (SEM) and Energy Dispersive X-Ray Spectroscopy (EDS) on a number of Melet valves identified by Plaintiff's counsel as potentially defective products.

9.    In my professional opinion, the catastrophic leakage events in the Melet valves result from internal fractures and/or erosion of the internal elastomeric seal, visible cracking and erosion at the internal valve stem and/or surface cracking at the inlet ID of the valve body. The internal elastomeric seals have been found to experience radial fractures, surface cracking and severe erosion (loss) of material. The inner diameter of the valve inlet experiences mudcracking and loss of material along the portion expected to be in contact with water from the water heater. The valve stem also experiences mudcracking at the tip in contact with water. Failure in all three internal components is attributed to material degradation effects from the expected service environment. These failures occur in the specific polymeric materials selected by the manufacturer through an oxidative degradation mechanism. The resulting mudcracking, embrittlement and loss of material is a result of

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

molecular degradation in the internal elastomeric seal, valve stem and valve body that contact hot potable water during normal service and operation of the water heater. Cracking and erosion in any of these three critical components compromises the sealing integrity of the internal valve assembly and permits unmitigated flow through the valve, even when in the valves ordinary closed position.

10.     In my professional opinion, the specific formulations of the two polymeric compounds that are used during manufacture of the Melet valve components are deficient in their antioxidants performance and exhibit poor resistance to oxidative degradation. Namely, the two polymeric material(s) selected by this manufacturer are an ethylene:propylene:diene terpolymer (EPDM) rubber for the internal elastomeric seal and a glass-fiber reinforced polypropylene resin for both the internal valve stem and valve body. The combined inadequate levels of antioxidant protection and deficient material quality make these internal components susceptible to degradation that leads to catastrophic leakage.

11.     In my professional opinion, it has been well known in the industry for at least twenty years that many polymer and elastomer formulations are susceptible to degradation in municipal water supply environments. Governing standard bodies such as the American Society of Mechanical Engineers (ASME) have promulgated the need to evaluate chlorine and chloramine resistance of elastomers in their published plumbing standards (ASME A112) that ensure plumbing products and assemblies perform as intended in residential and commercial settings. Furthermore, ASTM International have also promulgated test standards such as ASTM D6284 to evaluate the ability of rubber compounds to withstand aqueous solutions with chlorine and chloramines. This ASTM test standard also specifically incorporates elevated temperatures in the methodology that are known to accelerate this chemical attack and lead to significant loss of mechanical properties in polymeric materials. Without proper formulation, additives and/or material processing, these materials will prematurely experience degradation and failure.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

12.    This hot municipal water supply environment is one foreseeable by Melet and Rheem since the drain valve is intended for the outlet of a water heater that is exposed to the hot potable water supply. Based on the expected application (hot potable water) and life expectancy for water heaters (8-12 years), the specific materials used to manufacture the seal, the internal valve stem and the valve body are deficient for the intended purpose.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __9th__ day of October 2025 in Madison, Wisconsin.


_____
Bruce Davis, Ph.D.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800