Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:  (510) 891-9800
Email: sec@colevannote.com
Email: lvn@colevannote.com

Ronald W. Armstrong, II (TX S.B. #24059394)*
**THE ARMSTRONG FIRM, PLLC**
109 Yoalana St, Suite 210
Boerne, Texas 78006
Telephone:  (210) 277-0542
Email: rwaii@tafpllc.com

*Admitted Pro Hac Vice*

Attorneys for Representative Plaintiff
and the Plaintiff Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA WEST, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> RHEEM MANUFACTURING COMPANY, and MELET PLASTICS, INC., <br><br> Defendants. | **Case No. 2:24-cv-09686-CAS-MAA** <br><br> **CLASS ACTION** <br><br> **DECLARATION OF SCOTT EDWARD COLE IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AND SERVICE AWARD** <br><br> Date:  May 11, 2026 <br> Time:  10:00 a.m. <br> Ctrm.:  8D <br> Judge:  Hon. Christina A. Snyder |

I, Scott Edward. Cole, Esq., declare as follows:

1.     I, Scott Edward Cole, Esq., am an attorney duly licensed to practice before all courts of the State of California as well as federal courts across the country. I am the Founder and Shareholder of the law firm Cole & Van Note ("CVN").

*COLE & VAN NOTE*
*ATTORNEYS AT LAW*
*555 12TH STREET, SUITE 2100*
*OAKLAND, CA 94607*
*TEL: (510) 891-9800*

2.     I was appointed by the Court as Settlement Lead Class Counsel for the Proposed Class in this proceeding against Defendants Rheem Manufacturing Company and Melet Plastics, Inc. (collectively, "Defendants"). I have personal knowledge of the matters stated herein and, if called upon, we could and would competently testify regarding those matters. I submit this Joint Declaration in support of Plaintiff's Motion for Attorneys' Fees and Costs, and Service Award ("Motion").

3.     As discussed below, I believe the proposed settlement provides a substantial recovery in a case presenting complex issues and substantial risks, and is a fair, reasonable and adequate result for the Class.

4.     The Class Action Settlement Agreement and Release entered into between the Parties to this litigation was filed on November 17, 2025 in conjunction with the Motion for Preliminary Approval (Dkt. 58).

5.     CVN vigorously and zealously represented the interests of the proposed Settlement Class from the inception of this hard-fought litigation until the present. Class Counsel worked on a fully contingent basis and assumed the risk of challenging Defendants. In this litigation, Defendants were represented by a very well-respected, well-funded, and large international law firm who vigorously defended against Plaintiff's claims throughout the course of this litigation.

6.     That Representative Plaintiff achieved such an excellent result against such a formidable opponent is yet another factor supporting Class Counsel's request for fees without the benefit of any multiplier.

7.     This proposed Settlement is the result of significant litigation efforts by CVN, extensive settlement negotiations, and a full-day mediation on May 6, 2025 with respected neutral Honorable Philip S. Gutierrez (Ret.) of JAMS.

8.     Over the course of litigation and an entire year prior to filing, class counsel did substantial work and devoted substantial resources to this case. This included significant independent research, retention of appropriate experts,

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

necessary product testing, engineering analysis of the products and evaluation of warranty and claim data, despite the significant risks associated with all such litigation. Class Counsel's work also included researching and drafting the opposition to Defendants' Motions to Dismiss the Complaint and arguing on that motion to dismiss before the Court; conducting discovery; and negotiating an extremely favorable Settlement for the Class. The Settlement secures a significant recovery for the putative Class Members.

9. Pursuant to the Settlement, Defendants will provide compensation in the form of: (1) either a two-year extended warranty program for parts or a one-year extended warranty program for parts and labor, (2) a brass valve replacement option and/or (3) Documented Loss Reimbursement (subject to a $500,000 aggregate cap).

10. As for non-monetary settlement benefits, Defendants will pay all costs of claims administration, Plaintiff's Counsel's fees and litigation costs, and a service payment for the Class representative for the risk and effort required to bring and maintain this action. Further, as Defendants modified/improved the design of the drain valve in roughly 2023, no need exists for future injunctive or relief other than the terms set forth in the Settlement.

11. As of January 30, 2026, 4,270 claims have been submitted to the Claims Administrator.

12. Through the Motion for Award of Attorneys' Fees and Costs, and Service Award, and pursuant to the terms of the preliminarily approved Settlement Agreement, we respectfully request the Court grant (a) $ 950,000 in attorneys' fees and costs as well as Service Award of $5,000 to the Representative Plaintiff.

13. Over the nearly two years of research and heavily contested litigation, CVN has devoted more than 724.10 total hours and incurred a collective lodestar of $432,459.50 to secure the relief for the Class.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-3-

## THE COMMENCEMENT OF THE LITIGATION

14.     This class action arises out of Rheem Manufacturing Company's design, manufacture and sale of defective water heater drain valves to Plaintiff and other similarly situated individuals. Like many Class Members who made claims to their insurance carriers for reimbursement, published complaints on the internet, etc., within a modest time after its acquisition, Plaintiff's water heater drain valve failed and flooded portions of her home.

15.     On November 8, 2024, Plaintiff Vanessa West filed a class action complaint in this United States District Court, alleging that the Class Products were defectively designed or manufactured.

16.     On January 6, 2025, Defendant Rheem filed a Motion to Dismiss the Complaint, and the Court issued a ruling granting the motion as to seven of ten of Plaintiff's claims: breach of express warranty (Claim 1), breach of implied warranty of merchantability (Claim 2), violations of the Song-Beverly Warranty Act (Claim 8), violations of the Magnuson-Moss Warranty Act (Claim 3), common law fraud (Claim 7), violation of the Unfair Competition Law (claim 9), and unjust enrichment (Claim 10).

17.     On February 25, 2025, the operative First Amended Complaint was filed alleging three claims: strict liability/manufacturing and design defect and failure to warn (Claim 1), negligence (Claim 2), and negligent failure to warn (Claim 3).

18.     On March 28, 2025, Rheem filed its Answer and Defendant Melet Plastics filed its own Motion to Dismiss.

19.     The Court subsequently granted the parties' joint request to continue the hearing on Melet's Motion and the Scheduling Conference to allow the parties to finalize settlement discussions.

20.     As detailed in the Plaintiff's motion for settlement approval, passing the Motion to Dismiss stage was a watershed event but hardly the end of the hurdles

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

Plaintiff would face in this matter. (*See* Dkt. 58.) Plaintiff would, for example, face challenges at class certification. (*See e.g., Zinser v. Accufix Rsch. Inst., Inc.* (9th Cir. 2001) 253 F.3d 1180, 1189; *In re U.S. Foodservice 127* (2d Cir. 2013) 729 F.3d 108, 126; *Cole v. GMC* (5th Cir. 2007) 484 F.3d 717, 724 ("[I]n a class action governed by the laws of multiple states," "variations in state law may swamp any common issues and defeat predominance.").) Even if Plaintiff won class certification, class notice is expensive and a risky investment if Plaintiff thereafter lost the case.

21.    Plaintiff would also face evidentiary challenges, summary judgment/adjudication, motions in limine to limit trial issues and/or damages and, of course, trial and a potential appeal. I factored in all these risks against the settlement Defendants were willing to offer and made the decision that is best for Class interests.

## DISCOVERY

22.    Discovery efforts in the litigation were significant.

23.    During the course of the litigation, CVN dedicated significant time and monetary resources to this litigation. My firm conducted extensive research to investigate and understand the nature of Defendants' business, Defendants' corporate structure, necessary product testing, engineering analysis of the products and evaluation of warranty and claim data. This team's pre-settlement work also included, but was not limited to, working with our experts, and, of course, motion briefing, research and cases management efforts.

24.    Research included determining the relationship between the defendants, mapping out the history of that relationship and analyzing Defendants position in the water heater market. Additionally, Melet's status as a Canadian corporation when it relocated from South Dacota to Winnipeg posed multiple issues, including service of the pleadings and extensive minimum contacts analysis regarding Melet's distribution and supply chain in California. The minimum contacts analysis was critical as one of Melet's chief arguments in its Motion to

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

Dismiss was that it "lack[ed] sufficient contacts with California necessary to subject it to personal jurisdiction here." (Dkt. No. 44-1, at 6.)

25.    The parties also engaged in a slew of informal discovery. Defendant produced evidence that allowed me to understand the means and scope of the alleged defects, Defendants' sales of the products, warranty issues and options, the size and scope of the Class, etc., and the parties also informally exchanged non-public information in preparation for a successful mediation.

26.    As a result of this extensive discovery and expert advice, Representative Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement.

**SETTLEMENT NEGOTIATIONS**

27.    The Parties engaged in extensive, arm's-length negotiations over the course of many months, including a full-day mediation with neutral, Honorable Philip S. Gutierrez (Ret.) of JAMS, a well-respected mediator. Judge Gutierrez has extensive experience mediating class action litigation.

28.    Ahead of the mediation session, parties prepared comprehensive mediation briefs and Class Counsel researched the connection between the defendants, their corporate governance and their solvency, researched and examined comparable settlements and previous litigation against Defendants, prepared class certification arguments, etc.—all with an aim toward preparing the matter for class certification as quickly as possible and/or reaching a mediated resolution of the matter. Before any terms were negotiated, Representative Plaintiff had a thorough understanding of the composition of the Settlement Class, the nature of Defendants' anticipated defenses, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the product issues.

29.    The parties commenced mediation on May 6, 2025, with both sides represented by experienced counsel who fought hard for their clients. Following the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-6-

mediation, the parties engaged in numerous phone calls and emails with the mediator to solidify the class benefits, and while no clear sailing provision was sought or received, ultimately the parties agreed to $950,000 for attorneys' fees and costs. Ultimately, the parties reached agreement to terms of a settlement agreement, which were memorialized in the Settlement Agreement executed on or about September 5, 2025.

30.    Class Counsel thereafter collaborated on the logistics and substance of the notice plan. Representative Class Counsel spent numerous hours obtaining and negotiating bids from well-established, experienced, and highly regarded class action notice and administration firms. As a result, Representative Plaintiff maximized the amount that would be available to the Class for payment of claims. Class Counsel accomplished this by minimizing the notice and administration costs while ensuring that the notice and administration plan complied with all federal rules and guidelines and due process requirements.

31.    After soliciting competing bids in an effort to achieve the best deal for the class for administration of the Settlement, Class Counsel negotiated an agreement with CPT Group, Inc. ("CPT"). Class Counsel worked closely with CPT to hone the notice and claim form notice to comply with applicable law. Since the Preliminary Approval Order, Class Counsel has repeatedly audited the website to make sure it is correct and user-friendly, reviewed reports from, and conferred with, CPT about the progress of the notice and claims process, and responded to myriad inquiries from Class Members.

## SETTLEMENT TERMS

32.    The proposed Settlement Class is defined as "[a]ll individuals and entities that own or have owned Class Products and/or who own or have owned homes or other structures physically located in the United States in which the Class Products are or were installed." Settlement Agreement ("S.A.") ¶ 1.30.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

33.   "Class Products" means "round poly drain values . . . manufactured and advertised between 2019 and 2023." (S.A. ¶ 1.9.) This includes Rheem part numbers: AP12159A-K, AP14830A-G, AP16800A-G, AP16838A-G, SP12159AK, SP14830A-G, P16800A-G, and SP16838A-G. (*Id.*)

34.   In exchange for the Settlement's benefits, all Settlement Class Members will release any claims against Defendants based on one or more of the same factual predicates alleged in the Action. (S.A. ¶ 9.)

35.   The Settlement provides for (1) either a two-year extended warranty program for parts or a one-year extended warranty program for parts and labor, (2) a brass valve replacement option and/or (3) Documented Loss Reimbursement (subject to a $500,000 aggregate cap). (S.A. ¶ 3.1.)

36.   All Class Members, regardless of whether they submit a claim form, will automatically receive a two-year extension on any warranty coverage for the Class Products for parts (materials and workmanship), consistent with existing warranty terms. Similarly, if the applicable warranty has expired for any Class Member as of the Effective Date of this Settlement, that Class Member shall receive a new two-year warranty on the Class Product, said warranty(ies) to commence as of the Effective Date of this Settlement. (S.A. ¶ 3.2(a).)

37.   Based on Plaintiffs' expert's calculations, if all the purchasers of the Class Products (8,792,586 individuals) opted for a two-year automatic warranty extension and filed a claim, the value of Melet plastic drain valve replacements, at $9.48 each, would amount to $83.4 million. (*See* the Declaration of Frank Bernatowicz in support of Plaintiff's Motion for Preliminary Approval, at ¶ 13.)

38.   As a first alternative to the automatic two-year warranty extension, Class Members may elect, during the settlement claims period, to receive a one-year extension on any warranty coverage for both parts and labor (e.g., installation of the item by a plumber). (S.A. ¶ 3.2(b).)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

39. Based on Plaintiffs' expert's calculations, and that the one-year extended warranty program is limited to the first 100,000 Class Members who request it, Rheem will potentially pay out $7,074,653 in extended warranty repair costs relating to amounts associated with estimates for two-year parts only (value of $7,027,018) and one year-parts and labor alternatives (value of $47,635). (*See* the Declaration of Frank Bernatowicz in support of Plaintiff's Motion for Preliminary Approval, at ¶¶ 17, 28.)

40. As a second alternative, Class Members may elect, during the settlement claims period, to replace their Class Products with an arguably superior brass valve, provided by Rheem at its expense. This option shall be available to the first 20,000 Class Members who request it. (S.A. ¶ 3.2(a).)

41. The brass valve replacement option is available to the first 20,000 Class Members who request it and has a $449,400 benefit to the class. (*See* the Declaration of Frank Bernatowicz in support of Plaintiff's Motion for Preliminary Approval, at ¶¶ 17, 28.)

42. All Class Members may submit claims for reimbursement of up to $1,500 of documented losses that are reasonably traceable to a failure of the Class Products, provided that such losses have not already been reimbursed by Defendants. (S.A. ¶¶ 1.14, 3.1(b)) To qualify, Class Members must submit documentation such as dated receipts, invoices, technician reports, or service records and evidence connecting the expenses to the Class Products. (S.A. ¶ 3.1(a).) This option has a total aggregate cap of $500,000 across all Documented Loss claims. (S.A. ¶ 3.1(b).)

43. With an estimated claims rate of even 1.9%, it is anticipated that Class Members will meet the cap of $500,000. (*See* the Declaration of Frank Bernatowicz in support of Plaintiff's Motion for Preliminary Approval, at ¶¶ 32-34.)

44. Defendants will also pay all costs of claims, administration, Plaintiff's Counsel's fees and litigation costs, and a service payment for the Class

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

representative for the risk and effort required to bring and maintain this action. (S.A. ¶¶ 5, 8.)

## PRELIMINARY APPROVAL

45.    On November 17, 2025, Class Counsel moved the Court to preliminarily approve the Settlement. (Dkt. 58.)

46.    On November 24, 2025, Class Counsel appeared before the Court for the hearing on the Motion for Preliminary Approval. (Dkt. 58.)

47.    On November 25, 2025, this Court granted the Motion for Preliminary Approval. (Dkt. 64.)

## THE SETTLEMENT ADMINISTRATOR

48.    The Court preliminarily appointed CPT to serve as the Settlement Administrator. (Dkt. 64.) CPT is highly experienced in similar matters, well regarded, and is qualified to serve as Claims Administrator.

## REPRESENTATIVE PLAINTIFF

49.    The Court preliminarily approved Vanessa West as the Representative Plaintiff. (Dkt. 64.)

50.    Throughout the action, and since preliminary approval, the Representative Plaintiff diligently represented and pursued the interests of the Class. The Representative Plaintiff provided extensive information regarding the harms they suffered as a result of product defect, including providing all necessary paperwork and documents. The Representative Plaintiff also remained in contact with Class Counsel throughout the litigation, promptly responding to our inquiries for further information and communicating with Class Counsel to keep up to date on the status of the Litigation. The Representative Plaintiff also communicated with Class Counsel regarding the terms of the Settlement and reviewed the Settlement Agreement. Representative Plaintiff put her name and reputation on the line for the sake of the Class, and no recovery would have been possible without their critical role.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

51.    Attached as **Exhibit 4** is the Representative Plaintiff's declaration detailing her efforts throughout the course of this litigation, how her efforts benefited the Class, and affirming her support for the Settlement.

**THE SETTLEMENT IS IN THE BEST INTEREST OF THE CLASS**

52.    Class Counsel believe the Settlement Agreement is fair, reasonable and adequate; the product of substantial investigation, litigation and arm's-length negotiation; and, most importantly, is in the best interests of Representative Plaintiff and putative Class Members. Despite my strong belief in the merits of this litigation and likelihood of success at trial, we nonetheless believe that the benefits to Representative Plaintiff and the putative Class pursuant to the agreed upon terms substantially outweigh the risks of continuing to litigate the claims—namely, the delay that would result before Representative Plaintiff and putative Class Members receive any benefits should the action proceed to trial; the possibility of a negative outcome at trial; and the possibility of a negative outcome post-trial should Defendants appeal a judgment in favor of the putative Class. This Settlement provides significant benefits now and is in the best interest of all putative Class Members.

53.    This Settlement also achieves substantial value when compared to other product liability settlements. In *Bentley, et al. v. LG Electronics U.S.A., Inc.* (D.N.J., No. 2:19-cv-13554-MCA-MAH), owners of certain models of LG refrigerators manufactured between January 1, 2014 and December 31, 2017, may be eligible for a cash payment if their LG refrigerator stopped cooling within five years of purchase, including up to $450 upon submission of a claim form under oath, or more by supporting their claim with accompanying documentation such as receipts, invoices, photographs or other reasonable evidence of losses, if they: (a) paid for parts to have their LG Refrigerator repaired; (b) paid for labor to have their LG Refrigerator repaired; (c) had unsuccessful repairs; (d) had delayed repairs; (e) replaced their LG Refrigerator because it stopped working; and/or (f) had property loss such as spoiled

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

food, beverages, medicine or other perishables, or from property damage such as leaking. Additionally, Class members would also receive an extended warranty covering the full cost of repairs for cooling failures for five years from the date of purchase.

54.    In *Linneman v. Vita-Mix Corp.* (S.D.Ohio, No. 15-cv-748-SJD), consumers who purchased a household Vita-Mix blender with a blade assembly dated between January 1, 2007 and October 1, 2016 will be able to obtain a replacement blade and seal or a $70 gift card. Those consumers who purchased a Vita-Mix for commercial/business use (such as a chef, restaurant, institution, etc.) between September 15, 2015 and August 9, 2016, as well as commercial consumers who purchased from the Vita-Mix XL line on or before April 7, 2017, can claim a replacement blade and seal.

55.    On May 7, 2021, the Tenth Circuit Court of Appeals approved the settlement of the multi-district litigation (MDL) case *In re: Samsung Top-Load Washing Machine Marketing, Sales Practices and Product Liability Litigation* (W.D.Ok, No. 17-ML-2792-D), wherein thirty-four models of Samsung top-load washing machines, individually priced between $450 and $1500, experienced weakness issues with the top-load door mechanism. As a result of the weakness, the top-load door on some machines would detach during certain spin cycles, allowing water to spew out of the machine. The *Samsung* settlement agreement provided class members owning machines with top-load door issues four options for relief: (1) enhanced minimum recall rebates, which would allow class members to receive a rebate worth up to 15.5% of the estimated purchase price of the washing machine;[1] (2) enhanced recall repair, wherein Samsung would send a technician to a class member's home to strengthen the top-load door mechanism and also provide the

---

[1] Given the retail price of the washing machines, the maximum rebate of 15.5% of the purchase price permitted each consumer to recover between $69.75 and $232.50, depending on the specific model purchased.

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

member a rebate toward the purchase of a future Samsung appliance; (3) top separation relief, which would allow a member experiencing a top-load door separation within seven years of purchasing a washing machine to receive a full refund on the purchase price of the machine as well as up to $400 in expenses resulting from the top-load door separation; or (4) recall repair with warranty extension, under which a class member could request a repair to their top-load door mechanism and receive a one-year extension of the warranty on the washing machine.[2] The settlement also provided relief to class members experiencing drain-pump failures, allowing (1) $150 to cover the cost of already-completed repairs or installation of a new drain pump, if failure occurred within three years of the notice date of the settlement; and (2) up to $400 for expenses stemming from the failure of a drain pump.

56. The Claims Deadline is March 20, 2026. Prior to the Final Approval Hearing, Class Counsel and the Settlement Administrator will provide updated figures to inform the Court of the current claims rate.

## THE REQUESTED ATTORNEYS' FEES AND COSTS ARE THE RESULT OF ARMS-LENGTH NEGOTIATIONS

57. The parties to this litigation engaged in substantial discovery before any mediation or settlement was discussed.

58. The negotiations in this case were hard-fought, at all times at arms'-length, and not the product of collusion.

## THE ATTORNEYS' FEES ARE REASONABLE

59. To date, thus not including the additional work that will be required, the number of hours spent by CVN is 734.10 and total lodestar for CVN is $432,459.50.

---

[2] This option for relief also obligated Samsung to complete the repair within fourteen days of the class member's request or else give the member a $50 cash equivalent card or replace the member's washing machine.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

60.    The attorneys' fees and costs that Class Counsel are submitting for the Court's consideration include time devoted to:

a.  Engaging in extensive efforts to develop strategic plans to litigate this matter;

b.  Vetting potential representative plaintiffs;

c.  Extensively researching and filing the complaint;

d.  Opposing Defendants' motions to dismiss;

e.  Conducting informal discovery;

f.  Reviewing Defendants' production of documents;

g.  Coordinating with Representative Plaintiff, providing discovery responses, and collecting documents;

h.  Undertaking substantial investigation of the product defect and the corporate structure of Defendants;

i.  Retaining multiple experts;

j.  Preparing an extensive mediation brief and attending a private mediation;

k.  Negotiating the details of the Settlement Agreement over multiple months and securing preliminary approval of the Settlement;

l.  Corresponding and meeting and conferring with several attorneys general; and

m.  Responding to inquiries from Class Members after Class Notice was disseminated.

61.    In addition to these tasks and the attendant resources already committed to them, Class Counsel will need to devote additional time and resources to this case, including:

a.  Preparing for and attending the Final Approval hearing, including the research and drafting of the reply papers and responses to objections;

b.  Continuing to respond to myriad inquiries from Class Members;

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

   c. Overseeing the Settlement through final approval of distribution of the common fund;

   d. Overseeing the claims administration process, including addressing any claim review issues and ensuring the offered benefits reach Class Members; and

   e. Litigating any appeals.

62. The time we spent on litigation efforts in this case prevented us from pursuing other work at the same (or, at least similar, depending on the circumstances of the case) hourly rates reflected in the lodestar submitted herewith. My firm receives dozens of new intakes every day and, as a result, there is always a significant opportunity cost. My firm invested a substantial number of hours litigating this matter instead of pursuing/investigating other potential cases.

63. Throughout the litigation, my firm conscientiously coordinated and collaborated with Mr. Armstrong's to ensure the efficient and non-duplicative effort in this litigation. I am well aware that Courts sometimes scrutinize settlement fee requests when it appears the requesting counsel have worked inefficiently or have unnecessarily duplicated each other's efforts. Our firms worked hard in this action to prevent that from happening. In performing the tasks outlined above, my firm took measures to ensure that all work performed was necessary in light of the needs of the case, was carried out efficiently, and in a non-duplicative manner.

64. In light of their significant experience, expertise, and skill in this area of litigation, Class Counsel's hourly rates are reasonable particularly here in the Ninth Circuit where Courts have approved rates similar to Class Counsel here. (*See e.g.*, *C.B. v. Moreno Valley Unified Sch. Dist.* (C.D.Cal. Oct. 3, 2025) No. EDCV 21-0194 JGB (SPx), 2025 U.S. Dist. LEXIS 213251, at *17-25 (approving rates of $1,550 per hour for a founding parter, $925 per hour for a senior partner, $325 per hour for paralegals, and $495 per hour for other Plaintiff's counsel); *Hollifield v. Directv* (C.D.Cal. Mar. 14, 2017) No. CV 14-7622-MWF (MRWx), 2017 U.S. Dist.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

LEXIS 235061, at *12 ("approving rates of between $845 and $1,200 per hour for three senior attorneys") (citing *In re Animation Workers Antitrust Litig.* (N.D.Cal. Nov. 11, 2016) 2016 U.S. Dist. LEXIS 156720, at *21); *Silicon Genesis Corp. v. Ev Grp. E.Thallner GmbH* (N.D.Cal. Apr. 15, 2024) No. 22-cv-04986-JSC, 2024 U.S. Dist. LEXIS 68331, at *4 (approving of rate of $1,000 per hour for partner); *Adtrader, Inc. v. Google LLC* (N.D.Cal. Mar. 16, 2020) No. 17-cv-07082-BLF, 2020 U.S. Dist. LEXIS 71654, at *25 (approving of a rate of $1,000 per hour for partner); *Banas v. Volcano Corp.* (N.D.Cal. 2014) 47 F. Supp. 3d 957, 965 (approving rates ranging from $355 to $1,095 per hour for partners and associates).)

65.     The quality of the work performed by Class Counsel in obtaining the Settlement should also be evaluated in light of the quality of opposing counsel. Defendants in this case were represented by experienced counsel from the internationally prominent litigation firm Gibson Dunn. This firm vigorously and ably defended the action—including obtaining dismissal in part of Representative Plaintiff's case. In facing this formidable defensive effort—including partial dismissal of the case—Class Counsel were nevertheless able to develop a case that was sufficiently strong to persuade settlement on terms that are favorable to the Settlement Class Members.

66.     The amount of attorneys' fees and costs requested here compares favorably with that awarded in other consumer class action cases. In *Peterson*, where the court awarded $725,000 in attorneys' fees and reimbursement of costs when the settlement provided for "a Settlement Fund up to $2,000,000.00 for reimbursement of out-of-pocket costs for replacement or repair" of a microwave/oven and an extended service plan. (*Peterson v. BSH Home Appliances Corp.* (W.D.Wash. June 13, 2024) No. 2:23-cv-00543-RAJ, 2024 U.S. Dist. LEXIS 105624, at *6-7.)

67.     In *In re Experian Data Breach Litigation*, the court awarded $10.5 million in attorneys' fees, finding the amount only made up 10.5% of the total value

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

of the settlement and a 1.65 multiplier of the lodestar. No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243 (C.D.Cal. May 10, 2019).

68. In *Walsh*, the court relied primarily on the lodestar method and approved $2,489,337.54 in attorneys' fees and $110,662.46 in costs when the possible cash value of the settlement was $8.25 million. (*Walsh v. Kindred Healthcare* (N.D.Cal. Dec. 16, 2013) No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319, at *11.)

### THE CONTINGENT NATURE OF THE CASE AND RISKS OF LITIGATION

69. My firm undertook this matter solely on a contingent basis, with no guarantee regarding the potential duration of the litigation or the ultimate recovery of fees or costs. My firm also understood the risks attendant to litigation in this jurisdiction. While attorneys who represent corporations are routinely paid (often quite handsomely) on an hourly basis, plaintiffs in consumer actions can rarely afford to pay their attorneys by the hour, especially if they expect to be represented by law firms well known for achieving good results. As a firm primarily committed to consumer class actions, including the one at hand, my firm must accept them on a wholly contingent basis, with no guarantee of recovery of fees, or even the reimbursement of its litigation costs. Recovering fees, sometimes with a multiplier, is the only way lawyers who represent individuals in class litigation can continue to provide quality work for victims such as those who brought this case.

70. All of these specific risks are on top of the general risks inherently present in consumer class action cases, which generally face substantial hurdles— even just to make it past the pleading stage.

71. There was also a substantial risk in Plaintiffs obtaining and maintaining class certification. At the outset, class certification, outside the settlement context, almost always poses a significant challenge. Even if the Court certified this Class, the risk of decertification was great and we would have faced numerous additional

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

hurdles.[3] Indeed, I am informed that many plaintiffs' firms spend hundreds of hours of work on cases not dissimilar to this one, merely to see those cases dismissed summarily. My firm is no stranger to this occurrence. Adjustment to the fees in cases where we *prevail* is, thus, warranted to adjust for such risk.

72.    As a result of all these factors, our firms' requested fees are reasonable when considering the complexity and risks associated with litigating this case, the contingent nature of the representation, and the Settlement Fund valued at $8,024,053, achieved under the circumstances.

73.    The net requested attorneys' fees and costs award of $950,000 (when reasonably reimbursable costs total $68,964.84) amounts to approximately 11.83% of the current estimated total Settlement Value of $8,024,053.

**THE REQUESTED COSTS AND EXPENSES ARE REASONABLE**

74.    The total costs and expenses incurred by CVN are $45,902.11.

75.    Class Counsel does not seek a separate award of reimbursement for out-of-pocket costs and expenses that were reasonably and necessarily incurred by Class Counsel in connection with the action.

76.    The expenses incurred in this action, including the costs, are reflected in the books and records of my firm and the other firms. These books and records

---

[3] While defendants would certainly have continued to challenge the operative pleadings, we also recognized that, should we survive those pleadings challenges, we would face challenges at class certification. (*See e.g., Zinser v. Accufix Rsch. Inst., Inc.* (9th Cir. 2001) 253 F.3d 1180, 1189; *In re U.S. Foodservice* (2d Cir. 2013) 729 F.3d 108, 126-127; *Cole v. GMC* (5th Cir. 2007) 484 F.3d 717, 724 ("[I]n a class action governed by the laws of multiple states," "variations in state law may swamp any common issues and  defeat predominance").) The Complaint filed with the present Court does not, in my opinion, present these problems. And, should we make it to that point, Defendants would certainly have filed motions for summary adjudication/judgment, *Daubert*-type challenges and/or *in limine* motions and, otherwise, facing a potential jaw-dropping judgment for millions of people, would have put up a vigorous defense up to and through trial and/or on appeal.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

77.     The costs and expenses for which we request reimbursement include reimbursable expenses for filing fees, expert fees, legal research, mediation fees, photo-copies, postage, and other fees incurred in the ordinary operation of practicing law prosecuting this action, which may increase between now and the Effective Date of the Settlement.

78.     Class Counsel advanced these costs and expenses for the benefit of the classes they sought to represent without any guarantee that these costs and expenses would be recovered.

## EXPERIENCE AND QUALIFICATIONS

79.     I was personally and actively involved in all aspects of the proceedings on this case. I am familiar with this litigation and negotiated the proposed settlement. My experience and that of other members of my firm benefited the efficient litigation of this matter and the settlement negotiations in this case significantly. Attached as **Exhibit 1** is a true and correct copy of CVN's Firm Resume.

80.     CVN is a specialized practice devoted almost exclusively to prosecuting class action matters. In its 33-year history, CVN has prosecuted hundreds of class and/or complex/representative cases. Most of these cases involved some or all of the same legal issues as are presented in the current action. I was directly involved in all of the day-to-day work in this case.

81.     As a law firm devoted to prosecuting class actions, CVN—from its shareholders to its support staff—possess impressive institutional knowledge regarding class action procedures. It handles many cases substantially similar to the present case and is well-qualified to continue to serve as Class Counsel here, through judgment and thereafter.

82.     CVN's past experiences run deep across various areas of the law—from employment wage and hour and discrimination cases, to consumer, personal injury

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

and environmental class actions/mass tort cases. CVN has successfully achieved class certification in varied factual scenarios, some of the more unique or difficult situations being set forth in the firm's resume. Some better-known and/or "game changing" cases include: include *Kurihara v. Best Buy Co., Inc.*, 2007 U.S.Dist. LEXIS 64224 (N.D.Cal. Aug. 29, 2007) (obtaining certification for a class of over 52,000 current and former store employees bringing bag check claims); *Tierno v. Rite Aid Corp.,* 2006 U.S.Dist. LEXIS 71794 (N.D.Cal. Aug. 31, 2006) (oft-cited Order certifying a class of approximately 1,100 California retail store managers alleging overtime misclassification); *Torres v. ABC Security*, Case No. RG04158744 (Sup.Ct.Cal. Alameda Cnty. 2006) (obtaining certification of a class of over 1,600 security guards working at scores of different work sites); *Fulton v. Sports and Fitness Clubs of America, dba 24 Hour Fitness, USA, Inc.,* Case No. GIC881669 (Super.Ct.Cal. San Diego Cnty.) (consolidated with Case No. GIC873193) (Order certifying class of over 7,000 fitness club group exercise instructors); *Rowe v. California Commerce Club*, Case No. BC321283 (Super.Ct.Cal. L.A. Cnty.) (consolidated with Case No. BC288079) (Order certifying tip-pooling claims on behalf of a class of approximately 2,000 card room dealers); and *Rodriguez v. Pleasanton Fitness*, Case No. MSC17-00376 (Super.Ct.Cal. Contra Costa Cnty.) (Order certifying two classes of fitness club workers). This list is far from exhaustive.

83.    CVN's track record is equally impressive with regard to settlements and adjudications. For example, Mr. Cole was co-counsel in the landmark California Supreme Court decision providing that non-exempt worker time spent under the control of the employer is compensable. *Augustus vs. ABM Security Services*, Case No. S224853 (Super.Ct.Cal.) ($110 million settlement on behalf of roughly 15,000 security guards). Additionally, I co-prosecuted what was, at the time (and perhaps still), the largest class action settlement of a meal break-only case. *Despres v. United Parcel Service, Inc.* No. 3:03-CV-02987 (TEH) and No. 3:03-CV-02001 (TEH)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

(N.D.Cal.) ($87 million settlement on behalf of roughly 20,000-person class). Mr. Cole prosecuted, obtained a judgment and thereafter negotiated a two-tiered $19 million settlement on behalf of fitness club group exercise instructors for unpaid wage and unreimbursed business expense claims. *Fulton v. Sports and Fitness Clubs of America, dba 24 Hour Fitness, USA, Inc.,* Case No. GIC881669 (Super.Ct.Cal. San Diego Cnty.) (consolidated with Case No. GIC873193). He prosecuted and settled a $15 million non-reversionary settlement on behalf of a class of approximately 68,000 security guards for meal and rest break violations. *Securitas Security Services Cases*, Case No. 1-05-CV-047499 (Santa Clara Cnty.Super.Ct.). Additionally, he negotiated a $7.5 million settlement on behalf of a class of retail Assistant Managers for uncompensated time spent undergoing security checks and failure to provide meal and rest breaks. *Kelly v. Walgreens*, Case No. CGC-07-464347 (S.F.Cnty.Super.Ct.). Mr. Cole also brokered a $6.9 million settlement on behalf of a class of over 1,000 allegedly misclassified retail Store Managers. *Tierno v. Rite Aid Corp.*, Case No. 3:05-CV-02520 (TEH) (N.D.Cal.). He served as court-appointed lead counsel after fierce competition for that appointment in a consolidated action of nine lawsuits against Walgreen Co. bringing a variety of wage and hour claims on behalf of approximately 43,000 retail store workers in California. After several years of litigation, he negotiated a $23 million settlement in that case. *In Re Walgreen Co. Wage and Hour Litigation*, Case No. 2:11-CV-07664 (PSG) (C.D.Cal.). CVN has many additional resolutions within the settlement range exhibited above and scores of others of lesser notoriety.

84.     Drawing upon that diverse background, CVN is nowadays devoted almost entirely to the prosecution of consumer class actions. In these matters, CVN serves in a variety of roles, oftentimes in various leadership positions. For example, CVN has served as court-appointed lead or co-lead counsel in various data breach matters, including, but not necessarily limited to: *Henderson, et al. v. Reventics, LLC*, Case No. 1:23-cv-00586-MEH (D.Colo.) (court appointed co-lead counsel);

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

*Hinds, et al. v. Community Medical Centers, Inc.*, Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel); *Tsvetanova, et al. v. UCSD Health*, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel); *In Re: Rackspace Data Security Litigation*, No.: SA-22-cv-01296-XR (W.D. Tex.) (court appointed lead counsel); *Fedorys, et al. v. Ethos Group Inc.*, Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-lead counsel); *Moreland, et al. v. 1st Franklin Financial Corporation*, Case No. 2:23-cv-00038-SCJ (N.D.Ga.) (court appointed co-lead counsel); *Domitrovich, et al. v. MC Dean, Inc.*, Case No. 1:23-cv-00210-CMH-JFA (E.D.Va) (court appointed co-lead counsel); *Deevers, et al. v. Wing Financial Services, LLC.*, Case No. 4:22-cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel); *Darrin v. Huntington Ingalls Industries, Inc.*, Case No. 4:23-cv-00053-JKW-DEM (E.D.Va.) (court appointed co-lead counsel); *Guerrero v. Merritt Healthcare Holdings, LLC*, Case No. 3:23-cv-00389-MPS  (D.Conn.) (court appointed co-lead counsel); *Prutsman v. Nonstop Administration and Insurance Services, Inc.*, Case No. 3:23-Cv-01131-VC (N.D.Cal.) (court appointed co-lead counsel); *In re DISH Network Data Security Incident Litigation,* Case No. 1:23-cv-01168-RMR-SBP (D.Colo.) (court appointed co-lead counsel); *Byers v. Orthoalaska, LLC,* Case No. 3:23-cv-00243-SLG (D.Alaska) (court appointed co-lead counsel); *Tambroni v. Wellnow Urgent Care, P.C.*, Case No. 1:24-cv-01595 (N.D.Ill.) (court appointed co-lead counsel); *Dryden v. Tri Counties Bank*, Case No. 23CV03115 (Super. Ct. Cal. Butte Cnty.) (court appointed co-lead counsel); *Brett v. Valley Mountain Regional Center*, Case No. STK-CV-UPl-2024-0005025 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel); *Cordell v. Patelco Credit Union*, Case No. 24CV082095 (Super. Ct. Cal. Alameda Cnty.) (court appointed co-lead counsel); *Skillings, et al., v. Access Sports Medicine and Orthopedics*, Case No. 218-2024-CV-01086 (Super. Ct. New Hampshire Rockingham Cnty.) (court appointed co-lead counsel); *Bujok v. MC2 Data, LLC*,

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

Case No. 0:24-cv-61864-LEIBOWITZ (S.D.Fla.) (court appointed co-lead counsel); *Francisco v. Diligent Acquisitions LLC*, Case No. 4:24-cv-04468 (S.D.Tex.) (court appointed co-lead counsel); *Oliver v. Jewish Home Lifecare* (N.Y. Sup. Ct., N.Y. County, Index No. 157811/2024) (court appointed co-lead counsel); *Lunsford v. Maryhaven Inc.*, Case No. 25CV003753 (Ct. of Common Pleas, Franklin Cty. Ohio) (court appointed co-lead counsel); *Rice v. California Cancer Associates for Research and Excellence, Inc.*, Case No. 5:25-cv-01636 (C.D. Cal.) (court appointed co-lead counsel); *In re Teamsters Local Union Nos. 117 and 174 Data Breach Litigation*, Case 25-3-21664-1 KNT (Wash. Sup. Ct., King Cty.) (court appointed co-lead counsel); *Bobo, et al. v. Krispy Kreme Doughnut Corp.*, Case No. 3:25-CV-00434 (W.D.N.C.) (court appointed co-lead counsel); *Hammon, et al. v. Omni Healthcare Financial Holdings*, Case No. 3:25-CV-00263 (W.D.N.C.) (court appointed co-lead counsel); *Smith v. Monterey Mushrooms*, Case No. 25-cv-08213-BLF (N.D. Cal 2025) (court appointed co-lead counsel); *Poudrier v. Manpower of Lansing, MI, Inc.*, Case No. 1:25-cv-00956-PLM-PJG (W.D.MI 2025) (court appointed co-lead counsel); *Miller v. Mercer Health, et al.*, Case No. 25-CIV-037 (Common Ct. of Pleas, Mercer Cnty. Ohio) (court appointed co-lead counsel); *Parks v. Rural Health Services, Inc.*, Case No. 2025CP0201622 (So. Carolina, Aiken Cnty, Common Pleas) (court appointed co-lead counsel); *Orrantia v. S.V.D.P. Management, Inc.*, Case No. 25CU048774C (Super. Ct. Cal., San Diego Cnty.) (court appointed co-lead counsel); *Walker v. Wayne Memorial Hosp. Auxiliary, Inc.*, Case No. SUCV2025000245 (Ga., Wayne Cnty) (court appointed co-lead counsel); *In re Methodist Home Care Data Incident Litigation*, Case No. CV2025-904388.00 (Cir. Ct. Jefferson Cty., Ala.) (court appointed co-lead counsel).

85.   CVN also serves in more informal (e.g., Executive Committee) leadership positions in numerous other cases and in sole counsel roles in even dozens more—actions currently venued across well over 30 states.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-23-
COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

86. Mr. Cole is a well-respected leader in the field of class action litigation, has achieved record results in both settlements and judgments in such cases, has authored numerous scholarly publications, including his book "Fallout" (chronicling the 1994 toxic substance release by Unocal and the ensuing class action legal battle), and has been called upon to serve as a regular speaker at public seminars on issues surrounding employment law and class action procedures. He has prosecuted class actions across numerous fields, including employment, consumer, environmental, and data breach cases.

87. The basis for Mr. Cole's opinion that this Settlement that is fair, adequate and reasonable is further derived from research relating to the filing of the case and issues of the case, multiple discussions with counsel for Defendant relating to case management, informal exchanges of discoverable information, and the settlement negotiations themselves.

## **EXHIBITS**

1. Attached hereto as **Exhibit 1** is a true and correct copy of CVN's Firm Resume.

2. Attached hereto as **Exhibit 2** is a true and correct copy of CVN's Cost Journal.

3. Attached hereto as **Exhibit 3** is a true and correct copy of CVN's Summary Lodestar Report.

4. Attached hereto as **Exhibit 4** is a true and correct copy of Representative Plaintiff's Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of January 2026 at Oakland, California.

/s/ *Scott Edward Cole*
Scott Edward Cole

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA

# CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2026, I caused to be filed the foregoing document electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

*/s/ Scott Edward Cole*

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE DECL. IN SUPPORT OF MTN. FOR FEES, COSTS & AWARD
CASE NO. 2:24-CV-09686-CAS-MAA